IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **STORED SOLAR ENTERPRISES, SERIES LLC**, | ) | Case No. 22-10191 |
| | ) | |
| Debtor | ) | |
| | ) | |

**OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES, (B) APPROVING STALKING HORSE PURCHASE AGREEMENT, (C) SCHEDULING AN AUCTION AND APPROVING FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) SCHEDULING THE SALE HEARING; (II) APPROVING (A) THE SALE(S), FREE AND CLEAR OF ENCUMBRANCES, AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

**NOW COMES** O'Connor Corporation ("**O'Connor**"), by and through its counsel, and hereby objects to the *Debtor's (1) Motion For Entry Of Orders (I)(A) Approving Bidding Procedures, (B) Approving Stalking Horse Purchase Agreement, (C) Scheduling An Auction And Approving Form And Manner Of Notice Thereof, (D) Approving Assumption And Assignment Procedures, And (E) Scheduling The Sale Hearing; (II) Approving (A) The Sale(S), Free And Clear Of Encumbrances, And (B) Assumption And Assignment Of Executory Contracts And Unexpired Leases; And (III) Granting Related Relief* [Dkt. No. 132] (the "**Bid Procedures Motion**"). In support of this preliminary objection (the "**Objection**"), O'Connor states as follows:

## INTRODUCTION

The Bid Procedures Motion works from the mistaken premise that Hartree is the first-priority secured lender with respect to all assets, which it is not. O'Connor has asserted perfected first-priority liens on property of the Debtor located in property in Washington County (Maine), Penobscot County (Maine), Sullivan County (New Hampshire), and Carroll County (New

Hampshire). With respect to the actual sale of the Debtor's assets, O'Connor will object to any proposed sale "free and clear" of its mechanic's liens that does not adequately protected O'Connor's interests in the Debtor's properties.[1] Unless otherwise resolved, O'Connor will file its objections to the sale by the December 8, 2022 deadline for "Sale Objections."

However, this Objection is filed to the Bid Procedures Motion since those procedures appear to describe a "free and clear" sale *process* that cannot be consummated. Specifically, because neither the "Stalking Horse Purchase Price" nor the "Hurdle Amount" provide for payment of or cash reserves for O'Connor's secured claims, there does not appear to be sufficient "cash" at closing to adequately protect O'Connor's interest in the Debtor's property. For this reason, the bidding procedures fail to sufficiently advise prospective bidders (and Hartree Partners LP itself) of the amount of cash that would be required to implement a sale free and clear of O'Connor's mechanic's liens and this lack of transparency will chill competitive bidding with respect to the Debtor's assets to the detriment of Debtor's creditors and its estate[2] and the Bid Procedures Motion as currently envisioned should be denied.

---

[1] Section 363(e) of the Bankruptcy Code provides, in pertinent part, that "[n]otwithstanding any other provision of this section, . . . on request of an entity that has an interest in property... proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. §363(e) (emphasis added).

[2] There are other aspects of the Bid Procedures that O'Connor finds troubling, including the provision which seems to allow the Debtor to simply declare the Stalking Horse Asset Purchase Agreement the "Successful Bid" even if the Debtor receives a "Qualified Bid." *See* Proposed Order at Dkt. No. 133, ¶ A(5) ("If the Debtor receives a Qualified Bid other than the Stalking Horse Asset Purchase Agreement for an amount not less than the Hurdle Amount, the Debtor may determine, with the consent of the Consultation Parties, not to hold the Auction and instead declare such Qualified Bid or the Stalking Horse Asset Purchase Agreement as the Successful Bid and request that the Court approve an Asset Purchase Agreement with such bidder at the Sale Hearing."). O'Connor will defer to the Committee to raise generalized concerns about the proposed sale process.

# I. FACTUAL BACKGROUND

*A. Background to the Bankruptcy Case.*

1. On September 14, 2022 (the "**Petition Date**"), Stored Solar Enterprises, Series LLC (the "**Debtor**") commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

2. The Debtor continues to operate its businesses and manage its properties as a debtor and debtor-in-possession pursuant to §§ 1007(a) and 1108 of the Bankruptcy Code.

3. To date, no trustee or examiner has been appointed in the case by the United States Trustee.

*B. Background to O'Connor's Mechanics Liens.*

4. O'Connor is a Massachusetts corporation with a principal place of business in the Town of Canton, County of Norfolk, Commonwealth of Massachusetts.

5. Prior to the Petition Date, the Debtor contracted with O'Connor to provide services, furnish and perform labor, equipment and supply materials to incorporate as improvements upon and buildings at several of the Debtor's biomass plant locations in Maine and New Hampshire.

6. Pursuant to the agreement with O'Connor, the Debtor agreed to pay for said labor, services, equipment and materials furnished to it for use in the construction and improvements to its biomass plant locations, but the Debtor failed to pay for the amounts due to O'Connor.

7. On April 12, 2022 at 1:40pm, O'Connor filed a *Lien Certificate* against the Debtor in the Washington County (Maine) Registry of Deeds in Book 4900, Page 76 (the "**Washington County Lien**") to secure a claim of at least $357,597.42. The Washington County Lien was recorded **prior to** Hartree Partners, LP's *Mortgage, Security Agreement, and Financing Statement*,

which was recorded in the Washington County (Maine) Registry of Deeds on April 12, 2022 at 2:21 pm in Book 4900, Page 141.

8. Similarly, on April 11, 2022 at 10:41am, O'Connor filed Lien Certificate in the Penobscot County (Maine) Registry of Deeds in Book 16441, Page 201 (the "**Penobscot County Lien**") to secure a claim of at least $42,075.51.  The Penobscot County Lien was recorded **prior to** Hartree Partners, LP's *Mortgage, Security Agreement, and Financing Statement*, which was recorded in the Penobscot County (Maine) Registry of Deeds on April 12, 2022 at 2:08 pm in Book 16443, Page 253.

9. On April 12, 2022 at 1:30 pm, O'Connor filed a *Motion for Ex Parte Mechanic's Lien Attachment* and *Writ of Attachment* against the Debtor in the Sullivan County (New Hampshire) Registry of Deeds in Book 2191, Page 404 (the "**Sullivan County Lien**") to secure a claim of at least $151,718.47. The Sullivan County Lien was recorded **prior to** Hartree Partners, LP's *Mortgage, Security Agreement, and Financing Statement*, which was recorded in the Sullivan County (New Hampshire) Registry of Deeds on April 12, 2022 at 1:43pm in Book 2191, Page 409.

10. Finally, on April 13, 2022 at 12:32 pm, O'Connor recorded a *Motion for Ex Parte Mechanic's Lien Attachment* and *Writ of Attachment* against the Debtor in the Carroll County (New Hampshire) Registry of Deeds in Book 3662, Page 344 (the "**Carroll County Lien**") to secure a claim of at least $85,951.75. Hartree Partners, LP recorded its *Mortgage, Security Agreement, and Financing Statement* in the Carroll County (New Hampshire) Registry of Deeds on April 12, 2022 in Book 3662, Page 160 at 1:29pm. Even though Hartree Partners, LP recorded the *Mortgage, Security Agreement, and Financing Statement* before the O'Connor's *Motion for Ex Parte Mechanic's Lien Attachment* and *Writ of Attachment*, O'Connor believes that under New Hampshire's priority of recording statute its lien is senior to Hartree Partner LP's.

## II. OBJECTION

11. Even at the bidding procedures stage, a sale process that would not be approved must fail. As explained by the *Encore Healthcare* bankruptcy court:

> While I recognize that at this junction the Debtor has only requested that I approve the sale procedures and not the sale which would be conducted pursuant to those procedures, since I will not approve a sale under any procedures, it would be improper to authorize this first step.

*In re Encore Healthcare Associates*, 312 B.R. 52, 57 (Bankr. E.D. Pa 2004). Likewise, here the Court cannot approve a sale as currently envisioned by the bid procedures since those procedures do not provide notice of, nor payment for, O'Connor's mechanic's liens.

12. Specifically, the bid procedures describe a sale of the Debtor's assets free and clear of all liens. Yet, neither the "Stalking Horse Purchase Price" nor the "Hurdle Amount" provide for amounts sufficient to make payment of or cash reserves for O'Connor's secured claims, which is a requirement for a free and clear sale. Under the proposed Bidding Procedures, the "Stalking Horse Purchase Price"

> is an amount equal to: (i) the aggregate amount of debt (including, for the avoidance of doubt, fees, interest, principal and other obligations) outstanding immediately prior to the Sale Closing Date under the debtor-in-possession credit facility of the Company to which this Term Sheet is annexed (the "DIP Facility" and the term sheet, the "DIP Term Sheet"), which shall be $9 million plus all interest and fees payable thereon, and (ii) the outstanding Secured Note Obligations held by the Stalking Horse Purchaser immediately prior to the Sale Closing Date in an amount not less than $8,885,479.20 plus accrued and unpaid interest, fees and expenses in an amount not less than $1,251,421.45."

Bidding Procedures, Dkt. No. 133-1. The "Hurdle Amount," in turn, is defined by the Bid Procedures as:

> a cash amount at least equal to (i) the Stalking Horse Purchase Price, (ii) the Stalking Horse Purchaser's reasonable out-of-pocket

> expenses incurred in connection with the Sale and the financing thereof, including but not limited to, the fees and expenses of the Stalking Horse Purchaser's counsel and other advisors, (iii) the DIP facility exit premium, (iv) the GUC Sale Reserve, and (v) any commission payable to the Debtor's broker (the sum of (i) through (v), the "**Hurdle Amount**").

*Id*. It is evident from the inclusion of the $500,000 "GUC Sale Reserve" in the Hurdle Amount that the Debtor appreciates that other bidders and the Stalking Horse Purchaser will need to bring additional cash to the closing beyond simply the Stalking Horse Purchase Price.

13. Prospective bidders and the Stalking Horse Purchaser should be clearly advised of the additional amounts of "cash" they will need to provide at closing to pay or adequately protect O'Connor's mechanics liens. Otherwise, the Bidding Procedures, which should be designed to maximize value through a fair and open sale process with transparency as to the obligations that need to be satisfied at closing, fail. *See, e.g., In re President Casinos, Inc.,* 314 B.R. 784, 786 (Bankr. E.D. Mo. 2004) (authorizing debtor to conduct asset sale but refusing to approve bid procedures that could have chilled bidder interest noting "[s]tructured bid procedures should provide a vehicle to enhance the bid process and should not be a mechanism to chill prospective bidders' interests."). The Bidding Procedures, as currently drafted, to not meet the objective of enhancing value since they eliminate all mention of or provisions for the treatment of a senior secured interests in several of the Debtor's assets which will chill competitive bidding and impede actual closing.

15. Because O'Connor is entitled pursuant to § 363(e) of the Bankruptcy Code to adequate protection of its mechanic's lien interests in the Debtor's property through the provision of a lien attaching to the proceeds of any sale in the same order of priority, and with the same validity, force and effect as prior to the sale, the proposed bid procedures must themselves describe

a sale process that provides for such proceeds.[3] Instead, the proposed bid procedures describe a sale process that fails to provide payment of or adequate protection for O'Connor's liens and, accordingly, the Bid Procedures themselves should not be approved.

### III. RESERVATION OF RIGHTS

O'Connor reserves and preserves its rights and abilities to file additional and supplemental objections and responses to the sale of the Debtor's assets and this preliminary objection is entirely without prejudice to any and all additional, supplemental, or further arguments and objections thereto.

### IV. RESPONSE REQUIRED BY D. ME LBR 9013-1(e)

O'Connor requests relief from the requirements in D. Me. LBR 9013-1(e) to admit or deny each paragraph in the Bid Procedures Motion in light of the expedited nature of the relief requested.

**WHEREFORE**, O'Connor requests that the Court deny the Bid Procedures Motion for the reasons discussed herein and for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: October 26, 2022    /s/ Roger A. Clement, Jr.
Roger A. Clement, Jr.
Nathaniel R. Hull
**VERRILL DANA, LLP**
One Portland Square
Portland, Maine 04101
Telephone: (207) 253-4726
Email: nhull@verrilldana.com

*Attorneys for O'Connor Corporation*

---

[3] A sale under 363(f) is subject to 363(e), which also conditions the sale on the provision of adequate protection. "Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale." S.REP. NO. 989, 95th Cong., 2d Sess. 56 (1978), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 4717 - 6760, 5842.