**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

-----------------------------------------------------------------x
                                    :

In re:                         :     Chapter 11
                                    :

STORED SOLAR ENTERPRISES, SERIES LLC   :     Case No. 22-10191
                                    :

                    Debtor.    :

                                      :
-----------------------------------------------------------------x

**ORDER (I)(A) APPROVING AMENDED BIDDING PROCEDURES, (B) APPROVING STALKING HORSE PURCHASE AGREEMENT, (C) SCHEDULING AN AUCTION AND APPROVING FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) SCHEDULING THE SALE HEARING; (II) APPROVING (A) THE SALE(S), FREE AND CLEAR OF ENCUMBRANCES, AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Upon (A) the motion (the "Original Motion"),[1] of Stored Solar Enterprises, Series LLC (the "Debtor"), for entry of an order: (i) approving the Original Bidding Procedures, (ii) approving the Stalking Horse Asset Purchase Agreement, (iii) scheduling an Auction and approving the form and manner of notice thereof, (iv) approving the Assumption and Assignment Procedures, (v) scheduling a Sale Hearing, and (vi) granting certain related relief; and (B) the Emergency Motion (the "Amended Procedures Motion" and together with the Original Motion, the "Motions") of Anthony J. Manhart, the duly appointed, qualified, and acting Chapter 11 Trustee in the above-captioned case (the "Trustee") for entry of an order (i) approving the Amended Bidding Procedures, (ii) approving the Stalking Horse Asset Purchase Agreement, (iii) scheduling an Auction and approving the form and manner of notice thereof, (iv) approving the Assumption and Assignment Procedures, (v) scheduling a Sale Hearing, and (vi) granting certain related relief; and

---

[1]    Capitalized terms not specifically defined herein shall have the meaning assigned to them in the Amended Procedures Motion.

this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having the authority to enter an order on the Amended Procedures Motion, and having found that venue of this proceeding and the Motions in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motions is reasonable and in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the notice of the Original Motion and the of the Amended Procedures Motion and opportunity for a hearing on the Motions were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motions and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motions and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   The statutory predicates for the relief requested in the Motions are (i) Sections 105(a), 363, and 365 of the Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, and (iii) D. Me. LBRs 2002-1, 6004-1, and 6006-1.

D.   Notice of the Motions and the hearing on the Amended Bidding Procedures was sufficient under the circumstances and no other or further notice need be provided except as set forth in the Amended Bidding Procedures and the Assumption and Assignment Procedures. A

19676164.1

reasonable opportunity to object and be heard regarding the relief requested in the Motions has been afforded to parties in interest.

E.   The Trustee has articulated good and sufficient business reasons for this Court to approve the Amended Bidding Procedures attached hereto as Exhibit 1, and the Amended Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value of the Assets.

F.   The Assumption and Assignment Procedures set forth in ¶¶ D(1)–(13) below are fair, reasonable and appropriate and comply with the provisions of section 365 of the Bankruptcy Code.

G.   Each of the Sale Notice, Publication Notice, Potential Assumption and Assignment Notice and Proposed Assumed Contracts Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, Sale Hearing, Bidding Procedures, Assumption and Assignment Procedures, a good faith calculation of the cure amounts due under any executory contract or unexpired lease may reasonably be believed to be transferred in connection with a Sale, and of all relevant dates and deadlines with respect to the foregoing.

H.   Entry of this Order is in the best interests of the Debtor's estate, its creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Amended Procedures Motion is GRANTED as set forth herein.

2.      All objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservation of rights included therein, hereby are overruled and denied on the merits with prejudice.

**A.      The Amended Bidding Procedures**

1.      The Amended Bidding Procedures attached hereto as Exhibit 1 are APPROVED and fully incorporated into this Order.  The Trustee is authorized to take all actions necessary or appropriate, including the expenditure of funds (subject to and in

accordance with the Approved Budget under the DIP facility) as necessary or appropriate, to implement the Amended Bidding Procedures. The failure to specifically include a reference to any particular provision of the Amended Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

2.     The Trustee shall establish an electronic data facility containing key diligence materials to be made available to Prospective Bidders. The Trustee or Hartree shall file, no later than November 13, 2022 at 5:00 p.m. (Eastern Time) an itemized calculation of the Hurdle Amount (with detail on all components thereof to the extent they can be determined today) as of November 4, 2022, which shall be agreed to by Hartree Partners, LP, the Trustee, and the Committee.

3.     The following dates and deadlines regarding competitive bidding are established (subject to modification in accordance with the Amended Bidding Procedures):

a.     **Bid Deadline:  November 22, 2022 at 5:00 p.m. (Eastern Time)** is the deadline by the Bid Notice Parties (as defined in Section IX.A of the Amended Bidding Procedures) must **actually receive** the binding bids (each, a "Bid") from all Prospective Bidders that intend to participate in the Auction;

b.     **Notification of Status as Qualified Bidder**: Prior to the Auction, the Trustee must notify all Qualified Bidders of their status as such; and

c.     **Auction**: If the Trustee receives more than one Qualified Bid for the Acquired Assets, the Trustee shall conduct the Auction on **November 23, 2022**, at 10:00 a.m. at the Cross Insurance Center in Bangor, Maine or on such other date and location to be determined by the Trustee after consultation with the Consultation Parties.

4.     Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction.  A Qualified Bid may contain conditions or contingencies related to obtaining the Approvals (as defined in the "Stalking Horse Purchaser Conditions Precedent" section of the Sale Term Sheet at "ii") that extend beyond December 2, 2022, so long as such Qualified Bid includes a commitment to provide financing on terms acceptable to the Trustee, Hartree Partners, LP and the Committee or as otherwise ordered by the Court.

5.     If the Trustee receives no Qualified Bids (other than the Stalking Horse Asset Purchase Agreement, which shall constitute the Stalking Horse Purchaser's bid and which constitutes a Qualified Bid), the Stalking Horse Asset Purchase Agreement shall be the Successful Bid and the Trustee shall request that the Court approve the Stalking Horse Asset Purchase Agreement at the Sale Hearing.  If the Trustee receives a Qualified Bid other than the Stalking Horse Asset Purchase Agreement for an amount not less than the Hurdle Amount, the Trustee may determine, with the consent of the Consultation Parties, not to hold the Auction and instead declare such Qualified Bid or the Stalking Horse Asset Purchase Agreement as the

19676164.1

Successful Bid and request that the Court approve an Asset Purchase Agreement with such bidder at the Sale Hearing.

6.      If the Auction is conducted, (a) each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with another Qualified Bidder respect to the bidding process or the Sale; (b) each Qualified Bidder participating in the Auction shall be required to confirm that its Qualified Bid is a good faith, bona fide offer and that it intends to consummate the proposed Sale if selected as the Successful Bidder; and (c) the Auction shall be conducted openly and shall be transcribed or videotaped.

7.      If the Auction is conducted, this Court will not, absent further order of the Court, consider bids made after the Auction has closed.

8.      All Good Faith Deposits (for purposes of this paragraph, as increased by the Incremental Deposit Amount, if applicable) shall be held in escrow by the Trustee in a non-interest-bearing escrow or trust account and shall not become property of the Debtor's estate.  All Good Faith Deposits shall be retained by the Trustee until no later than five business days after the conclusion of the Auction, except for the Good Faith Deposit(s) of each Successful Bidder and each Backup Bidder.  The Trustee shall retain the Good Faith Deposit(s) of a Backup Bidder until the earlier of (a) five business days after the closing of the Sale and (b) 60 days after the date of the Sale Hearing.  The Good Faith Deposit(s) of the Successful Bidder shall be credited towards the applicable Purchase Price.

**B.      Stalking Horse Asset Purchase Agreement**

1.      The Trustee is authorized to execute the form Stalking Horse Asset Purchase Agreement and to perform thereunder, subject to entry of the Sale Order with respect thereto.  The Stalking Horse Asset Purchase Agreement shall constitute the Stalking Horse Purchaser's bid and shall be a Qualified Bid.

2.      If (x) the Trustee voluntarily withdraws the sale motion for any reason other than in connection with the Trustee's termination of the Stalking Horse Asset Purchase Agreement for an uncured material breach of the Stalking Horse Asset Purchase Agreement by the Stalking Horse Purchaser, (y) the Stalking Horse Asset Purchase Agreement is terminated because the Bankruptcy Court has approved, and the Trustee has consummated, a Competing Transaction[2], or (z) the Stalking Horse Purchaser terminates the Stalking Horse Asset Purchase Agreement as a result of the material, uncured breach of the Stalking Horse Asset Purchase Agreement by

---

[2]   "Competing Transaction" means any of the following other than the Sale Transaction: (i) a plan of reorganization or other financial and/or corporate restructuring of the Debtor; (ii) the sale or disposition of the Debtor of all or a material portion of the outstanding equity interests of the Debtor, or the sale or disposition of all of a material portion of the Acquired Assets, in each case which substantially prohibits or impairs the Sale Transaction, including a transaction that is the result of a successful bid by any person other than the Stalking Horse Purchaser at the Auction; (iii) a merger, consolidation, business combination, liquidation or recapitalization of the Debtor that substantially prohibits or impairs the Sale Transaction; or any similar transaction involving the Debtor.

5

the Trustee, then Stalking Horse Purchaser shall be entitled reimbursement of its reasonable out-of-pocket expenses incurred in connection with the Sale transaction and the financing thereof, including but not limited to, the fees and expenses of the Stalking Horse Purchaser's counsel and other advisors (the "Expense Reimbursement"). The Expense Reimbursement shall be an allowed administrative expense pursuant to sections 105(a) and 503(b) of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507 of the Bankruptcy Code and shall be senior to all other superpriority administrative expenses in the Bankruptcy Case (other than those granted to the Stalking Horse Purchaser pursuant to any debtor-in-possession financing order); provided, that the foregoing shall not prohibit the Maine Department of Environmental Protection, or any other environmental regulator, from asserting that any claims arising from expenses incurred by such Governmental Entity in connection with Facilities not sold as part of a Sale are entitled to a priority senior to the Expense Reimbursement.

**C.     Sale Notice**

1.     The form of the Sale Notice attached hereto as Exhibit 3 is approved and fully incorporated into this Order. The failure to specifically include a reference to any particular provision of the Amended Bidding Procedures in the Sale Notice shall not diminish or impair the effectiveness of such provision.

2.     Within one business day of entry of this Order, the Trustee shall cause the Sale Notice to be served on the Sale Notice Parties.

3.     As soon as reasonably practicable, the Trustee may cause an abbreviated version of the Sale Notice (the "Publication Notice") to be published in one or more trade or local publications.

4.     Objections to the Sale (each, a "Sale Objection"), including any objection to the sale of the Acquired Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, *other than* Cure Objections shall (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules and all orders of the Court; and (c) be filed with the Court and served on (i) the Trustee, and his counsel; (ii) counsel for the Committee, (iii) counsel for the Stalking Horse Purchaser, (iv) counsel for the Consultation Parties, (v) counsel to any applicable Successful Bidder(s), (vi) counsel to any applicable Backup Bidder, and (vii) the Office of the United States Trustee for the District of Maine (collectively, the "Objection Recipients") by **the start of the Sale Hearing.**

5.     The failure of any party to timely file and serve on the Objection Recipients a timely Sale Objection shall bar such party from asserting, at the Sale Hearing or thereafter, any objection (other than a Cure Objection or objection to the conduct of the Auction and the identification of the Successful Bidder) to the relief requested in the Motion, or to the consummation of a Sale, including the transfer of all or a

19676164.1

portion of the Acquired Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to be a "consent" for purposes of section 363(f) of the Bankruptcy Code.

6.    The Sale Hearing shall be conducted on **November 23, 2022 at 1:00 p.m. (Eastern Time)**.

7.    If any Successful Bidder fails to consummate the proposed Sale, a hearing to authorize the assumption and assignment of the applicable Proposed Assigned Contracts to the Backup Bidder shall be held before the Court on no less than five business days' notice, with objections due at least one day prior to such hearing, unless otherwise ordered by the Court.  For the avoidance of doubt, the scope of such hearing shall be limited to issues relating to adequate assurance of future performance by the Backup Bidder.

8.    Notwithstanding the foregoing or anything herein to the contrary, the deadline to file a Cure Objection in connection with a proposed Sale shall be as set forth in paragraphs D.4 and D.9 below.

## D.    Assumption and Assignment Procedures

1.    The Potential Assumption and Assignment Notice attached hereto as <u>Exhibit 2</u> is approved and fully incorporated into this Order.  The failure to specifically include a reference to any particular provision of the Assumption and Assignment Procedures in the Assumption and Assignment Notice shall not diminish or impair the effectiveness of such provision.

2.    The Trustee shall file with this Court the Potential Assumption and Assignment Notice by November 12, 2022.

3.    By November 12, 2022, after the entry of this Order, the Trustee shall cause each non-Debtor counterparty (each, a "<u>Counterparty</u>") to an executory contract (each, an "<u>Executory Contract</u>") or unexpired lease (each, an "<u>Unexpired Lease</u>") that reasonably may be believed to be transferred as part of the Sale (collectively, such Executory Contracts and Unexpired Leases, the "<u>Contracts</u>"), to be served with the Potential Assumption and Assignment Notice with the proposed respective cure amounts (the "<u>Cure Costs</u>") for each Contract.

4.    Any Counterparty that wishes to object to the proposed Cure Costs with respect to any outstanding monetary defaults under the relevant Contract (each, a "<u>Cure Objection</u>"), shall file with this Court and serve on the Objection Recipients its Cure Objection, which must state, with specificity, the legal and factual bases therefor, including any appropriate documentation in support thereof, by no later than **11:59 p.m. (Eastern Time) on November 21, 2022.**

5.    As soon as reasonably practicable after the conclusion of the Auction, the Trustee shall file with this Court, and cause to be served on the Sale Notice Parties (including each applicable Counterparty and its counsel, if identified as a notice

party in the applicable Contract or as identified in any notice of appearance filed in these cases), by email, to the extent they have consented to email service and email addresses are available to the Trustee, or otherwise via overnight mail, a list of the contracts that the Trustee will seek to assume and assign to the Successful Bidder (the "<u>Proposed Assumed Contracts Notice</u>" and, each contract used therein, a "<u>Proposed Assumed Contract</u>").

6.     If the parties are unable to consensually resolve a Cure Objection with respect to a Proposed Assumed Contract prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to such Cure Objection at or subsequent to the Sale Hearing; <u>provided</u> that the determination of whether a Cure Objection may be heard at the Sale Hearing is in the Trustee's and the Court's discretion.  An adjourned Cure Objection may be resolved after the closing date of the Sale; <u>provided</u> that the Stalking Horse Asset Purchase Agreement shall provide for the establishment of a cash reserve equal to the cure amount the objecting Counterparty reasonably believes is required to cure the asserted monetary default under the applicable Proposed Assumed Contract (or as otherwise may be ordered by the Court).  Upon the Court's resolution of any Cure Objection, whether or not such resolution occurs prior to or after the closing of the Sale, the Trustee or the Successful Bidder, as applicable, will have the right to exclude the Proposed Assumed Contract subject to such Cure Objection from the Acquired Assets subject to the Sale.

7.     Upon resolution of a Cure Objection, provided that the Trustee or the Successful Bidder(s) have not determined to exclude the relevant Proposed Assumed Contract from the Acquired Assets subject to the Sale, and the payment of the applicable cure amount, if any, the Proposed Assumed Contract that was the subject of such adjourned Cure Objection shall be deemed assumed and assigned to the Successful Bidder(s), as of the closing date of the Sale.

8.     If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the Cure Costs set forth in the Potential Assumption and Assignment Notice and forever shall be barred from asserting any other claims related to such Proposed Assumed Contract against the Debtor or any Successful Bidder(s) or their respective property, and such Cure Costs shall constitute the only amount necessary to cure outstanding defaults under the applicable Contract in accordance with section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in such Contract or any other document.

9.     In the event that the Trustee identifies any Counterparties that were not served with the Potential Assumption and Assignment Notice, the Trustee shall subsequently cause such Counterparty to be served with the Potential Assumption and Assignment Notice, and these Assignment and Assumption Procedures shall nevertheless apply to such Counterparty; <u>provided</u>, <u>however</u>, that the deadline for such Counterparty to file a Cure Objection shall be **5:00 p.m. on the date that is**

19676164.1

**seven (7) days after the service of the Potential Assumption and Assignment Notice on such party.**

E.  **Additional Relief**

1.  All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Amended Bidding Procedures, the Auction, and any Sale.

2.  If the Stalking Horse Purchaser is not the Successful Bidder, then the first proceeds of any cash Sale shall be used to pay (i) subject to the proviso at the end of paragraph B.2 of this Order, the Expense Reimbursement, (ii) all DIP Obligations under (and as defined in the DIP Term Sheet), (iii) all Secured Note Obligations (as defined in the DIP Term Sheet), and (iv) other amounts included in the Hurdle Amount.

3.  In the event there is a conflict between this Order and the Motions, this Order shall control.

4.  The Stalking Horse Purchaser shall have standing to enforce the terms of this Order.

5.  The requirements of Bankruptcy Rule 6004(a) are satisfied.

6.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

7.  The Trustee is authorized to take all steps necessary or appropriate, including the expenditure of funds (subject to and in accordance with the Approved Budget under the DIP facility), to carry out the provisions of this Order.  This Order shall be binding upon any successor to the Debtor in the event of conversion of the Bankruptcy Case to chapter 7, or transfer of venue to a bankruptcy court other than the Bankruptcy Court for the District of Maine.

19676164.1

8.      The Trustee is expressly authorized to utilize the facilities and personnel of other firms, including Milbank LLP, to effectuate any service and notice contemplated hereunder.

9.      This Court shall retain jurisdiction to hear and determine all matters arising from the interpretation or implementation of this Order.

Date:

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine

19676164.1

## Exhibit 1 to Sale Procedures Approval Order

### Bidding Procedures

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

------------------------------------------------------------------x
                                        :

In re:                          :      Chapter 11
                                         :

STORED SOLAR ENTERPRISES, SERIES LLC    :      Case No. 22-10191
                                         :

                             Debtor.      :
                                         :

------------------------------------------------------------------x

## BIDDING PROCEDURES

On November 11, 2022, the United States Bankruptcy Court for the District of Maine (the "Court") entered an Order (the "Sale Procedures Approval Order") approving the following procedures (the "Bidding Procedures") for the sale all of the assets (the "Acquired Assets") of the above-captioned debtor (the "Debtor") by the chapter 11 trustee (the "Trustee").

### I.    KEY DATES AND DEADLINES

| | |
|---|---|
| **November 12, 2022 at 5:00 p.m. (Eastern Time)** | Deadline for Trustee to file the Potential Assumption and Assignment Notice |
| **November 21, 2022 at 11:59 p.m. (Eastern Time)** | Deadline to file Cure Objections |
| **November 22, 2022, at 5:00 p.m. Eastern Time)** | Bid Deadline |
| **November 23, 2022, at 10:00 a.m. (Eastern Time)** | Auction (if any Qualified Bids other than the Stalking Horse Bid have been received) |
| **November 23, 2022, at the Sale Hearing** | Deadline to file objections to Sale other than Cure Objections |
| **November 23, 2022 at 1:00 p.m.** | Sale Hearing |

### II.    DUE DILIGENCE

To be eligible to participate in the bidding process for any or all of the Acquired Assets, any interested party (each, a "Prospective Bidder") shall first deliver to each of the Bid Notice Parties (as defined in Section IX.A):

- an executed confidentiality agreement, in form and substance satisfactory to the Trustee;

- a statement and other factual support demonstrating to the Trustee's reasonable satisfaction that the Prospective Bidder has a bona fide interest in purchasing the Acquired Assets; and

- preliminary information, satisfactory to the Trustee, demonstrating the Prospective Bidder's financial capacity to close a proposed Sale.

Any Prospective Bidder identified by the Trustee as reasonably likely to be a Qualified Bidder (as defined below in Section V.A), upon execution of a confidentiality agreement, shall be granted access to information regarding the Acquired Assets, including access to an electronic data facility containing key diligence materials to be established by the Trustee. The Trustee shall be entitled to revoke due diligence access to any Prospective Bidder that fails to become a Qualified Bidder.

The Trustee will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders. All due diligence requests shall be directed to the Trustee.

## III.  STALKING HORSE ASSET PURCHASE AGREEMENT

The Trustee (on behalf of the Debtor) has executed the "stalking horse" agreement with Hartree Partners, LP (the "Stalking Horse Purchaser", and such agreement, the "Stalking Horse Asset Purchase Agreement") for the Acquired Assets. The Stalking Horse Asset Purchase Agreement will constitute the Stalking Horse Purchaser's bid and is a Qualified Bid (as defined in Section V.A).

## IV.  BID DEADLINE

Any Prospective Bidder that intends to participate in the Auction must submit its binding bid (a "Bid") on or before **November 22, 2022 at 5:00 p.m. (Eastern Time)** (the "Bid Deadline") in writing to the Bid Notice Parties (as defined in Section IX.A). Any Bid received after the Bid Deadline will not constitute a Qualified Bid.

Contemporaneously with the submission of its Bid, each Prospective Bidder (other than the Stalking Horse Purchaser) must provide a Good Faith Deposit (as defined in Section V.A.5) by wire transfer or certified check pursuant to delivery instructions to be provided by the Trustee prior to the Bid Deadline.

The Trustee shall promptly provide copies of all Bids received to the Consultation Parties (as defined below in Section X).

## V.    BID REQUIREMENTS

### A.    Qualified Bid Requirements

In order for a Bid to qualify as a "Qualified Bid" (and any bidder that submits a Qualified Bid, a "Qualified Bidder"), the Bid shall satisfy the following requirements:

1.    <u>Purchased Assets</u>.  The Bid shall identify the following:

a.    whether it is for all of the Acquired Assets or for one or more Facilities (if for fewer than all of the Facilities, the Bid shall identify which Facilities it is for); (A) if for all of the Acquired Assets, be in a cash amount at least equal to (i) the Stalking Horse Purchase Price,[1] (ii) the Stalking Horse Purchaser's reasonable out-of-pocket expenses incurred in connection with the Sale and the financing thereof, including but not limited to, the fees and expenses of the Stalking Horse Purchaser's counsel and other advisors, (iii) the DIP facility exit premium, (iv) the GUC Sale Reserve,[2] (v) any commission payable to the Trustee's broker; (vi) the asserted amounts (or such other amount as determined by the Court) of any mechanics' or similar lien that is alleged to be senior to the Secured Note Obligations (unless such lien is assumed by the purchaser) (which may be held in escrow pending a determination of the validity and priority of such lien) (the sum of (i) through (vi), the "<u>Hurdle Amount</u>"), or (B) if for less than all of the Acquired Assets, be in a sufficient cash amount such that on its own or when combined with cash bids for other specific Acquired Assets, the total cash amount of the bid(s) would equal or exceed the Hurdle Amount; <u>provided</u> that any bids so combined (with the prior consent of the Trustee) that qualify pursuant to this clause (B) shall only constitute a single Qualified Bid (when taken together on a combined basis) for the purposes of the Auction and the remaining sale process;

b.    any Contracts (including Unexpired Leases) that would be assumed in connection with the relevant Sale (the "<u>Proposed Assumed Contracts</u>");

---

[1]    The "<u>Stalking Horse Purchase Price</u>" shall be an amount equal to:

(i)    the aggregate amount of debt (including, for the avoidance of doubt, fees, interest, principal and other obligations) outstanding immediately prior to the Sale Closing Date under the debtor-in-possession credit facility of the Company to which this Term Sheet is annexed (the "<u>DIP Facility</u>" and the term sheet, the "<u>DIP Term Sheet</u>"), which shall be $6,192,746.30 plus all interest and fees payable thereon, and

(ii)    the outstanding Secured Note Obligations held by the Stalking Horse Purchaser immediately prior to the Sale Closing Date in an amount not less than $8,885,479.20 plus accrued and unpaid interest, fees and expenses in an amount not less than $1,036,158.36.

[2]    Solely to the extent that a Sale Closing Date occurs, $650,000 placed in reserve solely for the benefit of general unsecured creditors.

19676164.1

    c.    the liabilities, if any, to be assumed (which shall include all transfer and property taxes, unless such bid provides cash in excess of the Hurdle Amount for such taxes);

    d.    the purchase consideration offered (the "<u>Purchase Price</u>");

2.    <u>Identification of the Bidder</u>.  The Bid shall fully disclose the identity of each person or entity bidding for Acquired Assets and shall also disclose any past or present connections or agreements with the Debtor, any other known Prospective Bidder or Qualified Bidder, any officer or director of the foregoing, and any of the Debtor's prepetition secured lender.

3.    <u>Asset Purchase Agreement</u>.  The Bid shall include (a) an executed Asset Purchase Agreement with respect to any Acquired Assets, (b) a proposed sale order based on the Sale Order, and (c) copies of the foregoing, marked to show any proposed amendments and modifications to each.

4.    <u>Financial Information</u>.  The Bid shall include a statement:

    a.    that the Prospective Bidder is financially capable of consummating the Sale contemplated by the applicable Asset Purchase Agreement; and

    b.    setting forth in reasonable detail the proposed structure and material terms of such financing.

5.    <u>Good Faith Deposit</u>.  Each Bid shall be accompanied by a deposit equal to 10% of the Purchase Price reflected in such Bid (the "<u>Good Faith Deposit</u>").  All Good Faith Deposits shall be held in escrow in a non-interest-bearing account identified by the Trustee until no later than five business days after the conclusion of the Auction and thereafter returned to the respective Qualified Bidders in accordance with the Amended Bidding Procedures or, in the case of the Stalking Horse Purchaser, if any, in accordance with the Stalking Horse Asset Purchase Agreement; <u>provided</u>, however, that if a bidder is selected as the Successful Bidder or as a Backup Bidder, such bidder's Good Faith Deposit shall be (i) in the case of the Backup Bidder, returned  the earlier of five business days after the closing of the Sale or 60 days after the date of the Sale Hearing; and (ii) in the case of the Successful Bidder, credited toward the Purchase Price.  The Trustee reserves the right to increase the Good Faith Deposit in consultation with the Consultation Parties.

6.    <u>Authorization</u>.  The Bid shall include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the Bid, participation in the Auction and closing of the proposed Sale; <u>provided</u> that, if the Prospective Bidder is an entity specially formed for the purpose of purchasing the relevant Assets, the Bid must provide written evidence acceptable to the Trustee of the requisite corporate approvals of such Prospective Bidder.

7.    <u>Other Requirements</u>.  A Qualified Bid shall:

a.    state that the bid is not subject to or conditioned on any further due diligence or financing contingencies of any kind, and be irrevocable until the selection of the Successful Bid; <u>provided</u> that if the Prospective Bidder is a Successful Bidder or Backup Bidder, its bid must remain irrevocable until the earlier of (i) the consummation of a Sale with the Successful Bidder and (ii) 60 days after the date of the Sale Hearing;

b.    state that the Prospective Bidder is committed to closing the Sale contemplated by the bid as soon as practicable;

c.    except with respect to the Stalking Horse Purchaser, expressly acknowledge that the Prospective Bidder shall not be entitled to any bid protections;

d.    expressly waive any right to assert an administrative expense claim for substantial contribution under section 503(b) of the Bankruptcy Code in connection with bidding for the Acquired Assets and/or participating in the Auction;

e.    not contain any condition to closing of the proposed Sale on the receipt of any third-party approvals (excluding Court approval);

f.    state that the Prospective Bidder agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if such bidder's Qualified Bid is selected as the next highest or best bid after the Successful Bid with respect to Acquired Assets;

g.    include contact information for the specific person(s) the Trustee should contact in the event they have any questions about such Bid;

h.    be received by the Bid Notice Parties by the Bid Deadline;

i.    certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture or other entity in which more than one bidder (or any of its affiliates) has a direct or indirect interest, unless consented to in writing by the Trustee;

j.    if such Bid is for less than all of the Acquired Assets, indicate if such Bid is contingent upon the ability to benefit from one or more contracts held by Series One or otherwise not identifiable to a single Facility, in which case such Bid may be subject to execution of an appropriate transition support agreement regarding the benefits of such contract; and

k.    if such Prospective Bidder anticipates not being able to close their Bid by December 2, 2022, provide junior DIP financing to fund the Debtor through the closing date of such sale.

- 6 -

19676164.1

### B. Qualified Bidders

A Bid that is determined by the Trustee, in consultation with the Consultation Parties, to meet the requirements set forth in Section V.A will be considered a "Qualified Bid" and any bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The Stalking Horse Purchaser is a Qualified Bidder and the Stalking Horse Asset Purchase Agreement is a Qualified Bid.

The Trustee, in consultation with the Consultation Parties, will evaluate a Qualified Bid using any and all factors that the Trustee deems reasonably pertinent, including, without limitation, (i) the amount of the Purchase Price, including the form of consideration; (ii) the risks and timing associated with consummating a Sale with the Qualified Bidder, (iii) any Acquired Assets included in or excluded from the Qualified Bid, including any Proposed Assumed Contracts, and (iv) the ability to obtain any and all necessary regulatory approvals for the proposed Sale.

The Trustee shall make a determination regarding which Bid(s) qualify as Qualified Bid(s) and notify all Prospective Bidders whether they have been selected as Qualified Bidders prior to the Auction.

## VI.    THE AUCTION

If the Trustee receives more than one Qualified Bid prior to the Auction, the Trustee shall conduct the Auction. The Auction, if required, shall be conducted on **November 23, 2022, at 10:00 a.m. at the Cross Insurance Center in Bangor, Maine**, or at such other date and location as designated by the Trustee after consultation with the Consultation Parties.

If the Trustee receives no Qualified Bids (other than the Stalking Horse Purchaser's bid), the Stalking Horse Purchaser's bid shall be the Successful Bid and the Trustee shall request that the Court approve the Stalking Horse Asset Purchase Agreement at the Sale Hearing. If the Trustee receives a Qualified Bid other than the Stalking Horse Asset Purchase Agreement for an amount not less than the Hurdle Amount, the Trustee may determine, with the consent of the Consultation Parties, not to hold the Auction and instead declare such Qualified Bid or the Stalking Horse Asset Purchase Agreement as the Successful Bid and request that the Court approve an Asset Purchase Agreement with such bidder at the Sale Hearing.

All bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and the construction and enforcement of the Stalking Horse Asset Purchase Agreement and all other agreements entered into in connection with any Sale.

### A. Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations that may be reasonably imposed by the Trustee in consultation with the Consultation Parties. Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative, unless the Trustee otherwise consents. Subject to the Auction procedures set forth in Section VI.B, the Auction will be conducted openly and all Qualified Bidders and the Consultation Parties are permitted to attend; provided that the Trustee, with the

- 7 -

agreement of the Consultation Parties, may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder in person at the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with another bidder with respect to the submission of any bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Acquired Assets identified in such bid.

## B. Auction Procedures

The Auction shall be governed by the following procedures, subject to the Trustee's right to modify such procedures in its reasonable discretion, in consultation with the Consultation Parties:

1.  Baseline Bids. Prior to the commencement of the Auction, the Trustee shall provide copies of the Qualified Bid(s) that the Trustee determines in its reasonable business judgment, in consultation with the Consultation Parties, to be the highest or otherwise best Qualified Bid(s) for the Acquired Assets (the "Baseline Bid(s)") to all other Qualified Bidders who have submitted a Qualified Bid for the Acquired Assets. Bidding at the Auction shall commence at the amount of the applicable Baseline Bid.

2.  Minimum Overbid. At each round of bidding, for each subset of Acquired Assets, Qualified Bidders may submit bids that are higher than the Leading Bid(s) (as defined below in paragraph 5 of this section) for Acquired Assets from the prior round (or, for the first round, the relevant Baseline Bid), by at least the increment the Trustee determines and announces prior to such round of bidding) (the "Minimum Overbid"). The Trustee may, with the consent of the Consulting Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

3.  Additionally, upon a Qualified Bidder's declaration of its bid, it shall commit on the record that, if such bid is to be the Successful Bid or the Backup Bid, it shall, following the Auction, pay the additional Good Faith Deposit, calculated on the basis of the increased Purchase Price (the "Incremental Deposit Amount").

4.  For the purpose of evaluating the value of any bid submitted subsequent to a Baseline Bid, the Trustee will, at each round of bidding, give effect to the bid protections payable to the Stalking Horse Purchaser, if any, as well as to any additional liabilities to be assumed and any additional costs to the Trustee (including, without limitation, any costs associated with maintaining or disposing of any assets excluded from such bid). To the extent that a Leading Bid has been accepted entirely or in part because of the addition, deletion or modification of a provision or provisions in the applicable Asset Purchase Agreement, the Trustee

- 8 -

will identify such added, deleted or modified provision or provisions and the value imputed thereto.

5. <u>Highest or Best Offer</u>. After the first round of bidding and between each subsequent round of bidding, the Trustee shall announce, in consultation with the Consultation Parties, the bid(s) that it believes to be the highest or otherwise best offer(s) for the Acquired Assets (each, a "<u>Leading Bid</u>") and describe the material terms thereof. Each round of bidding shall conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid(s).

6. The Trustee shall have the right to determine, in its reasonable discretion, and in consultation with the Consultation Parties, which Qualified Bid(s) is or are the highest or otherwise best bid with respect to any of the Acquired Assets.

7. Each Leading Bid shall remain open and binding on the applicable Qualified Bidder until and unless (i) the Trustee accepts as a Leading Bid for the subject Acquired Assets a bid by another Qualified Bidder during the Auction and (ii) such Leading Bid is not selected as the Backup Bid.

8. <u>No Round-Skipping</u>. To remain eligible to participate in the Auction, (i) each Qualified Bidder must either (a) maintain its original bid in each round of bidding, or (b) submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid submitted in such round of bidding and (ii) to the extent a Qualified Bidder fails to maintain its bid, or to bid at each round of bidding or to submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid, such Qualified Bidder will be disqualified from continuing to participate in the Auction.

## C. Auction Results

1. <u>Successful Bids</u>. Immediately prior to the conclusion of the Auction, the Trustee, in consultation with the Consultation Parties, shall (a) determine, consistent with the Amended Bidding Procedures, which bid(s) constitutes the highest or otherwise best bid for all or a portion of the Acquired Assets (the "<u>Successful Bid(s)</u>") and (b) notify all Qualified Bidders at the Auction of the identity of the bidder(s) that submitted the Successful Bid(s) (the "<u>Successful Bidder(s)</u>") for the Acquired Assets and the amounts of the Purchase Price and other material terms of the Successful Bid(s). As a condition to remaining a Successful Bidder(s), each Successful Bidder shall wire to the Debtor, in immediately available funds, the Incremental Deposit Amount, calculated based on the Purchase Price of its Successful Bid, no later than two business days following the date on which the applicable Successful Bid is announced.

2. <u>Backup Bids</u>. Prior to the conclusion of the Auction, the Trustee shall (i) determine, in consultation with the Consultation Parties, which Qualified Bid(s) is/are the next highest or otherwise best Qualified Bids after the Successful Bids for the Acquired

Assets (the "Backup Bids") and (ii) notify all Qualified Bidders of the identity of the relevant Backup Bidders and the amount of the Purchase Price and other material terms of its Backup Bid. The Backup Bidders shall wire to the Debtor, in immediately available funds, the Incremental Deposit Amount, based on the Purchase Price of its Backup Bid, no later than one business day following the date on which the applicable Backup Bid is announced.

3.    A Backup Bid shall remain binding on the Backup Bidder until the earlier of (i) the closing of the Sale for the applicable Assets and (ii) 60 days after the date of the Sale Hearing. If a Successful Bidder fails to consummate the Sale, the Backup Bidder shall be deemed the new Successful Bidder for the applicable Assets, and the Debtor shall consummate the Sale of such assets to the Backup Bidder. If the Backup Bidder is not the Stalking Horse Purchaser and such Backup Bidder fails to close its Backup Bid, then the Debtor shall consummate the Sale to the Stalking Horse Purchaser.

4.    On or before two business days after the conclusion of the Auction, the Trustee shall file with the Court and serve on the Sale Notice Parties the results of the Auction, which shall include (i) a copy of all Successful Bids and Backup Bids, if any; and (ii) the identities of the Successful Bidders and Backup Bidders.

5.    As soon as reasonably practicable after the conclusion of the Auction, the Trustee shall file with the Court and serve on the Sale Notice Parties, by email, the Notice of the Proposed Assumed Contracts (the "Proposed Assumed Contracts Notice").

**D.  Return of Good Faith Deposits**

The Good Faith Deposits shall be held in escrow by the Trustee in a non-interest-bearing escrow or trust account and shall not become property of the Debtor's estate. The Good Faith Deposits shall be retained by the Trustee, notwithstanding Court approval of the Sale, until no later than five business days after the conclusion of the Auction, except for the Good Faith Deposits of each Successful Bidder and Backup Bidder. The Trustee shall retain the Good Faith Deposits of Backup Bidders until the earlier of (i) five business days after the closing of the Sale and (ii) 60 days after the date of the Sale Hearing.

At the closing of a Sale, a Successful Bidder shall be entitled to a credit for the amount of its Good Faith Deposit. If the Successful Bidder fails to consummate the Sale because of a breach that entitles the Trustee to terminate the applicable Asset Purchase Agreement, then, the Debtor shall be entitled to retain such Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of such breach or failure to perform.

**VII.    SALE HEARING**

Each Successful Bid (including any Backup Bid that is subsequently deemed the Successful Bid) shall be subject to approval by the Court. The hearing to approve the Sale shall take place on **November 23, 2022 at 1:00 p.m. (Eastern Time)** (the "Sale Hearing") before the Honorable Michael A. Fagone, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Maine, located at 202 Harlow Street, 3rd Floor, Bangor, Maine 04401.

At the Sale Hearing, the Trustee shall seek entry of an order (the "Sale Order") approving, among other things, the Sale of Acquired Assets to the Successful Bidder(s). The Sale Hearing may be adjourned or rescheduled by the Trustee.

The Trustee's presentation to the Court for approval of any Successful Bid does not constitute the Trustee's acceptance of such bid. The Trustee will have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing. Upon the Court's approval of a Successful Bid, the Debtor and the Trustee shall be bound by the terms of that Successful Bid.

Objections to the Sale, including any objection to the sale of any Acquired Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), shall (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Court; and (iii) be filed with the Court and served on the Objection Recipients no later than the start of the Sale Hearing

All Sale Objections not resolved by the parties prior thereto shall be heard at the Sale Hearing. The failure of any party to timely file with the Court and serve on the Objection Recipients a Sale Objection forever shall bar such party from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation of the Sale, including the transfer of the Assets to the Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

## VIII.    MODIFICATION OF PROCEDURES

The Trustee may, following agreement with the Consultation Parties, in any manner consistent with its fiduciary duties and applicable law, or with the approval of the Court, modify the procedures and deadlines set forth herein (including, without limitation, modifying the Qualified Bid requirements, modifying the procedures for conducting the Auction, rescheduling the Auction or adjourning the Sale Hearing) or adopt new rules, procedures and deadlines in order to better maximize value for its estate; provided that the Trustee may not amend these Bidding Procedures or the bidding process to reduce or otherwise modify its obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court. All such modifications and additional rules shall be communicated to each of the Consultation Parties, the Sale Notice Parties, Prospective Bidders and Qualified Bidders; provided that, to the extent such modifications occur at the Auction, disclosure of such modifications may be limited to those in attendance at the Auction.

## IX.    NOTICING

### A. Bid Notice Parties

Qualified Bids shall be submitted in writing to (i) the Trustee, Anthony J. Manhart, Preti Flaherty, One City Center, PO Box 9546, Portland ME   04112 (Attn: Anthony J. Manhart (amanhart@preti.com)), (ii) counsel to the Trustee, Preti Flaherty, One City Center, PO Box 9546, Portland ME   04112 (Attn: Bodie B. Colwell, Esq.  (bcolwell@preti.com)); (iii) counsel to the Stalking Horse Purchaser, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn:

Evan R. Fleck, Esq. (efleck@milbank.com), Michael W. Price, Esq. (mprice@milbank.com), Brian Kinney, Esq. (bkinney@milbank.com)), Sheehan Phinney Bass & Green PA, 75 Portsmouth Boulevard, Suite 110, Portsmouth, NH 03801 (Attn: James S. LaMontagne, Esq. (jlamontagne@sheehan.com)), and (iv) counsel to the official committee of unsecured creditors, Drummond Woodsum, 84 Marginal Way, Suite 600, Portland, ME 04101 (Attn. Jeremy R. Fischer, Esq. (jfischer@dwmlaw.com), Kellie W. Fisher, Esq. (kfisher@dwmlaw.com)) (the foregoing entities in clauses (i) through (iv), the "Bid Notice Parties").

## B.  Sale Notice Parties

1.  <u>Sale Notice Parties</u>.  The "<u>Sale Notice Parties</u>" shall include the following:  (a) the Consultation Parties; (b) counsel to the Stalking Horse Purchaser; (c) all persons and entities known by the Trustee to have expressed an interest to the Debtor in any of the Acquired Assets during the past 12 months, including any person or entity that has submitted a bid for any of the Acquired Assets; (d) all persons and entities known by the Trustee to have asserted any Encumbrance with to any Acquired Assets (for whom identifying information and addresses are available to the Debtor); (e) all Counterparties to the Contracts; (f) any governmental authority known to have a claim against the Debtor; (g) the United States Attorney General; (h) the United States Attorney for the District of Maine; (i) the Office of the Attorney General in each state in which the Debtor operates; (j) the office of the United States Trustee for the District of Maine; (k) counsel to the Committee; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) all parties who have filed a notice of appearance and request for service of papers in these cases pursuant to Bankruptcy Rule 2002 and (o) all other persons and entities as directed by the Court.

## C.  Objection Recipients

Sale Objections shall be filed in accordance with these Bidding Procedures and served on (i) the Trustee, (ii) counsel for the Committee, (iii) counsel for the Stalking Horse Purchaser, (iv) counsel for the Consultation Parties, (v) counsel to any applicable Successful Bidder(s), (vi) counsel to any applicable Backup Bidder, and (vii) the Office of the United States Trustee for the District of Maine (collectively, the "Objection Recipients").

## D.  Assumption and Assignment

The Trustee shall provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Sale Procedures Approval Order.

## X.    CONSULTATION BY THE TRUSTEE

The Trustee shall consult with the advisors to the Committee and counsel to the Stalking Horse Purchaser (collectively, the "Consultation Parties").  The Trustee shall cooperate and consult in all reasonable respects with the investment banker and counsel retained by the Stalking Horse Purchaser and the Committee throughout the Sale process, and in all instances in which the

- 12 -

Trustee is entitled to make decisions in its discretion.  Such advisors shall have right to contact interested parties and potential bidders, as well as review bid documentation.

The Trustee may retain a broker after consultation with the Consultation Parties and as approved by the Court, to assist it in running the Sale process, but the payment of any such broker shall be subject to the Approved Budget as defined in the applicable debtor-in-possession financing order.


DATED:  November 11, 2022

/s/ Bodie B. Colwell

Anthony J. Manhart, Esq.
Bodie B. Colwell, Esq.
Preti Flaherty, LLP
One City Center
PO Box 9546
Portland, ME  04112-9546
(207) 791-3000
amanhart@preti.com
bcolwell@preti.com
*Counsel for Anthony J. Manhart,*
*Chapter 11 Trustee*

- 13 -

**<u>Exhibit 2 to Sale Procedures Approval Order</u>**

**Potential Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

--------------------------------------------------------------x
                                          :
In re:                                    :    Chapter 11
                                          :
STORED SOLAR ENTERPRISES, SERIES LLC      :    Case No. 22-10191
                                          :
                          Debtor.         :
                                          :
--------------------------------------------------------------x

**NOTICE OF POSSIBLE ASSUMPTION**
**AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On November 11, 2022, the United States Bankruptcy Court for the District of Maine (the "Court") entered an Order (the "Sale Procedures Approval Order") authorizing certain procedures to be used in connection with the sale(s) (the "Sale") of the assets (the "Acquired Assets") of the above-captioned debtor (the "Debtor") by the chapter 11 trustee (the "Trustee").

2.    **On November 23, 2022 at 1:00 p.m. (prevailing Eastern Time)**, a hearing (the "Sale Hearing") will take place before the Honorable Michael A. Fagone, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Maine, located at 202 Harlow Street, 3rd Floor, Bangor, Maine 04401, where the Trustee will present for the Court's approval one or more bids for the Acquired Assets (collectively the "Successful Bid"). The Trustee will have accepted the terms of the Successful Bid only when such bid has been approved by the Court.

3.    In connection with the Sale, potential purchasers of the Acquired Assets may wish to assume certain of the Debtor's executory contracts or unexpired leases (collectively, the "Acquired Contracts"). Pursuant to the Sale Procedures Approval Order, the Trustee hereby notifies all counterparties to such Acquired Contracts that their executory contract or unexpired lease may be assumed by the Debtor and assigned to a potential purchaser in connection with the Successful Bid (the "Successful Bidder"). The list of such Acquired Contracts is attached hereto as Schedule 1. Schedule 1 also indicates for each Acquired Contract the amount, if any, that the Trustee believes is required to be paid to the applicable Counterparty to cure any monetary defaults under such Acquired Contract pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code ("Cure Costs"). **The inclusion of any Acquired Contracts on Schedule 1 or any other notice served in connection with the Sale shall not be a guarantee that such executory contract or unexpired lease ultimately will be assumed or assigned**.

4.    Any Counterparty that wishes to object to the proposed Cure Costs for its Contract (each, a "Cure Objection") must file with the Court and serve its Cure Objection on (a) the Trustee, Anthony J. Manhart, Preti Flaherty, One City Center, PO Box 9546, Portland ME 04112 (Attn: Anthony J. Manhart (amanhart@preti.com)), (b) counsel to the Trustee, Preti Flaherty, One City

- 2 -

Center, PO Box 9546, Portland ME 04112 (Attn: Bodie B. Colwell, Esq. (bcolwell@preti.com)); (c) counsel for the Committee, Drummond Woodsum, 84 Marginal Way, Suite 600, Portland, ME 04101 (Attn. Jeremy R. Fischer, Esq. (jfischer@dwmlaw.com), Kellie W. Fisher, Esq. (kfisher@dwmlaw.com)); (d) counsel of the Stalking Horse Purchaser, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Evan R. Fleck, Esq. (efleck@milbank.com), Michael W. Price, Esq. (mprice@milbank.com), Brian Kinney, Esq. (bkinney@milbank.com)), Sheehan Phinney Bass & Green PA, 75 Portsmouth Boulevard, Suite 110, Portsmouth, NH 03801 (Attn: James S. LaMontagne, Esq. (jlamontagne@sheehan.com)); and (e) the Office of the United States Trustee for the District of Maine, (collectively, the "Objection Recipients") **no later than 11:59 p.m. (prevailing Eastern Time) on November 21, 2022**.

5.    Any Cure Objection must state, with specificity, the legal and factual bases therefor, including any appropriate documentation in support thereof.

6.    The Sale Procedures Approval Order requires that the Trustee and a Counterparty that has filed a Cure Objection first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Objections at or subsequent to the Sale Hearing; provided that the determination of whether a Cure Objection may be heard at the Sale Hearing is in the Trustee's and the Court's discretion. The relevant Asset Purchase Agreement will provide for the establishment of a cash reserve equal to the cure amount the objecting Counterparty reasonably believes is required to cure the asserted monetary default under the applicable Executory Contract or Unexpired Lease (or as otherwise ordered by the Court).  Upon the Court's resolution of any Cure Objection, whether or not such resolution occurs prior to or after the closing of the applicable Sale, the Trustee or the applicable Successful Bidder, as applicable, will have the right to exclude the Contract or Lease subject to such Cure Objection from the Acquired Assets to be sold as part of the applicable Sale.

7.    **If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty will be deemed to have consented to the Cure Costs set forth in Schedule 1 and forever will be barred from asserting any objection to such Cure Costs or any other claims related to the applicable Contract or Lease against the Debtor or any Successful Bidder(s) or their respective property, and such Cure Costs will constitute the only amount necessary to cure outstanding defaults under the applicable Executory Contract or Unexpired Lease in accordance with section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in such Contract, or any other document.**.

8.    The inclusion of an Acquired Contract on Schedule 1 or on any subsequently filed list(s) of Proposed Assumed Contracts (as may be amended, the "Proposed Assumed Contract Notice") shall not constitute or be deemed a determination or admission by the Debtor, the Trustee, the Successful Bidder, or any other party in interest that such Acquired Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved).

9.    The Trustee fully reserves the right to amend, modify or supplement the Proposed Assumed Contract Notice.

- 3 -

10.  The Proposed Assumed Contract Notice shall be without prejudice to the Trustee's and/or each Successful Bidder's rights to subsequently exclude any Proposed Assumed Contract from the assumption prior to the closing of the Sale.

11.  The Debtor's assumption and assignment of an Acquired Contract is subject to approval by the Court and consummation of the relevant Sale.  Absent entry of a Sale Order approving the assumption and/or assignment of an executory contract or unexpired lease and the consummation of the relevant Sale, the executory contract or unexpired lease shall be deemed neither assumed nor assigned.

12.  Copies of the Sale Procedures Approval Order and Amended Bidding Procedures may be viewed for a fee on the internet at the Court's website (https://www.meb.uscourts.gov) by following the directions for accessing the ECF system on such website.


DATED:  November ____, 2022

/s/ _____

Anthony J. Manhart, Esq.
Bodie B. Colwell, Esq.
Preti Flaherty, LLP
One City Center
PO Box 9546
Portland, ME  04112-9546
(207) 791-3000
amanhart@preti.com
bcolwell@preti.com
*Counsel for Anthony J. Manhart,*
*Chapter 11 Trustee*

- 4 -

19676164.1

**Schedule 1**

| Counterparty | Counterparty Address | Title/Description of Contract/Lease | Cure Costs |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

19676164.1

## Exhibit 3 to Sale Procedures Approval Order

### Sale Notice

19676164.1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

----------------------------------------------------------------x

|                                              | :  |                        |
| In re:                                       | :  | Chapter 11             |
|                                              | :  |                        |
| STORED SOLAR ENTERPRISES, SERIES LLC         | :  | Case No. 22-10191      |
|                                              | :  |                        |
| Debtor.                                      | :  |                        |
|                                              | :  |                        |

----------------------------------------------------------------x

**NOTICE OF SALE, BID PROCEDURES, AUCTION, SALE OBJECTION,**
**SALE HEARING AND OTHER DEADLINES RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.    On November 11, 2022, the United States Bankruptcy Court for the District of Maine (the "Court") entered an Order (the "Sale Procedures Approval Order") authorizing certain procedures (the "Bidding Procedures") to be used in connection with the sale (the "Sale") of the assets (the "Acquired Assets") of the above-captioned debtor (the "Debtor") by the chapter 11 trustee (the "Trustee").

2.    Copies of the Sale Procedures Approval Order and Bidding Procedures may be viewed for a fee on the internet at the Court's website (https://www.meb.uscourts.gov) by following the directions for accessing the ECF system on such website.

3.    **On November 23, 2022 at 1:00 p.m. (prevailing Eastern Time)**, a hearing (the "Sale Hearing") will take place before the Honorable Michael A. Fagone, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Maine, located at 202 Harlow Street, 3rd Floor, Bangor, Maine 04401, where the Trustee will present for the Court's approval one or more bids for the Acquired Assets (collectively, the "Successful Bid"). The Trustee will have accepted the terms of any Successful Bid only when such bid has been approved by the Court.

4.    To be eligible to participate in the bidding process for the Acquired Assets, a Prospective Bidder shall deliver to the Bid Notice Parties: (i) an executed confidentiality agreement, in form and substance satisfactory to the Trustee; (ii) a statement and other factual support demonstrating to the Trustee's reasonable satisfaction that the Prospective Bidder has a bona fide interest in purchasing the Acquired Assets; and (iii) preliminary information, satisfactory to the Trustee, of the Prospective Bidder's financial capacity to close the proposed Sale.

5.    Any party that intends to participate in the Auction (each, a "Prospective Bidder") shall submit its binding bid (a "Bid") in writing to the Bid Notice Parties on or before **November 22, 2022 at 5:00 p.m. (Eastern Time)** (the "Bid Deadline"). Any bid received after the Bid Deadline will not constitute a Qualified Bid.

6.    If the Trustee receives more than one Qualified Bid for the Acquired Assets, the Trustee shall conduct the Auction. The Auction, if required, shall be conducted on **November 23,**

**2022 at the Cross Insurance Center in Bangor Maine at 10:00 a.m.,** or at such other date and location as designated by the Trustee with agreement of the advisors to the Committee and counsel to the DIP Lender (the "Consultation Parties").

7.    If the Trustee receives no Qualified Bids (other than the Stalking Horse Purchaser's bid), the Stalking Horse Asset Purchase Agreement shall be the Successful Bid and the Trustee shall request that the Court approve the Stalking Horse Asset Purchase Agreement at the Sale Hearing.  If the Trustee receives a Qualified Bid other than the Stalking Horse Asset Purchase Agreement for an amount not less than the Hurdle Amount, the Trustee may determine, with the consent of the Consultation Parties, not to hold the Auction and instead declare such Qualified Bid or the Stalking Horse Asset Purchase Agreement as the Successful Bid and request that the Court approve an Asset Purchase Agreement with such bidder at the Sale Hearing.

8.    Objections to the Sale, including any objection to the sale of the Acquired Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), and to entry of an order approving any Sale (the "Sale Order") shall (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Court; and (iii) be filed with the Court and served on: (a) the Trustee, Anthony J. Manhart, Preti Flaherty, One City Center, PO Box 9546, Portland ME  04112 (Attn: Anthony J. Manhart (amanhart@preti.com)), (b) counsel to the Trustee, Preti Flaherty, One City Center, PO Box 9546, Portland ME  04112 (Attn: Bodie B. Colwell, Esq. (bcolwell@preti.com)); (c) counsel for the official committee of unsecured creditors, Drummond Woodsum, 84 Marginal Way, Suite 600, Portland, ME 04101 (Attn. Jeremy R. Fischer, Esq. (jfischer@dwmlaw.com), Kellie W. Fisher, Esq. (kfisher@dwmlaw.com)); (d) counsel of the Stalking Horse Purchaser, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Evan R. Fleck, Esq. (efleck@milbank.com), Michael W. Price, Esq. (mprice@milbank.com), Brian Kinney, Esq. (bkinney@milbank.com)), Sheehan Phinney Bass & Green PA, 75 Portsmouth Boulevard, Suite 110, Portsmouth, NH 03801 (Attn: James S. LaMontagne, Esq. (jlamontagne@sheehan.com)); and (e) the Office of the United States Trustee for the District of Maine, (collectively, the "Objection Recipients") **prior to the start of the Sale Hearing.**

9.    All Sale Objections not resolved by the parties prior thereto shall be heard at the Sale Hearing.  **THE FAILURE OF ANY PARTY TO TIMELY FILE WITH THE COURT AND SERVE ON THE OBJECTION RECIPIENTS A SALE OBJECTION FOREVER SHALL BAR SUCH PARTY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, OR TO THE CONSUMMATION AND PERFORMANCE OF THE SALE(S) TO SUCCESSFUL BIDDER(S), INCLUDING THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO SECTION 363(F) OF THE BANKRUPTCY CODE.**

10.   The Trustee's presentation to the Court for approval of a Successful Bid does not constitute the Trustee's acceptance of such bid.  The Trustee will have accepted the terms of a Successful Bid only when such bid has been approved by the Court.

19676164.1

11.   This Notice is subject to the full terms and conditions set forth in the Sale Procedures Approval Order and the Amended Bidding Procedures.  To the extent set forth in the Amended Bidding Procedures, the Trustee may, following agreement with the Consultation Parties, in any manner consistent with its fiduciary duties and applicable law, or with the approval of the Court, modify the procedures and deadlines set forth herein (including, without limitation, modifying the Qualified Bid requirements, modifying the procedures for conducting the Auction, rescheduling the Auction or adjourning the Sale Hearing) or adopt new rules, procedures and deadlines in order to better maximize value for its estate; provided that the Trustee may not amend these Bidding Procedures or the bidding process to reduce or otherwise modify its obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court. All such modifications and additional rules shall be communicated to each of the Consultation Parties, the Sale Notice Parties, Prospective Bidders and Qualified Bidders; provided that, to the extent such modifications occur at the Auction, disclosure of such modifications may be limited to those in attendance at the Auction.

12.   Parties interested in receiving additional information about the Debtor, the Amended Bidding Procedures, the Sale, the Acquired Assets, or the Auction may make requests to the Trustee (amanhart@preti.com with a copy to bcolwell@preti.com).

DATED:  _____, 2022

/s/ _____

Anthony J. Manhart, Esq.
Bodie B. Colwell, Esq.
Preti Flaherty, LLP
One City Center
PO Box 9546
Portland, ME  04112-9546
(207) 791-3000
amanhart@preti.com
bcolwell@preti.com
*Counsel for Anthony J. Manhart,*
*Chapter 11 Trustee*

19676164.1