## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **STORED SOLAR ENTERPRISES, SERIES LLC**, | ) | Case No. 22-10191 |
| | ) | |
| Debtor | ) | |

**OBJECTION TO TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING AMENDED BIDDING PROCEDURES, (B) APPROVING STALKING HORSE PURCHASE AGREEMENT, (C) SCHEDULING AN AUCTION AND APPROVING FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) SCHEDULING THE SALE HEARING; (II) APPROVING (A) THE SALE(S), FREE AND CLEAR OF ENCUMBRANCES, AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**
*(Re: Docket Number 220)*

**NOW COMES** O'Connor Corporation ("**O'Connor**"), by and through its counsel, and hereby objects to the *Emergency Motion for Entry of Orders (I) (A) Approving Amended Bidding Procedures, (B) Approving Stalking Horse Purchase Agreement, (C) Scheduling an Auction and Approving Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, and (E) Scheduling the Sale Hearing; (II) Approving (A) The Sale(s), Free and Clear of Encumbrances, and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Dkt. No. 220] (the "**Sale Motion**"). In support of this objection (the "**Objection**"),[1] O'Connor states as follows:

### INTRODUCTION

The Sale Motion and proposed Sale Order fail to provide a clear answer to what should be a simple question in an asset sale: what precise treatment is actually proposed for O'Connor's

---

[1] O'Connor preserves the right to raise all additional objections at the Sale Hearing.

liens? Even after reviewing hundreds of the pages of filings made in connection with this sale, it is unclear whether the plan is to (i) sell the assets "free and clear" of O'Connor's liens and adequately protect its interest; (ii) sell the assets subject to O'Connor's liens; or (iii) sell the assets and provide some other treatment to O'Connor. No sale should be approved to any buyer until this question is answered directly and corresponding revisions are incorporated into the proposed sale order.

## I. FACTUAL BACKGROUND

*A. Background to the Bankruptcy Case.*

1. On September 14, 2022 (the "**Petition Date**"), Stored Solar Enterprises, Series LLC (the "**Debtor**") commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

2. On November 7, 2022, the Office of the United States Trustee filed a motion to appoint Anthony J. Manhart as the chapter 11 trustee for the Debtor. On November 7, 2022 (the "**Appointment Date**"), this Court appointed Mr. Manhart (the "**Trustee**") as chapter 11 trustee.

3. O'Connor's objections to the Sale Motion and the associated *Asset Purchase Agreement* dated November 12, 2022 by and among Hartree Biomass Holdco, LLC, as buyer, and Anthony J. Manhart, as Chapter 11 Trustee for Stored Solar Enterprises, Series LLC, as seller (the "**Stalking Horse APA**") assert no failings on the part of the Trustee. He and his counsel were thrust into a situation in which the outcome of this case – a sale to Hartree – was already determined on expedited or emergency bases with limited notice or no advance notice to parties and stakeholders of the relief being sought. Instead, the issues identified in the Objection are reflective of the absence of meaningful communication to O'Connor throughout this process and the unnecessarily compressed deadlines that parties have been forced to meet.

*B. Background to O'Connor's Liens.*

4.     O'Connor is a Massachusetts corporation with a principal place of business in the Town of Canton, County of Norfolk, Commonwealth of Massachusetts.

5.     Prior to the Petition Date, the Debtor contracted with O'Connor to provide services, furnish and perform labor, equipment and supply materials to incorporate as improvements upon and buildings at several of the Debtor's biomass plant locations in Maine and New Hampshire.

6.     Pursuant to the agreement with O'Connor, the Debtor agreed to pay for said labor, services, equipment and materials furnished to it for use in the construction and improvements to its biomass plant locations, but the Debtor failed to pay for the amounts due to O'Connor.

7.     On April 12, 2022 at 1:40 pm, O'Connor filed a *Lien Certificate* against the Debtor in the Washington County (Maine) Registry of Deeds in Book 4900, Page 76 (the "**Washington County Lien**") to secure a claim of at least $357,597.42. The Washington County Lien was recorded **prior to** and is **senior to** a *Mortgage, Security Agreement, and Financing Statement* naming Hartree as mortgagee which was recorded in the Washington County (Maine) Registry of Deeds on April 12, 2022 at 2:21 pm in Book 4900, Page 141.

8.     Similarly, on April 11, 2022 at 10:41am, O'Connor filed Lien Certificate in the Penobscot County (Maine) Registry of Deeds in Book 16441, Page 201 (the "**Penobscot County Lien**") to secure a claim of at least $42,075.51. The Penobscot County Lien was recorded **prior to** and is **senior to** a *Mortgage, Security Agreement, and Financing Statement* naming Hartree as mortgagee which was recorded in the Penobscot County (Maine) Registry of Deeds on April 12, 2022 at 2:08 pm in Book 16443, Page 253.

9.     On April 12, 2022 at 1:30 pm, O'Connor filed a *Writ of Attachment* and *Motion for Ex Parte Mechanic's Lien Attachment* against the Debtor in the Sullivan County (New Hampshire)

Registry of Deeds in Book 2191, Page 404 (the "**Sullivan County Lien**") to secure a claim of at least $151,718.47. The Sullivan County Lien was recorded **prior to** and is **senior to** a *Mortgage, Security Agreement, and Financing Statement* naming Hartree as mortgagee, which was recorded in the Sullivan County (New Hampshire) Registry of Deeds on April 12, 2022 at 1:43pm in Book 2191, Page 409.

10.     Finally, on April 13, 2022 at 12:32 pm, O'Connor recorded a *Writ of Attachment* and *Motion for Ex Parte Mechanic's Lien Attachment* against the Debtor in the Carroll County (New Hampshire) Registry of Deeds in Book 3662, Page 344 (the "**Carroll County Lien**") to secure a claim of at least $85,951.75. A *Mortgage, Security Agreement, and Financing Statement* naming Hartree as mortgagee was recorded in the Carroll County (New Hampshire) Registry of Deeds on April 12, 2022 in Book 3662, Page 160 at 1:29 pm.  Even though Hartree Partners, LP recorded the *Mortgage, Security Agreement, and Financing Statement* before the O'Connor's *Motion for Ex Parte Mechanic's Lien Attachment* and *Writ of Attachment*, O'Connor asserts that under New Hampshire's priority of recording statute its lien is **senior to** Hartree Partner LP's.

C.  *O'Connor's State Court Actions*.

11.     O'Connor filed the *Complaint* dated June 17, 2022 in the case captioned *O'Connor Corporation v. Stored Solar, LLC, et al.* in the Washington County (Maine) Superior Court Docket No. MACSC-REA-2022 – 007.

12.     On June 15, 2022, O'Connor filed the *Complaint* captioned *O'Connor Corporation v. Stored Solar, LLC, et al.*, in the Penobscot County (Maine) Superior Court, being Docket No. BANSC REA 2022 – 00023.

13. On April 11, 2022, O'Connor filed the *Complaint* captioned *O'Connor Corporation v. Stored Solar Services, LLC, et al.*, Docket No. 220-2022-CV-00042 in the Sullivan County (New Hampshire) Superior Court.

14. On April 11, 2022, O'Connor filed the *Complaint* captioned *O'Connor Corporation v. Stored Solar Services, LLC, et al.*, Docket No. 220-2022-CV-00032 in the Carroll County (New Hampshire) Superior Court.

## II. **OBJECTION**

15. It is not possible for O'Connor to determine if the proposed sale of the Debtor's assets is to be free and clear of, or subject to, its liens. Therefore, it casts its objections to the Sale Motion in the alternative: if it is free and clear, then the Sale Order is objectionable because it both (i) fails to make provision for the adequate protection of O'Connor's interest as a secured creditor pursuant to § 363(e) of the Bankruptcy Code; and (ii) fails to sufficiently identity the provision of § 363(f) that would permit a sale free and clear of O'Connor's interests. If the sale is instead *subject to* O'Connor's liens, then the Sale Order is objectionable because it (i) fails clearly to exclude O'Connor's liens from the provisions in the Sale Order that state the sale is "free and clear" of all Encumbrances; (ii) fails clearly to exclude O'Connor from those provisions in the Sale Order would enjoin creditors from enforcing liens post sale; and (iii) fails clearly to exempt O'Connor from the requirement in the Sale Order that liens must be discharged following the sale. If it was the intent of the Trustee to exempt O'Connor and its liens from these provisions, then O'Connor requests this Court to amend the language to make such exemptions clear.

    A.     *Objection if the Sale is "Free and Clear" of O'Connor's Liens.*

        i.     *Section 363(e) of the Bankruptcy Code*.

16. A sale under § 363(f) is subject to § 363(e), which conditions the sale on the provision of adequate protection, such that O'Connor is *entitled* to adequate protection of its liens. Ordinarily, this can be accomplished through the provision of a lien attaching to the *proceeds* of any sale in the same order of priority, and with the same validity, force and effect as was the lien on the property being conveyed. *See* S.REP. NO. 989, 95th Cong., 2d Sess. 56 (1978), reprinted in U.S.Code Cong. & Admin.News 1978, pp. 4717 - 6760, 5842 ("Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale."); *see also, In re Gaylord Grain LLC*, 306 B.R. 624 (B.A.P. 8th Cir. 2004) ("Ordinarily, when the trustee proposes to sell property free and clear of an interest in property, the bankruptcy court grants a replacement lien in the proceeds of the sale as a condition of the sale."). Here, of course, there are no proceeds of the sale since Hartree is merely credit bidding its claim in exchange for receiving substantially all the Debtor's assets.

17. Because there are no actual proceeds of a sale, in a gesture toward adequate protection, the proposed order granting the Sale Motion [Dkt. No. 220; Exhibit B] (the "**Sale Order**") provides:

> [If the Stalking Horse Bidder is the Successful Bidder] Upon the Closing Date (as defined in the Purchase Agreement), all of the Debtor's legal, equitable and beneficial right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code free and clear of Encumbrances (other than Permitted Encumbrances and Assumed Liabilities); provided, however . . . The Purchaser shall ensure that a reserve is funded in an amount equal to the aggregate value of mechanics liens that are asserted to be senior to the liens securing the Senior Notes Claims and have not been disallowed or avoided by this Court or found to be junior to the liens securing the Senior Notes Claims.

Sale Order, ¶ 7.

18. The proposed protection – "that a reserve [will be] funded" – falls well short of "adequate." Instead of the certainty that granting a replacement lien in proceeds held by a trustee, court, or other neutral party provides, the proposed "adequate protection" is a promise from the Purchaser (which appears to be a newly created entity that presumably has no assets) that it will "ensure" that a reserve in some unspecified amount (*i.e.*, not a dollar figure) will be created at some undetermined point in time. The protection proposed by the Sale Order is inadequate because it fails to specify: (a) that O'Connor would have a lien in the reserve; (b) the actual amount of the reserve that would be created for O'Connor;[2] (c) the results of title searches and other due diligence on the properties to be sold; (d) when the reserve would be funded (*e.g.*, at closing, and as a condition to the Trustee's obligation to convey title); (e) where the funds would be held pending determination of entitlement to the funds (*e.g.*, with the Court or the Trustee); and (f) how O'Connor can collect the reserved funds (*e.g.*, through the normal claims allowance process, adversary proceeding, continuation of the state court lawsuits, or otherwise).

19. To correct the above-described deficiencies, the Sale Order should (a) grant O'Connor a replacement lien in the reserve, the same as if the reserve were sale "proceeds;"[3] (b) specify the dollar amount of the reserve for O'Connor, equal to the amount of O'Connor's asserted secured claims; (c) require that the reserve be created and funded as a condition to closing; (d)

---

[2] Under the Sale Order, a reserve would be created "in an amount equal to the aggregate value of mechanics liens that are asserted to be senior to the lien securing this Senior Notes Claims . . . ." O'Connor has, in fact, asserted such senior liens in the amounts set forth in paragraphs 7-10, *supra*. A "pooled" reserve could easily be underfunded in light of claims that were unknown at the time the reserve was created. Therefore, a dedicated reserve should be created specifically to adequately protect O'Connor.

[3] The Sale Order provides that if the sale is to an entity other than the Stalking Horse, then all Encumbrances (including O'Connor's liens) "shall attach to the *proceeds* of the sale in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets . . . ." Sale Order at ¶ 8 (emphasis supplied).

require that the reserve be held be either by the Trustee or the Court; (e) state that the O'Connor shall be entitled to the funds in the reserve either by agreement of the Trustee, Hartree and O'Connor, or upon order of this Court or other court of competent jurisdiction; (f) state that O'Connor's lien enforcement rights will not be prejudiced in any way by the transfer of its liens to the reserve.

### ii. Section 363(f) of the Bankruptcy Code.

20. The Sale Motion also fails to establish the applicability of any of the conditions set forth in 11 U.S.C. §363(f) that would allow the sale of the real property and improvements free and clear of O'Connor's liens.

21. The Sale Motion summarily states that § 363(f) is met because it is "anticipate[d] that, whichever Sale it pursues, such Sale will satisfy at least one of the five statutory prerequisites under section 363(f) of the Bankruptcy Code, either because the sale proceeds will be greater than the Encumbrances on the Acquired Assets sold, the affected parties consent to the Sale of the Acquired Assets, or such parties could be compelled, in legal or equitable proceeding, to accept a money satisfaction of their interests, to warrant the sale of the Acquired Assets free and clear of all Encumbrances." Sale Motion, ¶ 220.

22. From this single sentence in the Motion, the Court is requested to make the following finding of fact in a Sale Order:

> In addition, each entity with an Encumbrance upon the Acquired Assets, (i) has consented to the Sale or is deemed to have consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

Sale Order, ¶ L. O'Connor does not consent to the sale of the assets free and clear of its liens and further objects to any sale free and clear of its liens until a sufficient basis for a free and clear sale is articulated and supported with evidence.

### B.    *Objection if the Sale Subject to O'Connor's Liens.*

23.    The proposed Sale Order is also objectionable if the sale is instead *subject to* O'Connor's liens for several obvious reasons. *First*, as drafted, the proposed Sale Order would enjoin O'Connor from enforcing its liens post-sale and, in fact, would require O'Connor to discharge its liens following the sale. These provisions must be fixed. *Second*, O'Connor should also be entirely, explicitly, and unequivocally exempted from any provision in the Sale Order that states the sale is "free and clear" of all Encumbrances.[4]

> i.    *The Proposed Sale Order Would Impermissibly Enjoin O'Connor From Further Collection Actions.*

24.    If the sale is *subject to* O'Connor's liens, then O'Connor must, of course, have the right to enforce those liens. The proposed Sale Order would appear to affect just the opposite result by *enjoining* enforcement, as follows:

> Except with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Encumbrances[5] arising under or out of, in

---

[4] O'Connor should not be asked to identify the myriad places in the Sale Order that currently would authorize a sale free and clear of O'Connor's liens. There should be absolutely no ambiguity in the Sale Order should be free from ambiguity that O'Connor's liens shall remain in full force and effect and that O'Connor shall be permitted to enforce those liens just as it could have prior to the bankruptcy filing.

[5] Under the Sale Order, the term "Encumbrance" means any of "liens, defenses (including rights of setoff and recoupment) and interests, including security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options,

> connection with, or in any way relating to, the Debtor, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing Date or the transfer of Acquired Assets to Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting such Encumbrances against the Purchaser, its property or the Acquired Assets. Following the Closing Date, no holder of any Encumbrance shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to any such Encumbrance, or based on any action the Trustee may take in this case

Sale Order, ¶ 12. Because "Assumed Liabilities" under the Stalking Horse APA does not include O'Connor's liens, this provision seems to enjoin O'Connor from enforcing its liens notwithstanding that the sale would be subject to those same liens. Hartree cannot purport to adequately protect O'Connor by leaving its liens in place while at the same time enjoining O'Connor from enforcing those liens. They must either pay O'Connor's liens, or take the properties subject to those liens with the lienholder retaining all rights of enforcement and embroil themselves in litigation with O'Connor post-sale. In short, O'Connor must have an unrestricted,

---

rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, Employee Retirement Income Security Act of 1974 ("ERISA"), Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA"), alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable, including any and all such liabilities, causes of action, contract rights and claims arising out of continued operations following the Closing Date (as defined in the Purchase Agreement). Sale Order at ¶ L.

unimpaired right to pursue recovery on its liens post-sale if those liens are "riding through" the sale and that right should be explicitly and unequivocally set forth in the Sale Order.[6]

        *ii.       The Sale Order Impermissibly Requires Discharge of the Liens*

25.    Equally troubling is the provision in the proposed Sale Order that would *require* that O'Connor discharge its liens or permit Hartree to do so on its behalf.

> *If any person or entity that has filed* financing statements, mortgages, *mechanic's liens*, lis pendens or other documents or agreements evidencing Encumbrances against or in the Acquired Assets *shall not have delivered to the Trustee* prior to the Closing Date of the Sale(s) in proper form for filing and executed by the appropriate parties *termination statements* or instruments of satisfaction or release of all Encumbrances that such person or entity has with respect to such Acquired Assets, *then* only with regard to the Acquired Assets that are purchased by the Purchaser pursuant to the Purchase Agreement and this Sale Order, (a) *the Trustee is hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents on behalf of such person or entity* with respect to the Acquired Assets that are necessary or appropriate to effectuate the Sale, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as the Trustee may determine are necessary or appropriate *and (b) the Purchaser is hereby authorized and empowered to cause to be filed, registered or otherwise recorded a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against the Purchaser and the applicable Acquired Assets*.

Sale Order, ¶ 13 (emphasis added). Forcing O'Connor to discharge its liens would erase the entire purpose of allowing the lien to attach to the proceeds of the sale.

---

[6] O'Connor also notes that the Sale Order utilizes the defined term "Permitted Encumbrances" but O'Connor did not find a definition for "Permitted Encumbrances" in the Sale Order. The Stalking Horse APA utilizes the defined term "Permitted *Liens*" rather than "Permitted Encumbrances. Again, all drafting ambiguity should be avoided by expressly providing that O'Connor is not subject to *any* prohibition on enforcing its liens post sale.

### III. RESERVATION OF RIGHTS

26. O'Connor reserves and preserves its right to file additional and supplemental objections and responses to the sale of the Debtor's assets and this preliminary objection is without prejudice to any and all additional, supplemental, or further arguments and objections thereto.

### IV. RESPONSE REQUIRED BY D. ME LBR 9013-1(e)

27. O'Connor requests relief from the requirements in D. Me. LBR 9013-1(e) to admit or deny each paragraph in the Sale Motion in light of the expedited nature of the relief requested.

**WHEREFORE**, O'Connor requests that the Court deny the Sale Motion for the reasons discussed herein and for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: November 21, 2022

*/s/ Roger A. Clement, Jr.*
Roger A. Clement, Jr.
Nathaniel R. Hull
**VERRILL DANA, LLP**
One Portland Square
Portland, Maine 04101
Telephone: (207) 253-4726
Email: nhull@verrilldana.com

*Attorneys for O'Connor Corporation*