**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re<br><br>STORED SOLAR ENTERPRISES, SERIES LLC,<br><br>    Debtor. | Chapter 11<br><br>Case No. 22-10191 |

**THE STATE OF NEW HAMPSHIRE'S OBJECTION TO THE DISCLOSURE STATEMENT WITH RESPECT TO THE CHAPTER 11 PLAN FOR STORED SOLAR ENTERPRISES, SERIES LLC PREPARED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND CHAPTER 11 TRUSTEE DATED APRIL 11, 2023**

The State of New Hampshire, acting through its Department of Revenue Administration ("DRA") and Department of Environmental Services ("DES" and, together with DRA, the "State), files this objection (the "Objection") to entry of an order determining that the *Disclosure Statement with Respect to the Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared by the Official Committee of Unsecured Creditors and Chapter 11 Trustee dated April 11, 2023* [Dkt. No. 397] (the "Disclosure Statement") contains adequate information such that disclosure and solicitation for or against confirmation of the *Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared by the Official Committee of Unsecured Creditors and Chapter 11 Trustee dated April 11, 2023* [Dkt. No. 396] (the "Plan") is appropriate.[1]

**PRELIMINARY STATEMENT**

1. With the exception of joinder filed in connection with a sale of the Debtor's assets, the State has not been an active participant in this case and is relying on the Disclosure Statement and Plan to understand the manner in which its rights would be impacted by the Plan. Based on this and certain informal discussions, the State understands that the estate effectively has no cash

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Disclosure Statement.

or cash equivalents other than $650,000.00, which may or may not be outside of the estate as a carve-out of collateral of Hartree Partners, LP ("Hartree"), and $575,000.00 to facilitate a wind-down. *See* Disclosure Statement pp. 7-8 (Court approved sale of substantially all assets to Hartree or an affiliate, resulting in the GUC Sale Reserve and a wind-down budget).

2. Against this backdrop, the State objects to the Disclosure Statement as follows: First, the Plan is patently unconfirmable for the simple reason that it does not provide for payments of administrative expenses in the manner required under section 1129(a)(9) of title 11 of the United States Code (the "Bankruptcy Code"). Second, the Disclosure Statement does not contain adequate information to permit creditors to determine whether they should support or oppose confirmation. At a minimum, the Disclosure Statement must provide additional information concerning the value of Causes of Action that appear to be the only funding source for Allowed Administrative Expenses, among other things.

## ARGUMENT

**A.     The Plan is Patently Unconfirmable.**

3. It is black letter law that a disclosure statement describing a plan that cannot be confirmed cannot be approved, regardless of the amount of disclosure it contains. *See, e.g., In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012); *In re Eastern Maine Elec. Coop., Inc.*, 125 B.R. 329, 333 (Bankr. D. Maine 1991).

4. In this case, the Plan is patently unconfirmable because it does not provide for cash payments to holders of allowed administrative expenses. Under section 1129(a)(9) of the Bankruptcy Code, a plan *must* provide the holders of administrative expenses "cash equal to the allowed amount of such claim" to be provided "on the effective date[,]" except as otherwise agreed. 11 U.S.C. § 1129(a)(9)(A). Section 503(b), in turn, provides administrative expense status

2

to any tax "incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title[.]" 11 U.S.C. § 503(b)(1)(B)(i).  Section 503(b) further provides that "a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph [503(b)(1)(B) or (C)] as a condition of its being an allowed administrative expense[.]" 11 U.S.C. § 503(b)(1)(D).

5.   The nature, amount, and extent of tax claims asserted in a bankruptcy case, including any question as to when a tax was "incurred," are determined by reference to applicable nonbankruptcy law.  *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000); *Butner v. United States*, 440 U.S. 48, 55 (1979); *United States v. Beskrone (In re Affirmative Ins. Holdings Inc.)*, 620 B.R. 73, 82 (D. Del. 2020).  A tax debt is "incurred" when it accrues and becomes a fixed liability, which can vary depending on the type of tax in question.  *See, e.g., In re Affirmative Ins. Holdings, Inc.*, 620 B.R. at 81.  Absent statutory provision to the contrary, where a tax is based upon income or gross receipts for a given taxable period, such tax accrues and becomes a fixed liability only upon the last date of the applicable taxable period.  *Id.*  Consequently, an income or receipts tax for a taxable period that straddles a debtor's petition date and ends (or otherwise becomes due and payable) following the petition date is "incurred by the estate" post-petition.  *See id.*; 4 *Collier on Bankruptcy* p. 503.07[2][a][ii] (under the 2005 amendments, it is clear "that income and gross receipts taxes for the entire straddle year are post-petition taxes entitled to administrative priority.").

6.   In this case, Article 4.1 of the Plan contains the following provision regarding payment of Allowed Administrative Expenses:

> 4.1.1 Administrative Expenses. With respect to all Administrative Expenses other than Professional Fee Claims, the Trustee shall pay each Holder of an Allowed

3

>Administrative Expense in full in the Allowed amount, without interest, in Cash on the later of (i) the Effective Date, or (ii) the date that is fourteen (14) days after such Administrative Expense becomes an Allowed Administrative Expense, or in either case, *as soon as practicable thereafter*; provided, however, the Holder of an Allowed Administrative Expense may be paid on such other date and upon such other terms as may be agreed upon by that Holder and the Trustee. Holders of Administrative Expenses (other than 503(b)(9) Claims and Professional Fee Claims) are required to file and serve a request for allowance of such Administrative Expense by the Administrative Expense Bar Date, and any such Holder who fails to timely file and serve such a request shall be forever barred from asserting those Administrative Expenses against the Debtor, the Estate, the Assets, or the Trustee. *To the extent that there is insufficient Cash to pay the Administrative Expenses, the Administrative Expenses shall be paid from proceeds of the Causes of Action.*

Plan, Article 4.1 (emphasis added). However, given the contents of the Disclosure Statement, the State understands that, as a practical matter, there is no Cash to pay any Allowed Administrative Expenses at this time.

7. Even though section 503(b)(1)(D) of the Bankruptcy Code does not require the State to file a request for allowance of an administrative expense, the State has already filed one such request and may assert additional administrative expenses.[2] The State's pending administrative expense claim was filed on an official proof of claim form, as required under this Court's local rules, and is listed as Claim 91 on the Claims Register in this Case. It seeks allowance of an administrative expense in the amount of $827,862.53 for unpaid taxes for the 2022 tax year, which concluded after commencement of this case on September 14, 2022 (the "Petition Date").

---

[2] The State recognizes that the Court entered its *Order Establishing Deadline for Filing Administrative Proofs of Claim and Directing the Form and Manner of Notice* [Dkt. No. 369] (the "Bar Date Order"). However, the State's position is that the Bar Date Order could not alter the requirements of section 503(b)(1)(D) of the Bankruptcy Code. *See Doña Ana Cnty. Treasurer v. Marcus (In re Las Uvas Valley Dairies)*, No. CIV 20-1014 JB/KK, 2021 WL 4472933 (D. N.M. Sept. 30, 2021) (reversing bankruptcy court conclusion that administrative bar date language in a plan overrode section 503(b)(1)(D)). Similarly, at least one court has held that an administrative expense under section 503(b)(1)(B) can survive a confirmation order. *Colins v. Tennessee Department of Revenue*, 555 B.R. 670, 676 (W.D. Tenn. 2016) ("Because the plain language of the Bankruptcy Code exempts a governmental unit from filing an application for allowance of its administrative expense for the types of claims the TDOR held, the TDOR's administrative expenses were not discharged by the Plan."). The State also reserves the right to seek leave to file a request for allowance of an administrative expense after any deadline in the Bar Date Order.

Because the tax liability in question is based upon a tax year that straddled the Petition Date and is based upon receipts arising out of a post-petition sale of the Debtor's assets, it is entitled to be allowed as an administrative expense under section 503(b)(1)(B). The State also may hold an Administrative Expense for costs associated with compliance with the Debtor's operating permit pursuant to Title V of the federal Clean Air Act, which include annual emissions fees pursuant to applicable non-bankruptcy law. This claim likely totals $144,209.00 and is not due to be paid to the State until May 15, 2023. Payment of any Administrative Expense is subject to section 1129(a)(9)(A) of the Bankruptcy Code, which requires the Plan to provide the State "on the effective date of the plan . . . cash equal to the allowed amount of such claim[.]" 11 U.S.C. § 1129(a)(9)(A).

8. However, based on the Disclosure Statement, it does not appear that the estate has the ability to pay this or *any* Allowed Administrative Expense on the Effective Date or within a reasonable time thereafter (to which the State might agree). Thus, the Plan cannot be confirmed. *In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219, 224 (3d Cir. 2002) ("In a Chapter 11 case, a court cannot confirm a distribution plan unless the plan provides full cash payment of all § 503(b) administrative expense claims or the claim holder agrees to different treatment."); *In re Scott Cable Commc'ns, Inc.*, 227 B.R. 596, 600 (Bankr. D. Conn. 1998) ("The code's confirmation scheme elevates allowed administrative claims to a dominant priority such that unless the holders agree to a different treatment, a plan cannot be confirmed without full payment of those claims even if there are no estate assets to pay them."); *see also In re Molycorp, Inc.*, 526 B.R. 67, 77–78 (Bankr. D. Del. 2017) (relying on *Scott Cable*). Consequently, the Disclosure Statement cannot be approved.

Case 22-10191    Doc 410    Filed 05/09/23    Entered 05/09/23 15:39:20    Desc Main
            Document          Page 6 of 12


9. It is possible that the Plan Proponents will respond by contending (A) that the State's Administrative Expense is not yet Allowed or (B) that the Administrative Expense is in an estimated amount.

10. As to the first point, at least according to the Disclosure Statement, it appears that the Plan Proponents intend for State's Administrative Expense to be deemed Allowed upon entry of a confirmation order. The Disclosure Statement says any Administrative Expense had to be filed by the Administrative Expense Bar Date, which is defined in the Plan as being April 2, 2023, and per the Disclosure Statement, "[u]nless the Chapter 11 Trustee or another interested party files an objection to such a request within 30 days after this deadline, the administrative expense will automatically be 'Allowed' and paid in accordance with the Plan." Disclosure Statement, p. 15.[3] No objection was filed, and so, at least according to the Disclosure Statement, the Plan Proponents' intention is that the State's administrative expense will be allowed once the Plan is confirmed.

11. In the event that Plan Proponents do not intend to amend the Plan to correspond with the Disclosure Statement, then the State submits that the issue of allowance is a red herring because it does not appear that the estate has the means to pay *any* Allowed Administrative Expense in Cash until some indefinite point in the future after speculative litigation claims have been liquidated—or perhaps never. Presumably this is why the Plan Proponents included the following sentence in Article 4.1.1 of the Plan: "*To the extent that there is insufficient Cash to pay the Administrative Expenses, the Administrative Expenses shall be paid from Proceeds of the Causes of Action.*" Plan, Article 4.1.1 (emphasis added). However, the Bankruptcy Code does not permit confirmation of a chapter 11 plan with this type of payment provision, absent consent, which, at this time, the State does not provide.

---

[3] It does appear that the Plan requires a corresponding edit.

12. As to the second point, the State's Administrative Expense is an estimate based on the best information available to it because the estate has not timely filed its tax returns, which would provide the State with information needed to compute tax liability in a final amount. The Plan Proponents should not be permitted to slow-walk a tax return or delay regulatory compliance and then prevent the State from asserting its rights under sections 503(b)(1) and 1129(a)(9) of the Bankruptcy Code. Setting aside whether carve-outs of collateral under *In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1993), survived *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), the Plan simply does not provide for payments in Cash, on the Effective Date, to Holders of Allowed Administrative Expenses. To the extent necessary, the State will seek temporary allowance of its administrative expense claim under Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**B.     The Disclosure Statement Does Not Contain Adequate Information.**

13. Section 1125(b) of the Bankruptcy Code conditions solicitation of a plan upon "a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125(a) of the Bankruptcy Code defines "adequate information" as information "in sufficient detail, as far as is reasonably practicable . . . that would enable [] a hypothetical investor . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

14. It is critical that a disclosure statement contain sufficient information because creditors and the Court rely upon the disclosure statement as the basis upon which to evaluate the proposed plan. *See Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414, 417 (3d Cir. 1988) ("Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"); *see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("[D]isclosure requirements are crucial to the effective functioning of the federal

bankruptcy system [because] creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan . . . ."). The Third Circuit has called filing a disclosure statement with adequate information a "pivotal concept in reorganization under the Code." *Onieda Motor Freight, Inc.*, 848 F.2d at 417. "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court." *Id.*

15. Whether a disclosure statement contains adequate information for purposes of section 1125 of the Bankruptcy Code is within the sole discretion of the Court and is to be determined on a case by case basis. *Tex. Extrusion Corp. v. Lockheed Corp.* (*In re Tex. Extrusion Corp.*), 844 F.2d 1142, 1157 (5th Cir. 1988); *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995). However, as a general rule, "[t]he plan proponent bears the ultimate risk of nonpersuasion on the questions of compliance with the requirement to disclose adequate information . . . ." *Official Comm. Of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 720 (Bankr. E.D. Cal. 1992).

16. The Bankruptcy Code does not set forth the type of information that a disclosure statement must include, though certain courts have identified the following non-exclusive list:

1. The circumstances that gave rise to the filing of the bankruptcy petition;
2. A complete description of the available assets and their value;
3. The anticipated future of the debtor, with accompanying financial projections;
4. The source of the information provided in the disclosure statement;
5. The condition and performance of the debtor while in chapter 11;
6. Information regarding claims against the estate, including those allowed, disputed, and estimated;
7. A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;
8. The accounting and valuation methods used to produce the financial information in the disclosure statement;
9. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers

    of the debtor;
10. A summary of the plan of reorganization;
11. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;
12. The collectability of any accounts receivable;
13. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;
14. Information relevant to the risks being taken by the creditors and interest holders;
15. The actual or projected value that can be obtained from avoidable transfers;
16. The existence, likelihood and possible success of nonbankruptcy litigation;
17. The tax consequences of the plan;
18. The relationship of the debtor with affiliates.

*In re Ferretti*, 128 B.R.16, 18-19 (Bankr. D.N.H. 1991); *see also In re Oxford Homes, Inc.,* 204 B.R. 264, 269 n.17 (Bankr. D. Me. 1997) (citing foregoing list)*; In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (setting forth substantially similar list); Alan N. Resnick & Henry J. Somer, 7 *Collier on Bankruptcy* ¶ 1125.02[2] (16th Ed.) (collecting cases setting forth substantially similar lists).

  17. Here, the Disclosure Statement is woefully deficient in critical ways.

  **i.** **Omissions Regarding Causes of Action.**

  18. The Disclosure Statement fails to provide adequate information about certain assets of the estates—namely, Causes of Action (as defined in the Plan). As the Plan is currently drafted, Causes of Action are the primary source of recovery for Holders of Allowed Administrative Expenses. However, the Disclosure Statement does not provide adequate information about Causes of Action other than a passing nod to possible preference recoveries under section 547 of the Bankruptcy Code. Causes of Action are merely described as including "claims against the Debtor's former directors, officers, and professionals, and 'avoidance actions' under chapter 5 of the Bankruptcy Code." Disclosure Statement, p. 13. The Disclosure Statement states that "the Plan Proponents have not had an opportunity to investigate the existence of any tort claims, but

9

these claims could include claims for breaches of fiduciary duty owed by any person (including the Debtor's current or former officers, directors, and professional advisors) to the Debtor or its bankruptcy estate." *Id*.

19. A passing review of the docket and casual observation of this case suggests that there have been and continue to be heated battles between the Debtor, its retained professionals, the Committee, Hartree, and the Trustee over a variety of issues and that there were serious questions raised about the Debtor's strategic decisions leading to appointment of the Trustee. There is the related question about what impact, if any, manufacturing the Debtor on the eve of the Petition Date had on the rights of other parties, given that it effectuated a substantive consolidation without notice to potentially impacted parties.

20. In light of this, further disclosure is warranted regarding the specific Causes of Action, their viability, the extent of available insurance to provide payment, who will prosecute them, the manner of compensation for such prosecution, etc. Additional disclosure is also needed to explain who will be responsible for supervising professionals charged with liquidating Causes of Action. For example, the Disclosure Statement says that the Chapter 11 Trustee will transfer remaining Assets to the Liquidating Trust after payment of Allowed Unclassified Claims and Allowed Class One Claims, yet it also appears to say that that the very Causes of Action that are to fund payment to Allowed Unclassified Claims are "assigned to the Liquidating Trust[.]" *See* Disclosure Statement, p. 13 (first and second paragraphs). More disclosure is necessary.

    ii.    **The Liquidation Analysis and Feasibility Analysis Are Entirely Inadequate.**

21. The Disclosure Statement is essentially devoid of meaningful information to demonstrate compliance with the disclosure obligations concerning the "bests interests test" and a "liquidation analysis." Section 1129(a)(7) of the Bankruptcy Code requires that, with respect to

each impaired class of claims, each holder of a claim in such class either accepts the plan or will receive an amount that is not less than the amount such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7). There is simply no information from which the State can evaluate whether it is better off in a hypothetical liquidation. There is also no meaningful information that the State can use to evaluate whether the Plan is feasible insofar as it relates to payment of Allowed Administrative Expenses or Allowed Priority Tax Claims. The Plan Proponents' statement that "[t]he Plan provides certainty for creditors about what they will receive and when they will receive it, and it entails much less risk for all creditors" is simply untrue. Disclosure Statement, p. 17. There is no certainty to the Holders of Allowed Administrative Expenses or Allowed Priority Tax Claims.

## CONCLUSION

Based on the foregoing, the State respectfully requests that the Court enter an order (i) denying approval of the Disclosure Statement because it does not contain adequate information; and (ii) granting such other and further relief as the Court deems just and proper.

Date: May 9, 2023

*/s/ Andrew C. Helman*
Andrew C. Helman
Kyle D. Smith
DENTONS BINGHAM GREENEBAUM LLP
254 Commercial Street, Suite 245
Portland, Maine  04101
(207) 619-0919
andrew.helman@dentons.com
kyle.d.smith@dentons.com

*Counsel to the State of New Hampshire*

## CERTIFICATE OF SERVICE

    I, Andrew C. Helman, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Date: May 9, 2023

*/s/ Andrew C. Helman*
Andrew C. Helman
Kyle D. Smith
DENTONS BINGHAM GREENEBAUM LLP
254 Commercial Street, Suite 245
Portland, Maine  04101
(207) 619-0919
andrew.helman@dentons.com