## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

In re:

STORED SOLAR ENTERPRISES, SERIES
LLC,

              Debtor.

Chapter 11

Case No. 22-10191

## CHAPTER 11 PLAN FOR STORED SOLAR ENTERPRISES, SERIES LLC PREPARED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE CHAPTER 11 TRUSTEE DATED AUGUST 18, 2023

*/s/ Jeremy R. Fischer*
Jeremy R. Fischer
Kellie W. Fisher
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Telephone: (207) 772-1941
E-mail: jfischer@dwmlaw.com
       kfisher@dwmlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

-and-

*/s/ Anthony J. Manhart*
Anthony J. Manhart
Bodie B. Colwell
**PRETI FLAHERTY LLP**
One City Center
PO Box 9546
Portland, Maine  04112-9546
Telephone: (207) 791-3000
E-mail: amanhart@preti.com
       bcolwell@preti.com

*Counsel to Anthony J. Manhart, Chapter 11 Trustee*

# ARTICLE I
## INTRODUCTION

Stored Solar Enterprises, Series LLC (the "Debtor") is the debtor in this Case.[1]  The Debtor commenced this Case by Filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date.  On November 7, 2022, the Office of the United States Trustee Filed a certificate of appointment appointing Anthony J. Manhart as chapter 11 trustee (the "Chapter 11 Trustee") for the Debtor, which was approved by the Bankruptcy Court.

Pursuant to Bankruptcy Code § 1121(c), the Plan Proponents propose an orderly liquidation of the Debtor's remaining Assets.  The Plan provides that all funds realized from the collection and liquidation of the Debtor's Assets will be paid to Creditors on account of their Allowed Claims in accordance with the distributive priorities of the Bankruptcy Code and this Plan.  The Plan Proponents propose to implement the Plan by establishing, *inter alia*, a Liquidating Trust that will be administered by the Liquidating Trustee.  Upon payment in full of all Allowed Administrative Expenses, Allowed Priority Tax Claims, and Allowed Other Priority Claims, all remaining Assets will be transferred to the Liquidating Trust.  Thereafter, the Liquidating Trustee will be responsible for liquidating the Assets, including the proceeds of assets administered by the Chapter 11 Trustee, and making distributions to Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan.

Transmitted with this Plan is a copy of the Disclosure Statement required by § 1125 of the Bankruptcy Code.  The Disclosure Statement is provided to help Creditors understand this Plan.  The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business and former operations, risk factors, and other related matters.  The Disclosure Statement

---

[1] Capitalized terms not specifically defined when first used herein shall have the meanings subsequently ascribed to them in this Plan.

also provides a summary of this Plan.  All Creditors and other parties-in-interest are encouraged to carefully review the Disclosure Statement prepared by the Plan Proponents before voting to accept or reject this Plan.

The Plan Proponents urge all Creditors and other parties-in-interest to read this Plan and the Disclosure Statement in their entirety.  No solicitation materials other than the Disclosure Statement and any documents, schedules, exhibits, or letters attached thereto or referenced therein have been authorized by the Plan Proponents or the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

The Voting Deadline to accept or reject this Plan will be set by order of the Bankruptcy Court.

The Plan Proponents believe that this Plan will enable the Estate to efficiently liquidate its remaining Assets for the benefit of the Creditors and accomplish the objectives of chapter 11 of the Bankruptcy Code.   The Plan Proponents further believe the Plan presents the most advantageous outcome for all the Debtor's Creditors and, therefore, Confirmation of the Plan is in the best interests of the Estate.  The Plan Proponents accordingly recommend that Creditors <u>vote to accept the Plan</u>.

## ARTICLE II
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A. **Definitions**

In addition to other terms defined elsewhere in this Plan, the following terms, which appear in the Plan as capitalized words, have the following meanings:

"**503(b)(9) Claim**" means a Prepetition Claim for the value of goods received by the Debtor in the ordinary course of its business within twenty (20) calendar days before the Petition Date, as provided for under § 503(b)(9) of the Bankruptcy Code.

"**Administrative Expense**" means any amount owed by the Estate pursuant to §§ 507(a)(2), 507(b), and/or 503(b) of the Bankruptcy Code, including 503(b)(9) Claims, and Professional Fee Claims.

"**Administrative Expense Bar Date**" means the date that is thirty days after entry of the *Order Establishing Deadline for Filing Administrative Proofs of Claim and Directing the Form and Manner of Notice* [D.E. 369], which is April 2, 2023.

"**Allowed**" means a Claim or Administrative Expense (i) as to which no proof of claim has been Filed, that is (a) listed in the Schedules in an amount greater than zero and not in an unknown amount, (b) not listed in the Schedules as disputed, contingent, or unliquidated, and (c) as to which no objection, motion or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such Claim as set forth in this Plan or Final Order of the Bankruptcy Court, or (d) as to which any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by Final Order of the Bankruptcy Court; or (ii) as to which a proof of claim or request for allowance and payment has been Filed and to which (a) no objection, motion or other proceeding to estimate, equitably subordinate, reclassify, set off, or

otherwise limit the recovery thereon has been asserted before the Claim Objection Deadline, or (b) any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by Final Order of the Bankruptcy Court.

"**Assets**" means each and every item of property and interest of the Debtor or its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes, without limitation, (i) all Cash, (ii) all rights in and proceeds of Insurance Policies applicable the Debtor not otherwise assigned to the Buyer, and (iii) any other rights, privileges, deferred taxes, Claims, Causes of Action, or defenses of the Debtor and its Estate, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law.  For the avoidance of doubt, Assets do not include any real or personal property conveyed to the Buyer as part of the Sale Transaction.

"**Bankruptcy Code**" means title 11 of the United States Code as in effect as of the Petition Date.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Maine.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than a Saturday, Sunday, or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Buyer**" means Hartree Biomass Holdco, LLC *now known as* NE Renewable Power LLC.

"**Case**" means the Debtor's case under chapter 11 of the Bankruptcy Code, bearing a Case Number of 22-10191.

"**Cash**" means United States dollars, securities, and payment intangibles in the possession, custody, or control of the Chapter 11 Trustee on the Confirmation Date, including any funds in the Estate Carveout.

"**Causes of Action**" means collectively (i) any and all claims for relief of the Debtor or the Estate under chapter 5 of the Bankruptcy Code, (ii) claims of the Debtor against the Debtor's Insiders, as defined by Bankruptcy Code § 101(31) (which shall, for the avoidance of doubt, include members of the Debtor), and (iii) claims against the Debtor's professional advisors arising before or after the Petition Date; provided that Causes of Action shall not include (a) any claim against an employee proposed to be employed by the Buyer or any claim indemnified pursuant to an Assumed Contract, (b) actions under Bankruptcy Code § 549 with respect to proceeds of collateral of the DIP Lender (including cash collateral) or proceeds of the Postpetition Credit Facility, (c) any claims of the Debtor or the DIP Lender against a non-Debtor or any individual relating to the misappropriation, misuse, or conversion of proceeds of collateral (including cash collateral) or funds extended pursuant to the Debtor's prepetition secured loan obligations or the Postpetition Credit Facility, or (d) any direct claims of the DIP Lender against a non-Debtor under the documentation governing the prepetition loan obligations.

"**Claim**" means a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor and/or its Estate.

"**Claimant**" means any Person who holds an Allowed Claim against the Debtor and/or the Estate.

"**Claims Objection Deadline**" means the deadline for the Trustee or any other party-in-interest to File any objections to any asserted Claim or Administrative Expense, which is no later than 60 days after the Effective Date, unless, upon motion of the Trustee, the Bankruptcy Court extends such deadline.

"**Claims Bar Dates**" means, in addition to those bar dates that may be described elsewhere in this Plan, the bar dates for filing Claims against the Debtor and/or the Estate established by the

Bankruptcy Court as follows: (a) January 18, 2023, for all Claims arising prior to the Petition Date (unless a different date is set by a Final Order of the Bankruptcy Court), excepting Claims of governmental units; and (b) March 13, 2023, in relation to Claims of governmental units arising prior to the Petition Date.

**"Committee"** means the Official Committee of Unsecured Creditors, appointed by the U.S. Trustee in the Case.

**"Committee Professional Reserve"** means the $200,000.00 reserve budgeted for Committee Professionals and funded by the DIP Lender as part of the Sale Transaction.

**"Confirmation"** means the entry of the Order by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the Case docket.

**"Confirmation Hearing"** means a hearing or hearings conducted by the Bankruptcy Court regarding Confirmation of the Plan.

**"Creditor"** means the Holder of a Claim against the Debtor.

**"DIP Lender"** means Hartree Partners, LP in its capacity as the Debtor's prepetition secured lender and lender under the Postpetition Credit Facility.

**"Disallowed Claim"** means a Claim or any portion thereof that (i) has been disallowed by agreement or by Final Order of the Bankruptcy Court, (ii) is Scheduled in an unknown amount or as zero or as contingent, disputed, or unliquidated or is not Scheduled and as to which no proof of claim or Administrative Expense has been Filed, or (iii) has been withdrawn by the Creditor.

**"Disclosure Statement"** means the Disclosure Statement Filed in support of the Plan, as may be amended.

"**Distribution**" means any transfer by the Trustee under the Plan of Cash or other Assets to a Holder of an Allowed Claim.

"**Effective Date**" means the 30th Business Day after the Confirmation Date, provided that the Confirmation Order is not stayed.  If the Confirmation Order is stayed, the Effective Date shall be the later of the 30th Business Day after the Confirmation Date or the first Business Day after the expiration of any stay.

"**Equity Interest**" means all previously issued and outstanding membership interests or other ownership interests in the Debtor or individual Series outstanding immediately prior to the Effective Date.

"**Estate**" means the estate created in the Case under § 541 of the Bankruptcy Code.

"**Estate Carveout**" means the account funded by the DIP Lender and established as part of the Sale Transaction to hold (i) the Committee Professional Reserve, (ii) the Trustee Reserve, and (iii) $150,000.00 for winding down the Estate.

"**Exculpated Parties**" shall mean each of the following in its capacity as such: (a) the Trustee; (b) the Committee; and (c) with respect to each of the foregoing Entities in clauses (a) and (b) such entity's successors and assigns and current and former affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals.

"**Executory Contracts, Unexpired Leases, and Regulatory Obligations**" shall mean a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code, or any regulatory obligation related to electricity generation or renewable energy.  For avoidance of doubt, Executory Contracts, Unexpired Leases, and Regulatory Obligations shall include any remaining requirements or agreements with any

governmental units or regulatory entities related to power generation or renewable energy certificates.

**"File"** or **"Filed"** means duly and properly filed with the Bankruptcy Court in this Case and reflected on the Bankruptcy Court's official docket for this Case.

**"Final Order"** means an order or judgment of the Bankruptcy Court entered on the Bankruptcy Court's docket: (a) that has not been reversed, rescinded, stayed, modified, or amended; (b) that is in full force and effect; and (c) with respect to which (i) the time to appeal or seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely Filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

**"General Unsecured Claims"** means Prepetition Claims that are not 503(b)(9) Claims, Priority Tax Claims, or Other Priority Claims.

**"Holder"** means the legal or beneficial holder of any Claim against the Estate.

**"Impaired"** means, when used with respect to a Claim, the legal, equitable, and contractual rights to which a Holder of a Claim is entitled when altered by the Plan.

**"Insurance Policy"** means and includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that belongs or at any time belonged to or includes or at any time included the Debtor as a named insured, additional insured, beneficiary, or assignee, including, without limitation, any "Directors and Officers" and other fiduciary liability insurance policy, other than any insurance policy sold, transferred, or assigned to the Buyer in connection with the Sale Transaction.

"**IRS**" means the United States Internal Revenue Services, part of the United States Department of the Treasury, a federal agency that is responsible for the collection and enforcement of taxes.

"**Liquidating Trust**" means the trust established pursuant to the Plan and in accordance with the Liquidating Trust Agreement.

"**Liquidating Trust Agreement**" means the agreement between the Committee, the Chapter 11 Trustee, and the Liquidating Trustee pursuant to the Confirmation Order, as the same may be amended from time to time in accordance with its terms and approved pursuant to the Confirmation Order.

"**Liquidating Trustee**" means Anthony J. Manhart, who shall be appointed as Liquidating Trustee under the Liquidating Trust Agreement.

"**Other Priority Claim**" means, collectively, any Prepetition Claim entitled to priority under § 507 of the Bankruptcy Code that is not an Administrative Expense or a Priority Tax Claim.

"**Person**" means the same as the term "person" as defined in § 101(41) of the Bankruptcy Code.

"**Petition Date**" means September 14, 2022.

"**Plan**" means this plan under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or altered, amended, or modified from time to time.

"**Plan Documents**" means those documents necessary to effectuate the Plan.

"**Plan Proponents**" means the Committee and the Chapter 11 Trustee, who have jointly negotiated and proposed this Plan.

"**Postpetition**" means the time from and after the Petition Date through the Effective Date.

**"Postpetition Bar Date"** means the date 30 days after the Confirmation Date by which any party-in-interest may file a Professional Fee Claim.

**"Postpetition Credit Facility"** means the credit facility provided by the DIP Lender to the Debtor and authorized by order of the Bankruptcy Court.

**"Prepetition Claim"** means a Claim that arose prior to the Petition Date.

**"Priority Tax Claims"** means Prepetition Claims entitled to priority against the Debtor Estate under § 507(a)(8) of the Bankruptcy Code.

**"Professionals"** means those Persons providing advisory or consulting services to the Debtor, the Chapter 11 Trustee, or the Committee who have been retained pursuant to an Order of the Bankruptcy Court in accordance with §§ 327, 1103, or 1106 of the Bankruptcy Code.

**"Professional Fee Claim"** means an Administrative Expense under §§ 327, 328, 330, 331, 503, or 1103 of the Bankruptcy Code for compensation of Professional services rendered or expenses incurred.

**"Rejection Bar Date"** means the bar date established by the *Order Granting Trustee's First Omnibus Motion to Reject Certain Executory Contracts and Unexpired Leases* [D.E. 381] by which Holders of Rejection Damage Claims must file a Claim evidencing the Rejection Damages Claim against the Debtor and/or Estate, which date is April 9, 2023.

**"Rejection Damage Claim"** means a Claim arising under an unexpired lease or executory contract that is rejected under § 365 of the Bankruptcy Code.

**"Sale Transaction"** means the sale of the Debtor's assets in accordance with the *Order (I) Approving the Sale of Certain Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Granting Related Relief* [Dkt. No. 289].

- 11 -

"**<u>Scheduled</u>**" means information set forth on the Schedules.

"**<u>Schedules</u>**" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by the Debtor with the Bankruptcy Court in this Case, as they may have been or may be amended from time to time.

"**<u>Trustee</u>**" means the Chapter 11 Trustee and the Liquidating Trustee acting in either capacity.

"**<u>Trustee Reserve</u>**" means the $200,000.00 reserve budgeted for Chapter 11 Trustee Professionals and funded by the DIP Lender as part of the Sale Transaction.

"**<u>Unclassified Claim</u>**" means any claim that is not part of any Class, including Administrative Expenses and Priority Tax Claims.

"**<u>Unimpaired</u>**" means that the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim are not altered pursuant to the Plan.

"**<u>U.S. Trustee</u>**" means the Office of the United States Trustee for Region 1.

"**<u>U.S. Trustee Fees</u>**" means all the fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to 28 U.S.C. § 1930.

**B.       <u>Interpretation, Rules Of Construction, Computation Of Time</u>**

**1.       <u>Defined Terms</u>**

Any term used in this Plan that is not defined in the Plan but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

**2.       <u>Rules of Interpretation</u>**

For purposes of the Plan:

(a)    Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

(b)    Any payment required under the Plan on a particular date shall be made on such date or as soon thereafter as practicable;

(c)    Any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d)    Any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented through and including the Confirmation Date which, after they are Filed, may be amended, modified, or supplemented only with the express written consent of the Plan Proponents;

(e)    Unless otherwise specified in a particular reference, all references in the Plan to sections, articles, and exhibits are references to sections, articles, and exhibits of or to the Plan;

(f)    The words "herein," "hereof," "hereto," hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(g)    Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(h)    All exhibits to the Plan and Plan Documents are incorporated herein, regardless of when those exhibits are Filed;

(i)    To the extent any discrepancy exists between the description contained herein of a document or agreement that is an exhibit to the Plan and with the provisions of that exhibit, the actual agreement or document shall govern;

(j)    The rules of construction set forth in § 102 of the Bankruptcy Code shall apply;

- 13 -

(k)     To the extent of any inconsistency, contradiction, or ambiguity between the Disclosure Statement and this Plan, the terms of this Plan shall control; and

(l)     To the extent of any inconsistency, contradiction, or ambiguity between this Plan and the Confirmation Order, the terms of the Confirmation Order shall control.

**3.**    **Time Periods**

In computing any period of time prescribed by or allowed under the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Each Holder of (a) a Claim against the Debtor of whatever nature, whether or not Scheduled and whether unliquidated, absolute or contingent, or (b) any Equity Interests in the Debtor, shall be bound by the provisions of the Plan, and all such Claims and Equity Interests are hereby classified as follows:

3.1    <u>Unclassified Claims</u> shall consist of all Administrative Expenses and Priority Tax Claims.

3.2    <u>Class One</u> shall consist of Other Priority Claims

3.3    <u>Class Two</u> shall consist of General Unsecured Claims.

3.4    <u>Class Three</u> shall consist of Equity Interests.

## ARTICLE IV
## TREATMENT OF THE CLAIMS AND EQUITY INTERESTS BY CLASS

Classified and Unclassified Claims against the Debtor are as follows:

| Class | Type of Claim | Impaired/Unimpaired | Entitled to Vote (Yes/No) |
|---|---|---|---|
| Unclassified | Unclassified Claims | Unimpaired | No |
| Class 1 | Other Priority Claims | Unimpaired | No |
| Class 2 | General Unsecured Claims | Impaired | Yes |
| Class 3 | Equity Interests | Impaired | No (presumed to reject) |

4.1     <u>Unclassified Claims</u> are Unimpaired.

4.1.1   <u>Administrative Expenses</u>.  With respect to all Administrative Expenses other than Professional Fee Claims, the Trustee shall pay each Holder of an Allowed Administrative Expense in full in the Allowed amount, without interest, in Cash on the later of (i) the Effective Date, or (ii) the date that is fourteen (14) days after such Administrative Expense becomes an Allowed Administrative Expense; <u>provided</u>, <u>however</u>, the Holder of an Allowed Administrative Expense may be paid on such other date and upon such other terms as may be agreed upon by that Holder and the Trustee.  Holders of Administrative Expenses (other than 503(b)(9) Claims and Professional Fee Claims) are required to file and serve a request for allowance of such Administrative Expense by the Administrative Expense Bar Date, and any such Holder who fails to timely file and serve such a request shall be forever barred from asserting those Administrative Expenses against the Debtor, the Estate, the Assets, or the Trustee.

4.1.2   <u>503(b)(9) Claims</u>.  Holders of Allowed 503(b)(9) Claims shall be paid in the same manner as other Allowed Administrative Expenses.  However, Holders of 503(b)(9) Claims were required to file proofs of claim by the Claims Bar Dates, and any such Holder who failed to timely file and serve a request shall be forever barred from asserting those Claims against the Debtor, the Estate, the Assets, or the Trustee.

4.1.3    Professional Fee Claims. Holders of Allowed Professional Fee Claims shall be paid in the same manner as other Allowed Administrative Expenses.  Each Professional seeking approval by the Bankruptcy Court of a Professional Fee Claim, which includes compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date must File its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date by no later than the Postpetition Bar Date.  Any objection to such Professional Fee Claims shall be Filed on or before the date specified in the application for final compensation.  All such requests for payment of such Professional Fee Claims shall be subject to the authorization and approval of the Bankruptcy Court. **Persons holding Professional Fee Claims who do not timely File and serve a final fee application shall be forever barred from asserting those Claims against the Debtor, the Estate, the Trustee, or the Assets.**

Subject to the other provisions of the Plan, all reasonable fees for services rendered by the Trustee after the Confirmation Date in connection with the Case and the Plan shall be paid by the Trustee without further Bankruptcy Court authorization.  The fees of the Liquidating Trustee shall be paid by the Liquidating Trust.  The fees of the Chapter 11 Trustee shall be paid from Cash from the Trustee Reserve or the Estate Carveout.

4.1.4    Priority Tax Claims.   Holders of Allowed Priority Tax Claims shall be paid in the same manner as Allowed Administrative Expenses.  All property tax claims, including the claims reflected in Proof of Claim 15 (the Town of Springfield), Claim 77 (New Hampshire Department of Revenue Administration), Claim 78 (New Hampshire Department of Revenue Administration), Claim 78 (New Hampshire Department of Revenue Administration), Claim 83 (Town of Westminster) were assumed by the Buyer as part of the Sale Transaction.

4.1.5   U.S. Trustee Fees.   When due in the ordinary course, all U.S. Trustee Fees shall be paid in Cash from the Estate Carveout, in full.

4.2   Class One Claims are Unimpaired.  Provided that the Holder of an Allowed Class One Claim has not been paid, the Trustee shall pay each Holder of an Allowed Class One Claim in full in the Allowed amount, without interest, in Cash on the later of (i) the Effective Date, or (ii) the date that is fourteen (14) days after such Class One Claim becomes an Allowed Class One Claim, or in either case, as soon as practicable thereafter; provided, however, the Holder of a Class One Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder and the Trustee.

4.3   Class Two Claims are Impaired.  Provided that the Holder of an Allowed Class Two Claim has not been paid, on the Effective Date, Holders of Allowed Class Two Claims shall receive a pro rata beneficial interest in the Liquidating Trust in full and final satisfaction of such Allowed Claims.   On the Effective Date, the Committee shall transfer the so-called "GUC Reserve," funded by the DIP Lender as part of the Sale Transaction, to the Liquidating Trust for the benefit of Holders of Allowed Class Two Claims and subject to the terms of the Liquidating Trust Agreement.  After all Allowed Unclassified Claims and Allowed Class One Claims are paid in full, the Trustee shall transfer all remaining Assets (including all the Causes of Action and related documents) to the Liquidating Trust for the benefit of Holders of Allowed Class Two Claims and subject to the terms of the Liquidating Trust Agreement.

4.4   Class Three Claims are Impaired.  On the Effective Date, all Equity Interests in the Debtor will be extinguished, and the Holders of such Equity Interests shall not receive or retain any distribution, property, or other value on account of such Equity Interests.

**ARTICLE V**
**ESTABLISHMENT OF LIQUIDATING TRUST; THE LIQUIDATING TRUSTEE;**

**EQUITY INTERESTS TO BE RETAINED AND RIGHTS TO BE EXERCISED BY THE
LIQUIDATING TRUST ON BEHALF OF THE ESTATE**

5.1    Establishment of the Liquidating Trust.  The Confirmation Order shall provide that immediately upon entry of the Confirmation Order, the Liquidating Trust Agreement shall take full force and effect.  The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Liquidating Trustee and to ensure the treatment of the Liquidating Trust as a liquidation trust for federal income tax purposes.  A copy of the Liquidating Trust Agreement is attached hereto as **Exhibit A**.

5.2    Purpose of the Liquidating Trust.  The Liquidating Trust shall be established for the sole purpose of distributing certain Assets to Holders of Allowed Class Two Claims and prosecuting the Causes of Action assigned to the Liquidating Trust, with no objective to continue or engage in the conduct of a trade or business.  Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

5.3    Appointment of Liquidating Trustee.  Upon the establishment of the Liquidating Trust on the Confirmation Date, the Liquidating Trustee shall be appointed and vested.  The Liquidating Trustee's powers and duties shall include disbursing the assets of the Liquidating Trust and prosecuting the Causes of Action.  The Liquidating Trustee shall retain professionals necessary to assist him in his duties.  The fees and expenses of the Liquidating Trustee and all professionals retained by the Liquidating Trustee shall be paid in accordance with the Liquidating Trust Agreement, but shall require Bankruptcy Court approval.

5.4    Preservation of All Causes of Action.  In accordance with § 1123(b) of the Bankruptcy Code, upon the transfer of the Causes of Action to the Liquidating Trust, the

Liquidating Trust shall be vested with, retain, and may enforce and prosecute any claims that the Estate may have against any Person that constitute Causes of Action, subject to the provisions of this Plan.  The Liquidating Trustee shall have standing on behalf of the Estate for the purposes of investigating, pursuing, prosecuting, settling, collecting, litigating, and/or recovering any Assets or Causes of Action that the Estate has or may pursue, subject to the provisions of the Plan.

### ARTICLE VI
### CLAIMS ALLOWANCE

6.1     <u>Claims Subject to Allowance</u>.  Notwithstanding any other provision of the Plan, no Distribution shall be made on account of any Claim or Administrative Expense until such Claim or Administrative Expense is Allowed.

6.2     <u>Amendments to Proofs of Claim</u>.  In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim Filed on or before the Claims Bar Dates, unless the Claimant in the proof of claim expressly reserved the right to amend such proof of claim, in which case any such amended proof of claim must be Filed by the Confirmation Date.  No order allowing or disallowing a Claim may be reconsidered, pursuant to § 502(j) of the Bankruptcy Code or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

6.3     <u>Post-Petition Claims</u>.  Any Administrative Expense, other than fees of the U.S. Trustee, arising or accruing before the Confirmation Date shall be forever barred unless it is the subject of a request for allowance and payment on or before the Postpetition Bar Date.  Any such request shall be Allowed in full unless an objection thereto is Filed by the Claim Objection Deadline.

**ARTICLE VII**
**MEANS OF EXECUTION OF THE PLAN**

7.1     Funding of the Plan.  The Plan shall be funded by the Assets of the Estate that exist on the Confirmation Date.

7.2     Timing of Distributions.  Except as otherwise set forth in the Plan, Distributions shall be made on the Effective Date of the Plan.

7.3     Manner of Distribution.  At the option of the Trustee, any Distributions under this Plan may be made either in cash, by check drawn on a domestic bank, or by wire transfer. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan.  Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

7.4     Delivery of Distributions.  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made by the Trustee: (a) at the addresses set forth on the proofs of claim Filed by such Holders; (b) at the addresses set forth in any written notices of address changes delivered to the Trustee, after the date of any related proof of claim; or (c) at the addresses reflected in the Schedules, if no proof of claim has been Filed and the Trustee has not received a written notice of a change of address.

7.5     Undeliverable Distributions.  In an effort to ensure that all Holders of Allowed Claims receive their allocated Distributions, the Liquidating Trustee will maintain a list of unclaimed Distribution Holders.  This list will be maintained and updated as needed for as long as the Case stays open.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable Distribution within three (3) months after the first attempted delivery shall have its Claim for such undeliverable Distribution expunged and shall be forever barred from asserting any such Claim against the Debtor, its Estate, the Liquidating Trust Estate, the

Liquidating Trustee, or their respective property.  In such cases, any Cash held for Distribution on account of such Claims shall be property of the Liquidating Trust, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan.  Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim. Similarly, checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within three (3) months following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor, the Liquidating Trust, their property, and the Liquidating Trustee. Any Distribution which is deemed nonnegotiable shall re-vest in the Liquidating Trust and be available for Distribution consistent with the Plan.

7.6     <u>Minimum Distributions</u>.  If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular Distribution Date, the Liquidating Trustee may hold the Cash Distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash Distribution owed to any Holder of an Allowed Claim never equals or exceeds fifty dollars ($50), then the Liquidating Trustee shall not be required to distribute Cash to any such Holder.

7.7     <u>Setoffs and Recoupments</u>.  The Trustee may, pursuant to §§ 553 and 558 of the Bankruptcy Code and applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims or Causes of Action of any nature whatsoever that are proven valid that the Estate may have against the Holder of such Claim, <u>provided</u>, <u>however</u>, that neither the failure to effect such offset or

recoupment, nor the allowance of any Claim, shall constitute a waiver or release by the Trustee of any right of setoff or recoupment that the Trustee may have against the Holder of such Claim, nor of any other Claim or Cause of Action.

7.8    <u>Distributions in Satisfaction; Allocation</u>.    Except for the obligations expressly imposed by this Plan and the Assets and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in this Plan shall be in complete satisfaction and release of all Claims against, and Equity Interests in, the Debtor, the Estate, and the Assets, whether known or unknown, arising or existing prior to the Effective Date.

7.9    <u>Cram Down</u>.    In the event that any Class allowed to vote is deemed Impaired under this Plan, and refuses to accept the terms of the Plan, the Plan Proponents shall, and hereby do, move the Bankruptcy Court to confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code. All Claims of Creditors and the rights of all Holders of Equity Interests in the Debtor shall be satisfied solely in accordance with the Plan.

**ARTICLE VIII**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND REGULATORY**
**OBLIGATIONS**

8.1    <u>Rejection of Executory Contracts, Unexpired Leases, and Regulatory Obligations</u>. The executory contracts and unexpired leases not otherwise assumed by the Buyer through the Sale Transaction were deemed rejected as of January 30, 2023.[2]  For the avoidance of doubt, all Executory Contracts and Unexpired Leases shall include any and all regulatory obligations, which are deemed rejected, such that the Debtor shall have no outstanding obligations, reporting requirements, or other requirements as a "public utility", "market participant" or otherwise.

---

[2] The Group Contract between the Debtor and Anthem Health Plans of Maine Inc. d/b/a Anthem Blue Cross is deemed rejected as of December 31, 2022.

8.2     <u>Bar Date for Claims for Rejection Damages</u>.  If the rejection of an Executory

Contract or Unexpired Lease gives rise to a Claim by the other party or parties to such contract or

lease, such Rejection Damage Claim shall be forever Disallowed, barred, and expunged in its

entirety, and shall not be enforceable against the Assets, the Debtor, the Liquidating Trust, or the

Estate, without further notice to any party, or action, approval, or Order of the Bankruptcy Court,

unless a proof of claim is Filed and served on the Trustee and its counsel  on or before the Rejection

Bar Date.  Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a

previously established bar date in the Case, such previously established bar date shall be deemed

operative and will not be deemed extended by virtue of this Article VIII(B).  All Rejection Damage

Claims for which proofs of claim are required to be Filed, if Allowed, will be classified and treated

as General Unsecured Claims, subject to the provisions of this Plan.

8.3     <u>Insurance Policies</u>.  For the avoidance of doubt, on the Effective Date, the Debtor's

rights with respect to all Insurance Policies under which the Debtor may be a beneficiary or

assignee (including all Insurance Policies that may have expired prior to the Petition Date, all

Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the

Debtor after the Petition Date, and all Insurance Policies under which the Debtor holds rights to

make, amend, prosecute, and benefit from claims), other than those Insurance Policies assigned to

the Buyer in the context of the Sale Transaction, shall revest in the Debtor as necessary for the

Trustee to pursue and prosecute any Causes of Action, and to the extent that any Insurance Policies

are not necessary for the pursuit and prosecution of any Causes of Action by the Trustee, all such

Insurance Policies shall be transferred to the Liquidating Trust from the Effective Date until its

dissolution, unless any such Insurance Policy is otherwise canceled by the Trustee in the Trustee's

discretion.  Notwithstanding any provision providing for the rejection of Executory Contracts, any

Insurance Policy that is deemed to be an Executory Contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Trustee, as applicable, who shall retain the right to assume or reject any such Executory Contracts pursuant to and subject to the provisions of § 365 of the Bankruptcy Code following the Effective Date.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the Insurance Policies requiring cure, and that nothing in any prior Order, any prior agreements, or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action. The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action and to limit any Claims against the Estate.

### ARTICLE IX
### EFFECT OF CONFIRMATION

9.1.    <u>Binding</u>.  Confirmation will bind the Debtor, all Creditors, Equity Interest Holders, and any other party in interest to the provisions of the Plan.  If the Plan is confirmed by the Bankruptcy Court, then the treatment of Claims set forth in this Plan supersedes and replaces any agreements or rights the Holders of Claims have in or against the Debtor and/or the Estate and/or the Assets.

9.2    <u>Discharge</u>.  Confirmation of this Plan shall discharge the Debtor and the Estate from all Claims arising before the Confirmation Date, except as expressly provided herein.  The provisions of this Plan shall bind all Holders of Claims and Equity Interests, whether or not they accept the Plan.

**EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY**

CLAIM, WHETHER AN ALLOWED CLAIM OR NOT, FOLLOWING THE CONFIRMATION DATE.

9.3     Good Faith.  Confirmation of the Plan shall constitute a finding that this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code. There is no offer, issuance, sale, or purchase of any security under the Plan.

**Accordingly, as of the Effective Date, the Exculpated Parties shall be deemed exculpated by Holders of Claims against and Equity Interests in the Debtor and other parties in interest to the Case (including, without limitation, the Debtor and the Estate), from any and all claims, causes of action, and other assertions of liability (including, without limitation, breach of fiduciary duty), arising out of or related to the Case or the exercise by such entities of their functions as members of, advisors to or attorneys for the Exculpated Parties, including without limitation the formulation, negotiation, preparation, dissemination, Confirmation, and consummation of this Plan and any agreement, instrument, or other document issued hereunder or related hereto.**

9.4     Injunction.  Except as otherwise expressly provided in this Plan, the documents executed pursuant to this Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have held or currently hold Claims against, or interests in, the Debtor or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against the Debtor, the Estate, the Liquidating Trust, the Trustee, or the Assets; (b) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, the Trustee, or the Assets; (c) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against the Debtor, the

Estate, the Liquidating Trust, the Trustee, or the Assets; (d) asserting or effecting, directly or

indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due

to the Debtor, the Estate, the Liquidating Trust, the Trustee, or the Assets; (e) any act, in any

manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with

any provisions of this Plan; and (f) enforcing or attempting to enforce any claim or cause of action

against the Debtor, the Estate, the Trustee, or the Assets based on, arising from or related to any

failure to pay, or make provision for payment of, any amount payable with respect to any Other

Priority Claim on which the payments due under this Plan have been made or are not yet due under

this Plan.  Any Person injured by any willful violation of such injunction shall be entitled to recover

actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages from the willful violator.  Nothing contained in this Article IX shall

prohibit the Holder of a Claim from litigating its right to seek to have such Claim declared an

Allowed Claim and paid in accordance with the Distribution provisions of this Plan, or enjoin or

prohibit the interpretation or enforcement by the Holder of such Claim of any of the obligations of

the Debtor, the Estate, or the Liquidating Trustee under this Plan.

       9.5    <u>Term of Injunctions</u>.  Unless otherwise provided herein or in the Confirmation

Order, all injunctions or stays provided for in the Case by orders of the Bankruptcy Court, under

§§ 105 or 362 of the Bankruptcy Code, this Plan, or otherwise, and existing on the Confirmation

Date, shall remain in full force and effect until the entry of the Confirmation Order.

       9.6    <u>Dissolution of the Committee</u>.  As of the Effective Date, the Committee shall be

dissolved.  Following the Effective Date, the interests of Allowed Class One Claims shall be

represented by the Trustee who shall have standing in the Case as a party-in-interest.

       9.7    <u>Exculpation</u>.  Pursuant to § 1123(b) of the Bankruptcy Code, and except as

otherwise specifically provided in the Plan, for good and valuable consideration, on and after the

Effective Date, each Exculpated Party is deemed exculpated and released by the Debtor, and its

Estate, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies,

and liabilities, including any derivative Claims asserted on behalf of the Debtor, whether known

or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or fixed, matured

or unmatured, in law, equity, or otherwise, whether for tort, contract, violations of federal or state

securities laws, or otherwise, based on, relating to, or arising from, in whole or in part, any matter

in connection with the Case, the subject matter of any Claim or Interest that is treated in the Plan,

the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Sale

Transaction, or upon any other act or omission, transaction, agreement, event, or other occurrence

relating to the Case or its prosecution.

9.8    <u>Transfers Exempt From Transfer Taxes</u>.  Pursuant to § 1146(c) of the Bankruptcy

Code and applicable non-bankruptcy law, the assignment or surrender of any lease or sublease, or

the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection

with the Plan, including the execution, delivery, and recording of any deeds, bills of sale, or

assignments executed in connection with any disposition of the Assets under, in furtherance of, or

in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage

recording, sales, use, or similar tax.

**ARTICLE X**
**<u>RETENTION OF JURISDICTION</u>**

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the

Bankruptcy Court shall retain exclusive jurisdiction with respect to the following matters:

(a)     To adjudicate all controversies concerning the classification, allowance, or

determination of any Claim or interest;

(b)    To hear and determine all Claims arising from rejection of any executory contract or unexpired lease, and to consummate the rejection and termination thereof;

(c)    To liquidate damages in connection with any disputed contingent or unliquidated Claims;

(d)    To adjudicate all Claims to, or ownership of, the Assets or any proceeds thereof arising prior to and after the Effective Date;

(e)    To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(f)    To hear and determine any and all Causes of Action, including, without limitation, any and all preference actions, fraudulent transfer actions, any actions brought against the Debtor's directors, officers, and insiders, and other matters brought pursuant to the Trustee's powers;

(g)    To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of expenses and all other Administrative Expenses which may be pending on, or made after, the Confirmation Date;

(h)    To adjudicate any and all motions, adversary proceedings, and litigated matters pending on the Confirmation Date or Filed thereafter within any applicable statutory period;

(i)    To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Case, the Estate, the Trustee, or any controversy or dispute which may affect the Trustee's ability to implement or fund the Plan; and

(j)    To hear and determine such other matters as the Bankruptcy Court in its reasonable discretion shall deem appropriate.

## ARTICLE XI
## GENERAL PROVISIONS

11.1   <u>Construction</u>.  The article and section headings used in this Plan are inserted for convenience and reference only, and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretation of this Plan.

11.2   <u>Severability</u>.  Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

11.3   <u>Controlling Documents</u>.  In the event and to the extent that any provision of this Plan (or any exhibit annexed hereto) is inconsistent with the provisions of the Disclosure Statement or any other agreement, document or instrument required or contemplated to be executed pursuant to this Plan, the provisions of this Plan shall control and take precedence.

11.4   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other controlling federal statutes or laws, are applicable, the rights and obligations arising under this Plan and any documents, instruments or agreements executed in connection with this Plan (except as otherwise indicated in such documents, instruments and agreements), shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Maine.

11.5   <u>Further Assurances and Cooperation</u>.  The Trustee and each Person required or contemplated by this Plan to execute and deliver a written instrument, agreement, or document, shall execute and deliver such instrument, agreement, or document in form and substance satisfactory to the Trustee, as applicable, and shall perform all other and further reasonable acts requested by the Trustee, as applicable, in order to permit the purposes and intents of this Plan to be consummated.

11.6   <u>Substantial Consummation</u>. For the avoidance of doubt, substantial consummation of this Plan shall not occur until on or after the Effective Date.  Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by Plan Proponents with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any Assets.  Notwithstanding anything to the contrary in the Plan, if the Plan is not Confirmed, nothing contained in the Plan shall: (i) be deemed to be an admission by the Plan Proponents with respect to any matter discussed in this Plan, including liability on any Claim or the propriety of any Claim's classification: (ii) constitute a waiver, acknowledgement, or release of any Claims, Equity Interests, or any claims held by the Debtor or the Estate; or (iii) prejudice in any manner the rights of the Plan Proponents or the Estate in any further proceedings.  All rights are reserved to any party-in-interest, including the Plan Proponents and Debtor and its Estate, under § 1127 of the Bankruptcy Code.

11.7   <u>Waiver of Stay</u>.  The Plan Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

**ARTICLE XII**
**<u>MODIFICATION OF THE PLAN</u>**

12.1   <u>Modification Prior to Entry of Confirmation Order</u>.  The Plan Proponents may propose modifications to this Plan, including any of the exhibits attached to this Plan, at any time prior to the entry of the Confirmation Order, with approval of the Bankruptcy Court and upon notice to Creditors or to such parties as may be directed by the Bankruptcy Court.

12.2   <u>Modification After Entry of Confirmation Order</u>.  After entry of the Confirmation Order, but prior to the Effective Date, the Trustee may, so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission, or reconcile any

inconsistencies in this Plan, or in the Confirmation Order, in such manner as may be necessary to carry out and implement the purposes and intents of this Plan.  Following the Effective Date, modification of the Plan shall be permitted only to the extent allowed by the Bankruptcy Court after notice and hearing as the Bankruptcy Court shall determine appropriate.

### ARTICLE XIII
### CONDITIONS PRECEDENT TO EFFECTIVE DATE

The Plan shall not become effective, and the Effective Date shall not occur, unless and until the Confirmation Order is entered by the Bankruptcy Court.

Date: August 18, 2023

/s/ Jeremy R. Fischer
Jeremy R. Fischer
Kellie W. Fisher
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Telephone: (207) 772-1941
E-mail: jfischer@dwmlaw.com
  kfisher@dwmlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

-and-

/s/ Anthony J. Manhart
Anthony J. Manhart
Bodie B. Colwell
**PRETI FLAHERTY LLP**
One City Center
PO Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000
E-mail: amanhart@preti.com
  bcolwell@preti.com

*Counsel for Anthony J. Manhart, Chapter 11 Trustee*