**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>STORED SOLAR ENTERPRISES, SERIES LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10191 |

**MAINE REVENUE SERVICES' OBJECTION TO THE PROPOSED DISCLOSURE STATEMENT WITH RESPECT TO THE CHAPTER 11 PLAN FOR STORED SOLAR ENTERPRISES, SERIES LLC PREPARED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND CHAPTER 11 TRUSTEE DATED AUGUST 18, 2023**

Maine Revenue Services ("MRS") files this objection (the "Objection") to the adequacy of the Disclosure Statement with Respect to the Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared By the Official Committee of Unsecured Creditors and Chapter 11 Trustee Dated August 18, 2023 [D.E. 441] (the "Disclosure Statement") for Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared by the Official Committee of Unsecured Creditors and the Chapter 11 Trustee Dated August 18, 2023 [D.E. 439] (the "Plan") and respectfully states as follows:

**UPDATE TO THE COURT SINCE ENTRY OF THE COURT'S MAY 30, 2023 CONTINUED HEARING ORDER**

1.     On May 30, 2023, after an initial hearing on the previously proposed disclosure statement dated April 11, 2023 [D.E. 397], the Court entered the Order Scheduling Continued Hearing on the Disclosure Statement and Directing Plan Proponents to Show Cause Why Case Should Not be Converted or Dismissed [D.E. 425] ("Continued Hearing Order").

1

2. At the time of the entry of the Continued Hearing Order, MRS's understanding was that neither the Committee nor the Trustee had yet confirmed that the Debtor (which had been created shortly before the bankruptcy petition for relief was filed) was a pass-through entity for federal tax purposes. Since MRS first raised the 2022 tax issues with the Trustee on March 7, 2023, MRS has proceeded under the assumption that the Debtor was likely a pass-through entity for federal income tax purposes.

3. On August 22, 2023, the Trustee informed counsel for MRS that his retained accountants had confirmed the Debtor was a pass-through entity for federal tax purposes. MRS does not have any information beyond the Trustee's email to take any position on whether or not the Debtor properly elected to be treated as a partnership or S corporation for federal tax purposes when it was formed in August 2022.

4. Based on the information currently available to it, MRS understands that at least one of the Debtor's members is not a resident of Maine.

5. Prior to entry of the Continued Hearing Order, MRS identified both 36 M.R.S.A. §§ 5250-A (Supp. 2022) & 5250-B (2010) as the basis for its estimated administrative proof of claim. *See* Claim Register, no. [333]. As of September 18, 2023, MRS has identified two required, but unfiled, State of Maine tax returns.

   a. The first missing return, the applicable REW return was due within 30 days of the sale of the Debtor's real property assets in Maine. *See* 36 M.R.S.A. § 5250-A(2). A copy of a 2022 REW-1-1040 return is attached here as **Exhibit A**.[1] While MRS

---

[1] Although this return states on its face that it is for sellers who are individuals or sole proprietors, it also applies to LLCs and S Corporations. When the seller of real property is a pass-through entity (LLC, S corporation, partnership, grantor or revocable trust, etc.), a separate Form REW-1-1040, REW-1-1041, or REW-1-1120, whichever applies, must be filed for each individual, fiduciary, or corporate member/ owner. Further, the instructions provide that "[i]n no case may a pass-through entity claim real estate withholding as a payment of Maine pass-through entity withholding or other entity-level tax." Further, on each Form REW-1-1120, line 1a, the seller should enter the applicable name and EIN of the corporation in the spaces provided. Also enter on line 1b the passthrough entity's

has no idea what communications happened between the Trustee, Committee, and the purchaser of the Maine assets beyond the terms of the purchase and sale agreement [D.E. 233], it is generally the real estate purchaser that files the REW return executed by both the seller and purchaser with the relevant tax.

b. The second missing return, form 941P-ME, was due on or before March 15, 2023.[2] A copy of a 2022 941P-ME return, along with corresponding schedules 2P and 3P and the instructions for the return, is attached here as **Exhibit B**. All pass-through entities treated as a partnership or S corporation for federal tax purposes that transact business in Maine (except certain financial institutions) or realized Maine-source income and had, during the reporting period, at least one nonresident member (owner) must file a form 941P-ME. *See* 36 M.R.S.A. § 5250-B. This return is due regardless of whether any withholding tax is due. *See* 18-125 C.M.R. ch.803, § .06(A)(1) (2021).[3]

---

name, EIN, and pass-through entity type.  To the extent the Debtor or other relevant and responsible parties believe that a supplemental or different tax return is applicable in this situation, 2022 returns are available here: https://www.maine.gov/revenue/tax-return-forms/real-estate-withholding

[2]  This deadline is automatically extended if an entity has an extension from the Internal Revenue Service (IRS) for filing a federal informational return. If the IRS grants an extension, then the due date for filing the 941P-ME is automatically extended for an equivalent period of time, generally up to six months, but no longer than eight months. However, if an entity has a pass-through entity withholding due (*see* Form 941P-ME, line 3a) that amount must be paid by March 15, 2023 using the voucher form 901ES-ME (referred to as a "quarterly return") to make the payment. *See* 18-125 C.M.R. ch.803, § .06(A)(1) (2021).  A copy of the Chapter 803 is attached hereto as **Exhibit C**. Counsel for MRS assumes that the Debtor received an extension from the IRS and that MRS's tandem extension of time to file applies.

[3]  In addition to the report of tax due pursuant 36 M.R.S.A. § 5250-B, the 941P-ME return provides crucial information to MRS regarding the Debtor's Maine Apportionment Factor (*see* ln. 4(c)), total entity income or loss (*see* ln. 5), and ownership disclosures on the relevant schedules.  Upon information and belief, the debtor was created in August 2022 as a series LLC pursuant to 6 Del. C. § 18-215, for which Maine has no analog statute. As the court is aware, depending on how the Debtor's relationships with its affiliated series LLCs are structured, the Debtor may have the same - or separate - rights and duties with respect to obligations of the separate series LLCs. *See* 6 Del. C. § 18-215(a).

6. Based on all information available to MRS, the Debtor realized a gain on the sale of its Maine real estate assets in December 2022.

7. With respect to the REW return, MRS understands that the Trustee maintains that the purchaser is the sole responsible party for filing the return. Under normal circumstances, MRS acknowledges that it is customarily the case that a purchaser files the REW return with any payment of tax. However, this issue is complicated by the fact that the preparer of the West Enfield Real Estate Transfer Tax form claimed that the seller of that parcel was qualified as a Maine resident. However, despite naming the same seller, the Jonesboro Real Estate Transfer Tax form that was completed in conjunction with the Jonesboro property included two documents – one claiming the seller was a resident and one form not. Copies of the real estate transfer tax forms (that were originally filed as the respective registry of deeds) with respect to West Enfield and Jonesboro properties are attached hereto as **Exhibit D**.

8. These inconsistencies and questions raised by the transfer tax forms matter because Maine statute provides that if the Trustee had filed an affidavit under penalty of perjury that it was a Maine resident (albeit, using an official MRS affidavit form), then the REW return would not need to be filed with MRS. *See* 36 M.R.S.A. § 5250-A(3)(a). MRS has no independent knowledge of what information was provided by the seller to the purchaser as part of the 2022 real estate transactions.

9. Further with respect to the REW return (and the fact that the obligation to complete, sign, and file the return appears to have been completely ignored by the parties to the sale transaction), certain estate professionals, including any attorney, escrow company and/or title company, responsible for closing the transaction and "[a]ny other person who receives and disburses the consideration or value for the interest or property conveyed" are liable for failing to

4

report and withhold tax.  36 M.R.S.A. § 5250-A(1)(B) & (9).  The identity of professionals for non-payment of tax owed to MRS is not yet fully ascertained, but it appears likely that certain "Exculpated Parties" (as defined in the Plan) are responsible parties under this statute.

10. With respect to the 941P-ME return (which has not yet been filed), the Trustee and Committee informed MRS that it believes it is exempt from payment of the tax due under 36 M.R.S.A. § 5250-B pursuant to 18-125 C.M.R. ch.803, § .06(C)(1)(f) (2021).on the basis that in order to have the Plan confirmed the Debtor must comply with 11 U.S.C. § 1129(b)(2).  Whether 1129(b)(2) was an absolute prohibition of distributions as described in the MRS regulations during the period at issue (2022) is a question that MRS cannot properly consider until the required 941P-ME return is filed.  Section 1129(b)(2) of the Bankruptcy Code, and its application, is materially different than the prohibition on distributions to equity holders that exist for federally qualified low-income housing projects, and which fall squarely into the exemption provided for in § .06(C)(1)(f) of Chapter 803.

11. Ultimately, MRS has always acknowledged that these issues could potentially be resolved by a non-debtor, upstream entity, and/or individual owner (depending on the tax structure of the equity owners) filing their own 2022 State of Maine income tax returns and paying any associated tax.  No upstream entity has filed its State of Maine tax return to date.

12. Independent from the above-described possible resolution of the underlying tax issues, Maine law imposes reporting, and tax payment, obligations on Maine pass-through entities when their equity owners are not Maine residents.  Given the nature of the disclosed potential causes of action in the Disclosure Statement, MRS should not be (and is not under state law) required to become involved in what amounts to an intercompany dispute between the Debtor and its owners to collect state income that appears likely to be owed.  The Debtor's resolution of its

5

own State of Maine tax issues may be best served by working in concert with its equity owners on these issues (before it takes on litigation against these same parties).

### SUMMARY OF OBJECTION

13.     MRS objects to the Disclosure Statement on the following grounds:

- The Disclosure Statement contains confusing and/or misleading information with respect to the Trustee's intention to file required State of Maine tax returns. Both the REW return and 941P-ME are outstanding and MRS's understanding is that Trustee disclaims any responsibility to file these returns.[4]

- The Disclosure Statement is misleading because it, in conjunction with the terms of the proposed Plan, impermissibly establishes April 2, 2023, as the date by which parties asserting administrative expense claims to file motions for allowance and payment of claims. The Order Establishing Deadline for Filing Administrative Proofs of Claim and Directing the Form and Manner of Notice [D.E. 369] set April 2, 2023, as the deadline for parties to file administrative claims (not taking the entirely separate action of filing a motion for allowance or payment).

- The Disclosure Statement seeks to solicit votes on a Plan that is not confirmable as the Plan contains an overbroad and impermissible "exculpation" (i.e., a third-party release) of certain estate professionals in connection with actions related to the sale of the Debtor's Maine real property interest in December 2022. *See* Plan, § 9.3.

### RELEVANT BACKGROUND

14.     Pursuant to the Order Establishing Deadline for Filing Administrative Proof of Claim and Directing the Form and Manner of Notice [D.E. 369] MRS timely filed its claim for administrative expense pursuant to 11 U.S.C. §§ 503(b), 507(a), and 1114(e) against the Estate.

---

[4]     Until the State of Maine tax return(s) and liability issues are resolved, MRS maintains, as the State of New Hampshire argued in its objection to the disclosure statement proposed in April at D.E. 410, that the Plan is administratively insolvent and cannot be confirmed pursuant to 11 U.S.C. § 1129(a)(9). In the event the Disclosure Statement is approved over MRS's objection, and the parties cannot reach a consensual resolution of the outstanding State of Maine tax issues, MRS will object to confirmation of the Plan on this basis.

*See* Claim Register, no. [333]. *Addendum A* to MRS's administrative proof of claim provides the legal and factual background that gives rise to MRS's claim.

15. As outlined in *Addendum A* to its proof of claim, MRS asserts that the Debtor owes Maine income tax on any gain realized from the December 2022 sale of the real property located in Enfield, Penobscot County, Maine and Jonesboro, Washington County, Maine. Any gain realized on the sale of the property is Maine-sourced income.

16. Based on the best information currently available to MRS, MRS asserts that the Debtor owes post-petition taxes to MRS regardless of whether it elected to be treated as a pass-through entity for federal income tax purposes.

17. First, pursuant to 36 M.R.S.A. §5250-B, pass-through entities must withhold tax on any Maine source income of nonresident members.

> every pass-through entity that does business in this State must withhold income tax at the highest tax rate provided in this Part on the proportionate quarterly share of Maine source income of each nonresident member. The method for determining the amount of the share of income and for determining the amount of withholding for each nonresident member under this section must be prescribed by rules adopted by the assessor. Rules adopted pursuant to this section are routine technical rules as defined in Title 5, chapter 375, subchapter 2-A.

36 M.R.S.A. §5250-B.

18. Further, MRS did not receive any real estate withholding tax (nor did the parties file the necessary return) in connection with the sale of the real property. MRS did not receive a REW return executed by the Debtor and buyers (nor did either party request a waiver from MRS to limit or relieve the parties from their obligation to report and withhold real estate taxes before the closing) in connection with the 2022 real estate transfers pursuant to 36 M.R.S.A. §5250-A.[5]

---

[5] On line 10 of the real estate transfer tax forms, one of the preparers indicated (after purporting to review the return with both grantor and grantee) that the buyer was not required to withhold Maine income tax because the "Seller qualified as a Maine Resident." Limited Liability Companies are considered partnerships unless otherwise classified for federal income tax purposes, in which case the LLC is classified in the same manner for real estate withholding as it is classified for federal income tax purposes. "Resident" when used in reference to a partnership, means a partnership

7

19. As of the date of the proof of claim, MRS estimated that the Debtor is indebted to the Bureau of Revenue Services in the sum of $267,998.90 for post-petition taxes. These taxes, along with all associated interest and penalties, are an administrative claim pursuant to 11 U.S.C. § 503(b)(1)(B).

**OBJECTION**

20. To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, MRS reserves its rights to assert such objection, as well as any other objections, to confirmation of the Plan.

21. Section 1125 of the Bankruptcy Code prohibits the solicitation of votes on a reorganization plan prior to court approval of a written disclosure statement (after notice and a hearing) that contains "adequate information." *See* 11 U.S.C. §1125(b). The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan. *See Century Glove, Inc. v. First American Bank*, 860 F.2d 94 (3d Cir. 1988); *In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991) (the purpose of a disclosure statement is to provide "adequate information" to creditors to enable them to determine whether to accept or reject a proposed plan). Adequate information is defined by the Code as:

> … information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan ...."

*See* 11 U.S.C. § 1125(a).

---

where at least 75% of whose ownership interest, as of the date of the transfer of Maine real property, is held by residents of the State of Maine. Upon information and belief, over 75% of the Debtor's ownership interest is owned by a Delaware limited liability company.

22. Meaningful and accurate disclosure is at the heart of the bankruptcy process. Whether or not the information provided in the disclosure statement is adequate is determined by the Bankruptcy Code and "is not governed by any otherwise applicable nonbankruptcy law, rule or regulation." 11 U.S.C. § 1125(d); *see also Kaufman v. Public Serv. Co. of N.H. (In re Public Serv. Co. of N.H.)*, 43 F.3d 763, 766 (1st Cir. 1995); *In re El Comandante Mgmt. Co., LLC*, 359 B.R. 410, 415 (Bankr. D.P.R. 2006).

23. Courts have held that an acceptable disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). In short, a proposed disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

24. MRS believes that in several material respects, the Disclosure Statement does not contain information sufficient to enable a reasonable person to make an "informed judgment about the Plan." Indeed, the Disclosure Statement and the Plan contain certain broad and ambiguous provisions and/or omit material facts that (i) may mislead holders of claims or interests or (ii) should be available to holders of claims or interests.

25. In order to bring the Disclosure Statement into compliance with 11 U.S.C. § 1125(a), the Disclosure Statement and Plan must be modified as set forth herein. Unless and until the Plan and Disclosure Statement are revised, the Disclosure Statement should not be approved.

**A. The Disclosure Statement Must Provide A Complete And Accurate Description Of MRS's Administrative Claim and its Potential Impact on Distribution to Impaired Creditors**

26. The Disclosure Statement fails to provide a complete and accurate description of MRS's Claim and its potential impact (if any) on distributions to other, non-administrative creditors. The Disclosure Statement does not refer in any way to the Trustee and Committee's current dispute with MRS or adequately describe the extent or nature of MRS's asserted claim. In summary fashion, the plan proponents simply disclose that they "anticipate reaching a resolution of the administrative claims asserted by the Taxing Authorities after the tax returns are filed." Disclosure Statement, pg. 8. To wrap the matter up without providing any meaningful information, the Trustee discloses that if it cannot reach an agreement, then the Trustee "will file an objection to the administrative claims asserted by the Taxing Authorities" Disclosure Statement, pg. 9.

27. Given the current procedural posture, the Disclosure State requires more than a simple statement that the Trustee intends to file required tax returns, when in fact he disputes his obligation to file any State of Maine tax returns. These issues must be disclosed so that creditors are adequately informed as to the existence of this known dispute that will require an objection and apparently some extent of litigation in the bankruptcy court, and the potential impact of these issues on distributions to other creditors.

28. MRS asserts an administrative expense claim totaling $267,998.90. While the Disclosure Statement and Plan anticipates that unclassified and class 1 claims are unimpaired, to the extent MRS's claim is allowed (the Plan provides that the Trustee has until 60 days after the Effective Date to object to MRS's claim) and the estate is administratively insolvent, it will not be possible to pay all claims in full in the timeline outlined in the Plan. Further, classes 2 and 3 should be made informed of the outstanding State of Maine tax returns stemming from the Debtor's post-petition business operations and how these issues may impact any recovery for these classes.

**B. The Disclosure Statement is Misleading Because it Will Cause an Interested Party to Believe that Parties Asserting Administrative Claims Were Required to Have Filed a Motion for Allowance and Payment of Their Claim on or Before April 2, 2023.**

29. The Disclosure Statement provides that "[a]ny party owed an administrative expense (other than Professionals holding Professional Fee Claims, as such terms are defined in the Plan) is required to file a request for allowance and payment of such claim on or before the Administrative Expense Bar Date." Disclosure Statement, pg. 15.

30. The Plan defines the "Administrative Expense Bar Date" as "the date that is thirty days after entry of the Order Establishing Deadline for Filing Administrative Proofs of Claim and Directing the Form and Manner of Notice [D.E. 369], which is April 2, 2023." Plan, pg. 4 (definitions).

31. The Plan further provides as follows:

> Holders of Administrative Expenses (other than 503(b)(9) Claims and Professional Fee Claims) are required to file and serve a request for allowance of such Administrative Expense by the Administrative Expense Bar Date, and any such Holder who fails to timely file and serve such a request shall be forever barred from asserting those Administrative Expenses against the Debtor, the Estate, the Assets, or the Trustee.

Plan, § 4.1.1.

32. It is confusing and misleading for the Disclosure State to retroactively try and establish April 2, 2023 as the deadline by which holders asserting administrative claims must file a motion for allowance and payment of the asserted claim. Reasonable parties considering the Plan upon receipt of the Disclosure Statement could review the bankruptcy court docket, find no evidence that any motion for allowance and payment of administrative claims was filed by the deadline provided for in the Disclosure Statement and Plan, and reasonably conclude that all disputes regarding MRS's administrative claim have been fully resolved. Further, with respect to governmental taxing authorities such as

11

MRS, section 503 provides that "notwithstanding the requirements of subsection (a) [of section 503], a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense."  11 U.S.C. § 503(B)(1)(D).

**C. The Plan is Not Confirmable as it Contains an Overbroad and Impermissible Third-Party "Exculpation" of Estate Professionals in Connection with Actions Related to the Sale of the Debtor's Maine Real Property in December 2022.**

33. The Disclosure Statement provides that:

HOLDERS OF CLAIMS AND OTHER THIRD PARTIES SHOULD BE AWARE THAT THE PLAN CONTAINS INJUNCTIONS AND RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

Disclosure Statement, pg. 23 (emphasis in original).

34. The Plan provides as follows:

Accordingly, as of the Effective Date, the Exculpated Parties shall be deemed exculpated by Holders of Claims against and Equity Interests in the Debtor and other parties in interest to the Case (including, without limitation, the Debtor and the Estate), from any and all claims, causes of action, and other assertions of liability (including, without limitation, breach of fiduciary duty), arising out of or related to the Case or the exercise by such entities of their functions as members of, advisors to or attorneys for the Exculpated Parties, including without limitation the formulation, negotiation, preparation, dissemination, Confirmation, and consummation of this Plan and any agreement, instrument, or other document issued hereunder or related hereto.

Plan, § 9.3.  The "Exculpated Parties" are defined as follows:

[…] each of the following in its capacity as such: (a) the Trustee; (b) the Committee; and (c) with respect to each of the foregoing Entities in clauses (a) and (b) such entity's successors and assigns and current and former affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals.

Plan, pg. 8 (definitions).

35. MRS understands, if approved, that this provision would release parties against whom MRS may have direct claims for failure to remit Maine tax pursuant to 36 M.R.S. § 5250-

A(1)(B) & (9) pursuant to the 2022 real estate transaction.  MRS does not consent to release its direct claims against any "Exculpated Parties" who may be a responsible party for the unpaid tax under Maine state law.  As outlined in 36 M.R.S.A. § 5250-A(9), subsequent payment of any real estate withholding tax due (whether the Debtor or a non-debtor upstream entity) by the original or extended due date of the seller's 2022 Maine income tax return will release the persons identified in 36 M.R.S.A. § 5250-A(1)(B) for any amounts owed stemming from the 2022 transaction.

36. As all parties still reading this Objection are likely very aware, there is a long-standing circuit court split on the issue of whether bankruptcy courts may extinguish the liabilities of non-debtors or third parties that have not filed for bankruptcy.  Over twenty-five years ago, in *Monarch Life Inc. Co. v. Ropes & Gray*, the First Circuit Court of Appeals was presented with the issue regarding the propriety of a permanent injunctive provision in a confirmed Chapter 11 plan that insulted the debtor's professionals from third-party claims.  The Court expressed no view on the soundness of precedents cited by the parties before it regarding whether courts have the authority to issue non-debtor/third-party releases or injunctions.  Instead, the First Circuit Court of Appeals held that the party challenging the release was estopped from arguing about the bankruptcy court's jurisdiction regarding such releases as it had not appealed the order of confirmation. *Monarch Life Inc. Co. v. Ropes & Gray*, 65 F.3d 973, 983–94 (1st Cir.1995).

37. While the First Circuit Court of Appeals has not issued binding case law regarding the jurisdiction of the bankruptcy court to issue third-party releases, a number of courts within the First Circuit have balanced the following factors outlined in *In re Master Mtg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr.W.D.Mo.1994) to determine whether to approve injunctions and releases against non-debtors:

- An identity of interests between the debtor and the third-party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;

- The non-debtor has contributed substantial assets to the reorganization;

- The injunction is essential to the reorganization […];

- A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has 'overwhelmingly' voted to accept the proposed plan treatment; and

- The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*See, e.g., In re Chicago Invs., LLC*, 470 B.R. 32, 95 (Bankr. D. Mass. 2012).

38. Despite the application of the *Master Mortgage* factors by lower courts within the First Circuit, MRS's position is that 11 U.S.C. § 524(e) imposes a *per se* prohibition on third-party releases and injunctions. In any event, the Plan Proponents do not have a basis to assert that any of the *Master Mortgage* factors weigh in favor of their proposed release. Specifically,

- MRS is not aware of any indemnity relationship between the Exculpated Parties and the Debtor.
- The Exculpated Parties are not putting forth any cash or other anything else of tangile value to pay creditors (nor should they be expected to, except to the extent that potential third-party claims are purportedly being released).
- The proposed exculpation is not essential to reorganization (i.e., there are no funds being contributed by the Exculpated Parties that are necessary for the Liquidating Plan).
- While no party has voted in this case, it is unlikely that other classes have an interest in whether estate professionals are exculpated or not. Unclassified Taxing Authorities that hold administrative claims (and are not entitled to vote) are likely the only impacted class. MRS does not consent, and objects, to the exculpation.
- At this time, it does not appear that the estate has sufficient funds to pay MRS's claim or has taken the steps reasonably necessary to address this claim.

39. The Plan contains an overbroad and impermissible third-party release and cannot be confirmed. Accordingly, the Disclosure Statement should not be approved. *See, e.g., In re Am. Capital Equip., LLC,* 688 F.3d 145, 154 (3d Cir. 2012*); In re Eastern Maine Elec. Coop., Inc.*, 125

B.R. 329, 333 (Bankr. D. Maine 1991) (A disclosure statement describing a plan that cannot be confirmed cannot be approved, regardless of the amount of disclosure it contains).

40. Finally, even if the Plan Proponents reach a resolution with MRS, MRS maintains it is in the best interest of all creditors for the Plan to carve out any Exculpated Party's willful misconduct or gross negligence from the exculpation clause at section 9.3 of the Plan.

## CONCLUSION

41. Based on the foregoing, MRS respectfully requests that an order be entered (i) denying approval of the Disclosure Statement unless it and the Plan are modified as set forth herein, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: September 18, 2023
Augusta, Maine

Respectfully submitted,

*/s/Kaitlyn M. Husar*
Kaitlyn M. Husar
Assistant Attorney General
Office of Attorney General
6 State House Station
Augusta, Maine 04333
(207) 626-8846
Kaitlyn.m.husar@maine.gov

*Counsel for Maine Revenue Services*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>STORED SOLAR ENTERPRISES, SERIES LLC,<br><br>　　　　Debtor. | Chapter 11<br><br>Case No. 22-10191 |

**CERTIFICATE OF SERVICE**

　　　I, Kaitlyn M. Husar, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Dated: September 18, 2023
　　　Augusta, Maine

　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/Kaitlyn M. Husar*
　　　　　　　　　　　　　　　　　　　　　　Kaitlyn M. Husar
　　　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　　　Office of Attorney General
　　　　　　　　　　　　　　　　　　　　　　6 State House Station
　　　　　　　　　　　　　　　　　　　　　　Augusta, Maine 04333
　　　　　　　　　　　　　　　　　　　　　　(207) 626-8846
　　　　　　　　　　　　　　　　　　　　　　Kaitlyn.m.husar@maine.gov

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Maine Revenue Services*

16