## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re<br><br>STORED SOLAR ENTERPRISES,<br>SERIES LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10191 |

### MOTION OF THE STATE OF NEW HAMPSHIRE
### TO CANCEL OR CONTINUE EVIDENTIARY
### HEARING OR GRANT OTHER APPROPRIATE RELIEF

### REQUEST FOR EXPEDITED DETERMINATION

**This Motion includes a request for an expedited determination pursuant to Local Rule 9013-4.  A statement of the facts and circumstances justifying expedited determination, as required by Local Rule 9013-4(4), is included herein.  Pursuant to Local Rule 9013-4(b) a notice of hearing advising interested parties of the date and time of the hearing and any objection deadline is forthcoming upon further guidance from the Court.**

The State of New Hampshire (the "State"), acting through its Department of Revenue Administration ("DRA"), hereby submits this motion (the "Motion") requesting that the Court enter an order (i) cancelling or continuing the evidentiary hearing presently scheduled for January 29, 2024 or (ii) granting other appropriate relief.  In support of this Motion, the State respectfully states as follows:

### PRELIMINARY STATEMENT

1.      The State files this Motion to protect its rights in the face of a procedure that does not afford it with a fair process for adjudication of disputes.  This Motion is grounded in first principles.  Civil disputes require an initial instrument to bring a dispute before a court, most often a complaint or motion.  Opposing parties respond to factual allegations and legal contentions by answer or objection.  These instruments set out the "metes and bounds" of a dispute.  The

1

procedures set out by the Court lack these central guideposts. The State strongly objects to being required to defend its rights against undisclosed challenges under this set of procedures.

2.      Thus, the State respectfully requests that the Court cancel or continue the hearing set for January 29 and provide relief that is appropriately tailored to providing a fair and reasonable process for adjudication of issues in this case.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. § 1334.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105, 503, and 505 of the Bankruptcy Code, Rules 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules"), and Local Rules 3002-2 and 9013-1.

## BACKGROUND

6.      Stored Solar Enterprises, Series LLC (the "Debtor") commenced this case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on September 14, 2022 (the "Petition Date").

7.      The Office of the United States Trustee (the "U.S. Trustee") filed a notice of appointment [D.E. 73] of the Official Committee of Unsecured Creditors (the "Committee") on October 3, 2022.

8.      On November 7, 2022, the U.S. Trustee appointed Anthony J. Manhart as chapter 11 trustee (the "Trustee" and, together with the Committee, the "Plan Proponents") for the Debtor [D.E. 197].

23335394.v4

9.      On March 31, 2023, the State filed an administrative expense request on a proof of claim form, as permitted pursuant to Local Rule 3002-2, at Claim No. 91-1 (the "Estimated Administrative Expense Request"), and requested payment of $827,862.53 in business profits tax pursuant to N.H. Rev. Stat. Ann. Ch. 77-A for tax year 2022.  However, because the Court set a deadline to file administrative expense requests (the "Administrative Bar Date") of April 3, 2023 – before the April 15, 2023 deadline for the Debtor to file tax returns pursuant to N.H. Rev. Stat. Ann. Ch. 77-A:6 – and the Trustee did not file any returns prior to the Administrative Bar Date, the Estimated Administrative Expense Request was prepared by the State using the best available information at the time it was filed.

10.      The Trustee failed to timely file a business profits tax return with the State before the applicable deadline and failed to seek an extension of the time to file a business profits tax return pursuant to N.H. Rev. Stat. Ann. § 77-A:9.

11.      On April 11, 2023, the Trustee and the Committee filed their *Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared by the Official Committee of Unsecured Creditors and the Chapter 11 Trustee dated April 11, 2023* (the "Original Plan") [D.E. 396] and *Disclosure Statement with Respect to the Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared by the Official Committee of Unsecured Creditors and the Chapter 11 Trustee dated April 11, 2023* (the "Original Disclosure Statement") [D.E. 397].

12.      On May 9, 2023, the State filed the *State of New Hampshire's Objection to the Disclosure Statement with Respect to the Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared by the Official Committee of Unsecured Creditors and Chapter 11 Trustee dated April 11, 2023* (the "DS Objection") [D.E. 410].  The State objected on the basis that the Original Disclosure Statement related to a plan that was patently unconfirmable because it failed to provide

for cash payments to holders of allowed administrative expenses as required by section 1129(a)(9) of the Bankruptcy Code.

13.     Following hearings held on May 18 and May 30, 2023, the Court entered an order (i) continuing the hearing with respect to the Original Disclosure Statement until September 26, 2023, (ii) scheduling a status conference for August 23, 2023, and (iii) directing the Plan Proponents file revised versions of the Original Disclosure Statement and Original Plan to include, in part, "any agreements reached between the plan proponents and the State of New Hampshire" by August 18, 2023 [D.E. 425].  The Court further provided that the State's DS Objection would be deemed to apply to any amended disclosure statement unless withdrawn by the State.  *Id*.

14.     On August 18, 2023, the Trustee and the Committee filed the *Disclosure Statement with Respect to the Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared by the Official Committee of Unsecured Creditors and the Chapter 11 Trustee dated August 18, 2023* [D.E. 441] (the "Disclosure Statement") and the Plan.

15.     On August 21, 2023 – three days **after** the deadline set by the Court for filing a revised disclosure statement and plan – the State received from the Trustee what was purported to be a "short-period" return asserting that $41,114.00 in business profit tax was owed together with a prompt determination request pursuant to section 505(b) of the Bankruptcy Code, covering only the portion of tax year 2022 beginning September 14, 2022 and ending December 31, 2022.  The initial intake process for filed returns results in the issuance of "unaudited" notices of assessment that reflect the amount of tax asserted to be owed by the taxpayer.  Accordingly, the State issued an unaudited notice of assessment (the "Unaudited Assessment") in the amount of **$46,266.20** on

August 28, 2023.[1]   The Unaudited assessment includes billings for (i) $41,114.00 in business profit tax and (ii) $5,155.20 in applicable interest, penalties, and fees.

16.     However, upon further examination of the short-period return, the State discovered that a discrepancy in the dates on the return made it unclear whether this return was actually intended to serve as a return for the entire tax year or only a shorter portion of the year. Accordingly, the State requested that the Trustee file a new, corrected return and prompt determination request containing the intended dates.  This new short-period return and prompt determination request (the "BPT Return"), intended to cover only the portion of tax year 2022 beginning September 14, 2022 and ending December 31, 2022, was received by the State on September 15, 2023.  Based on the BPT Return, the Trustee again asserted that partial-year business profits taxes were owed to the State in the amount of $41,114.00 plus applicable interest, penalties, and fees.  This is the same amount of tax as the Unaudited Assessment, which was not withdrawn.

17.     On September 26, 2023, the Court held a hearing regarding approval of the Disclosure Statement.  The State continued to object to the adequacy of the Disclosure Statement because the Disclosure Statement continued to fail to show that the estate would, at any future time, have sufficient funds to pay the amount asserted in the Estimated Administrative Expense Request.  Given the short duration of time between receipt of the BPT Return and the September 26 hearing, the State was unable at that hearing to advise the Court whether the amount of taxes asserted to be owed by the Trustee was accurate.

18.     On September 28, 2023, the State notified the Trustee pursuant to section 505(b)(2)(A)(i) of the Bankruptcy Code that the BPT Return was selected for examination

---

[1]       Additional interest has accrued, and continues to accrue, since the issuance of this notice.

and requested additional information from the Trustee because, upon review by the Audit Division

of the DRA, the State believed that additional tax, interest, and penalties were likely owed.

19.     On October 6, 2023, the Court entered an order approving of the adequacy of the

Disclosure Statement and scheduling a hearing regarding confirmation of the Plan on November

16, 2023.  [D.E. 462].

20.     After conducting an examination of the BPT Return pursuant to section 505(b) of

the Bankruptcy Code, the State notified the Trustee on October 9, 2023 and pursuant to section

505(b)(2)(A)(ii) of the Bankruptcy Code that the State disputed the amount of taxes, interest, and

penalties asserted to be owed by the Trustee and that $350,165.00 in business profits tax (plus

interest, penalties, and fees) was owed by the estate in addition to amounts reflected on the

Unaudited Assessment.  The State's determination regarding the additional tax owed was based

on a review of additional information provided by the Trustee and other information available to

the State.  The State's notice advised the Trustee that the State would consider any additional

information provided by the Trustee regarding the amount of business profits tax the Trustee

believed to be owed.  No information has been provided to the State that has caused it to alter the

assessed amounts.

21.     On October 18, 2023, the state issued a Notice of Audit Assessment (the "Audited

Assessment" and, together with the Unaudited Assessment the "Notices of Assessment") in the

amount of **$350,802.52**.  The Audited Assessment reflects that at that an additional (i) $309,051.00

in taxes and (ii) $41,751.52 in interest, penalties, and fees were owed by the estate (over and above

the Unaudited Assessment) based on the State's examination of the BPT Return and additional

information in connection therewith.

22.     On October 26, 2023, the State amended the Estimated Administrative Expense

Request by filing Claim No. 91-2 ("Administrative Expense Request"), asserting that the State is

owed **$397,605.16** from the estate for business profits tax and associated interest, penalties, and

fees pursuant to N.H. Rev. Stat. Ann. § 77-A for the portion of tax year 2022 covered by the BPT

Return.  The Administrative Expense Request is comprised of the amounts billed on the Unaudited

Assessment ($46,266.20) and the Audited Assessment ($350,802.52) plus accrued interest,

penalties, and fees.

23.     The Trustee has not sought a redetermination of the Notices of Assessment pursuant

to N.H. Rev. Stat. § 21-J:28-b, has not objected to the Administrative Expense Request in this case,

and has not filed a motion requesting a determination of the business profits tax owed by the estate.

24.     Subsequently, after the State had spent considerable time and resources examining

the BPT Return and preparing objections to the Disclosure Statement and Plan and on the eve of

the confirmation hearing (November 15, 2023), the State received from the Trustee what purported

to be **five entirely new returns**.  These new returns purported to reduce and virtually eliminate

tax liability altogether.  These new returns were comprise of (A) four returns covering the time

period from January 1, 2022 to September 14, 2022 for the following entities: (i) Stored Solar

Bethlehem, LLC; (ii) Stored Solar Tamworth, LLC;[2] (iii) Stored Solar Whitefield, LLC; and (iv)

Stored Solar Springfield, LLC (each entity a "Pre-Merger Entity" and respective return a "Pre-

Merger Entity Returns"); and (B) an additional return for the Debtor covering the time period from

September 14, 2022 to December 31, 2022 (the "Amended BPT Return" and, together with the

---

[2]      This return purports to be for Stored Solar Tamworth, LLC but was filed electronically by the Trustee's
professional using an incorrect taxpayer identification number.

Pre-Merger Entity Returns the "<u>November 15 Returns</u>").[3]  The number and manner of returns filed has been a source of significant confusion and has caused the State to divert finite audit resources from other matters.

25.    The Trustee asserted that the November 15 Returns showed that a total of $15,707.00 in taxes were owed by the estate.  The Trustee included a request for prompt determination pursuant to section 505(b)(2) of the Bankruptcy Code with the November 15 Returns.  The State has undertaken an examination of the Amended BPT Return pursuant to section 505(b)(2)(A) of the Bankruptcy Code.

26.    On November 17, 2023, the Court entered the *Order Scheduling Evidentiary Hearing on Allowance of Administrative Expenses Asserted by Maine Revenue Services and The New Hampshire Department of Revenue Administration* [D.E. 481] (the "<u>Scheduling Order</u>"), which, among other things, scheduled an evidentiary hearing on January 29, 2024 at 9:15 a.m. at the Bankruptcy Court in Bangor, Maine (the "<u>Hearing</u>").  In the Scheduling Order the Court expressly relied on sections 503(b) and 505(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") as sources of authority to conduct the evidentiary hearing.

27.    On January 11, 2023, the State notified the Trustee that the State has rejected the Amended BPT Return pursuant to N.H. Code Admin. R. Rev 201.08.  This is because the Amended BPT Return purported to rely on net operating losses from the Pre-Merger Entity Returns that the State cannot verify or determine with reasonable certainty, and because the Amended BPT Return contained other errors and failed to comply with applicable rules.  However, the State's

---

[3]    Although covering the same time period of the BPT Return, the filing of the Amended BPT Return did not result in the withdrawal of the BPT Return nor the State's previous Notices of Assessment.

examination of the Pre-Merger Entity Returns pursuant to section 505(b)(2) of the Bankruptcy Code remains ongoing.[4]

## RELIEF REQUESTED

28.     Pursuant to sections 105, 505, and 503 and the Bankruptcy Code and Rules 9013 and 9014, the State requests entry on an order (A) cancelling the Hearing under sections 503 and 505 of the Bankruptcy Code; or, in the alternative; (B) continuing the Hearing and convening a status conference on January 29 for consideration of appropriate further proceedings, which may include establishing a deadline for any party to object to the Administrative Expense Request or file a motion for determination of tax liability; or (C) ordering that the State is the only party that may present facts and law at the Hearing, as no other party has objected or filed a motion seeking relief with respect to the Administrative Expense Request.

## ARGUMENT

29.     The State has been provided with no notice of the contours of any contested matter nor the content of any objections against it – including substantive legal and factual bases for such objections or why the State is wrong.  In the schedule outlined by the Court, the State will be given written notice of its opposition parties' (whoever those parties may be, as they are not explicitly identified in the Scheduling Order)[5] substantive factual and legal positions for the very first time **only six working days** before the State must defend itself at a contested trial on those positions. This process is simply not designed to provide the State with a fair opportunity to protect the

---

[4]     The State anticipates that the Pre-Merger Entity Returns will be rejected as incorrect and improper because they were filed incorrectly on a separate entity basis instead of being included in a Capergy US LLC combined return.

[5]     For example, the State still does not know what parties intend to, are required to, or are permitted to file legal memoranda, stipulations, witnesses, and exhibits on January 19, and to present evidence on January 29.  The State does not know if the Trustee, the Committee, both, or neither are required, permitted, or intend to do so.  That means the State does not know what parties it should or must direct discovery towards to ensure it is adequately prepared for trial.

23335394.v4

interests of its citizens and taxpayers and does not meet the minimum standards for adequate due process.

30.     Accordingly, for the following reasons, The State requests that the Court enter an order continuing or cancelling the evidentiary hearing set for January 29, 2024.

**A.     Because there is No Pending Proceeding Requesting a Determination of Tax Liability, the Court Cannot Hold an Evidentiary Hearing Making a Determination of Tax <u>Liability under Section 505 of the Bankruptcy Code</u>**

31.     The Court relies, in part, on section 505 of the Bankruptcy Code as a source of authority to hold the Hearing and determine the amount of tax liability owed by the estate to the State.  However, no party in this case – including the State and the Trustee – has requested that this Court make such a determination.  The Court's reliance on section 505 is, therefore, misplaced.  Without **<u>any</u>** party invoking this Court's authority to determine tax liability, the Court's actions threaten to usurp the sovereign authority of the State to determine and assess the tax liability of its taxpayers.

32.     Section 505(a) permits, but does not require, a bankruptcy court to determine "the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax."  11 U.S.C. § 505(a).  Section 505(b), on the other hand, permits a trustee to initiate a process for expeditious determination of tax liability by a taxing authority, which may be (but is not always) followed by judicial determination of a governmental unit's examination pursuant to a prompt determination request.  11 U.S.C. § 505(b).  The procedure for requesting determination by the Court requires submission of a motion.  *See* Rule 9014 ("In a contested matter . . . **<u>relief shall be requested by motion</u>**.") (emphasis added); *see also* Rule 9013 (providing that a motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought" and

specifying that a request for order shall be by "written motion" unless made during a hearing);[6]
*see also IRS v. Taylor (In re Taylor)*, 132 F.3d 256, 262 (5th Cir. 1998) ("[T]he normal procedure
to determine the amount of a tax debt is for the debtor (or the IRS) to file a motion requesting that
the bankruptcy court make the determination under 11 U.S.C. § 505.").

33.     Here, the Trustee took the second path – both with the BPT Return and the
Amended BPT Return, which were each accompanied by requests for prompt determination
pursuant to section 505(b).  The Trustee's requests initiated a process for determination of tax
liability to first be completed by the State, rather than the Court.  *See* 11 U.S.C. § 505(b)(2) ("A
trustee may request a determination of any unpaid liability of the estate for any tax . . . by
submitting a tax return for such tax and a request for such a determination **to the governmental
unit charged with responsibility for . . . determination**.") (emphasis added).  Construing section
505 to permit simultaneous and competing determinations by the Court and the State is improper
and impedes on the State's sovereign functions (which the State is well-situated to carry out
without assistance from the Court).

34.     The State embarked on such determination by examining the BPT Return and
Amended BPT Return pursuant to sections 505(b)(2)(A)(i) and (ii) of the Bankruptcy Code.  The
Notices of Assessment that support the Administrative Expense Request, in the total amount of
$397,605.16, are the result of the State's examination of the BPT Return and determination
pursuant to section 505(b)(2).[7]  Section 505(b)(2) therefore leaves the Trustee with two options:
paying the taxes determined by the State pursuant to section 505(b)(2)(C) and receiving a

---

[6]     For the avoidance of doubt, the State asserts that no party has made a request for determination by the Court
during a hearing, and the State would object to such motion.
[7]     Upon review of the Amended BPT Return no further assessments were issued; the Amended BPT Return
was rejected pursuant to pursuant to N.H. Code Admin. R. Rev 201.08 because it purported to rely on net operating
losses that the State cannot verify or determine and due to other errors.

discharge from liability for such tax, or requesting that the Court make a determination pursuant to section 505(b)(2)(B).  Here, the Trustee has done neither.

35.    Further, section 505(b)(2)(B) by its terms constrains the Court's ability to make a determination of the estate's tax liability before the State completes its own determination.  *See* 11 U.S.C. 505(b)(2)(B) ("upon payment of tax determined by the court . . . **after completion** by such governmental unit of such examination") (emphasis added).  At the time the Scheduling Order was entered the State had not completed its examination of the Amended BPT Return (given that the Amended BPT Return was received one day prior), nor had the State formally rejected the Pre-Merger Entity Returns (nor has it done so by the time this Motion has been filed).  Therefore, there was no authority under section 505(b)(2)(B) to determine tax liability at that time and no proceedings should have commenced.  Just as in a different matter the Court refused to shorten the governmental bar date, the Court should similarly not short-change the State absent consent when Congress has explicitly provided the State 180 days to complete an examination.  *In re Red Properties, LLC*, Case No. 22-20014, Docket Entry 43 (Bankr. D. Me. Mar. 24, 2022) (granting in part and denying in part the debtor's bar date motion, which sought to shorten the governmental bar date).

36.    The Court may respond that initiation of a process for determination under 505(b) of the Bankruptcy Code does not undermine the Court's authority to determine tax liabilities pursuant to section 505(a).  Setting aside that such a reading would render section 505(b) and the procedure that Congress set out thereunder to be surplusage (as it would permit a trustee to needlessly waste governmental resources by initiating an audit process only to later short circuit it at his leisure by making a request to a court under section 505(a)), the simple fact remains that the Court has received no request for a determination under section 505(a).  Concomitantly, there has

been no document filed in this Court by the Trustee (or the Committee, for that matter) that could plausibly be construed as a request for relief under section 505(b) in which factual and legal contentions challenging the State's prior determination are set forth.

37. It is senseless to conclude that determination of tax liability under section 505 should proceed with fewer procedural safeguards than required under analogous provisions of the Bankruptcy Code for determination of claims – namely sections 502 and 506. Section 502 of the Bankruptcy Code provides a properly filed claim "is deemed allowed, unless a party in interest. . . objects." 11 U.S.C. § 502(a). Procedurally, objection to a filed claim initiates a process for the bankruptcy court, upon notice and hearing to the claimant, to determine the amount of a claim under section 502(b). Rule 3007 specifically requires that an objection to a claim must be **in writing** and sets out the minimum requirement of notice of such objection. *See* Rule 3007 ("**An objection** to the allowance of a claim and a notice of objection . . . **shall be filed** and served at least 30 days before any scheduled hearing on the objection . . . .") (emphasis added).

38. The Eleventh Circuit has ruled that where no party objects a bankruptcy court's *sua sponte* disallowance of the secured status of a claim is reversible error. *In re White*, 908 F.2d 691, 693 (11th Cir. 1990);[8] *see also*, *In re Cremo*, 557 B.R. 343, 347 (Bankr. M.D. Pa. 2016) ("A bankruptcy court may not reject or dispose of a claim on its own motion. Only when a party in interest files an objection is a bankruptcy court empowered . . .."); *In re Donnan*, 2019 WL 1922843, at *4 (B.A.P. 9th Cir. Apr. 29, 2019) ("It is not the court's task to conduct an independent review . . . where no substantive objection has been presented."). Courts have similarly noted that section 506 of the Bankruptcy Code, in concert with Rule 3012, requires the filing of a motion for

---

[8] Importantly, the bankruptcy court in White relied on language in section 506 of the Bankruptcy Code that – similar to the language of section 505(a) – provides that the secured status of a claim "shall be determined" by the Bankruptcy Court. White, 908 F.2d at 693.

a party to seek a determination under section 506.  *See, e.g., In re Jones*, 152 B.R. 155, 162 (Bankr.

E.D. Mich. 1993) ("[T]he appropriate tool for seeking a determination . . . pursuant to § 506(d) is

a motion to that effect under Rule 3012."); *see also* Rule 3012 ("On request by a party in interest

and after notice . . . and a hearing, the court may determine . . . .").

39.     Although administrative tax liability falls under sections 503 and 505 of the

Bankruptcy Code, the State believes that the analogy to sections 502 and 506 is useful for

clarifying the importance a motion or objection to initiate a determination and the procedural

protections afforded by Rules 9013 and 9014.  There is no reason why the process for judicial

determination of tax liabilities and allowance of administrative expenses should require something

less procedurally robust than the related processes for unsecured and secured claims.

40.     In the Scheduling Order, the Court stated that "the most efficient path forward

appears to be disposition of the **contested matter** . . . ." (emphasis added).  The State concedes

that there is a pending contested matter with respect to the Plan because the State has filed an

objection.  However, the State vigorously disputes the conclusion that there is a contested matter,

much less a contested matter ripe for disposition, under section 505 of the Bankruptcy Code

regarding the estate's tax liability to the State without the filing of a motion requesting a

determination of tax liability by the Court or an objection contesting the taxes asserted by the State.

*See In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985) ("The purpose of filing an objection is to

join issue in a contested matter, thereby placing the parties on notice that litigation is required to

resolve an actual dispute between the parties.").  A writing (filed under the auspices of Rule 9011)

informing the State of the nature of relief sought against it, including the factual allegations

supporting and legal support for such relief, is not merely a procedural formality.  The State is

deprived of a fair opportunity to protect its interests if it is not given proper notice of the substantive allegations against it and an adequate opportunity to prepare a response.

41.    Furthermore, bankruptcy courts routinely recognize that contested matters do not arise unless an objection to relief requested has been filed.  *See, e.g.*, *In re Transamerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992) (stating that a party's objection to an administrative expense claim "gave rise to a 'contested matter' governed by Bankruptcy Rule 9014."); *In re Laughlin*, 210 B.R. 659, 661 (B.A.P. 1st Cir. 1997) ("When a party files an objection to an administrative matter . . . it becomes a contested matter."); *In re Chester County Plastics, Inc.*, 174 B.R. 41, 43 (Bankr. E.D. Pa. 1994) (stating at an objection to an administrative expense claim gives rise to a contested matter governed by Rule 9014).  In this way, filing of a motion is often a necessary, but not sufficient, precondition to the commencement of a contested matter.

42.    Finally, to the extent that the Court construes the Administrative Expense Request filed by the State as a request for determination under section 505(a), the State objects.  The Administrative Expense Request is, at most, a request for payment in the amount already determined by the State.[9]  If the Court is inclined to construe the Administrative Expense Request as a request for determination against the State's wishes, then the State must be provided with meaningful notice of the objections of any objectors, including their substantive legal and factual bases.

43.    Therefore, in the alternative, the State asserts that the Hearing should be redesignated solely for the purpose of permitting the State to adduce evidence in support of its Administrative Expense Request without presentation of evidence from any other party.  The State

---

[9]    The amount of which the State is well-situated to determine, and which request the State is not even required to make.  11 U.S.C. § 503(b)(1)(D).

23335394.v4

would be denied fair due process to be required to appear and defend against facts and law that

have, to date, not been identified in any manner in a pleading before this Court.

**B.      Similarly, there is No Dispute Properly before the Court under Section 503 of the Bankruptcy Code, and the Hearing Must be Cancelled to the Extent the Court Relies on Section 503**

44.      The State likewise disputes that there is a contested matter before the court under

section 503 of the Bankruptcy Code.  The State reiterates many of the points made above, including

that:

    a.      There is no motion before the Court initiating a contested matter, as required by Rule 9014;

    b.      If the Court is inclined to treat the Administrative Expense Request as a motion under Rules 9013 and 9014, there have been no objections to the Administrative Expense Request filed; and

    c.      The State lacks fair notice of the substantive legal and factual contentions against it.

Requiring the State to defend the Administrative Expense Request against undisclosed objections

at a full evidentiary hearing on January 29, only six business days after the State will be given the

first clear and definite statements of objection against it, does not provide the State with appropriate

procedural protections.

45.      Section 503(b) of the Bankruptcy Code merely requires that an administrative

expense claimant "timely file a request for payment of an administrative expense[.]"  11 U.S.C. §

503.  The form of such request is not clearly specified by the Bankruptcy Code or the Rules.

However, the Local Rules of this Court set out administrative expense requests and motions as

entirely separate matters.  Local Rule 3002-2 of this Court permits that administrative expenses

may be requested by filing a proof of claim form, rather than a motion.  On the other hand, Local

Rule 9013-1 sets forth the requirements for requesting relief by motion in addition to the

requirements of Rule 9013.  Without limitation, Local Rule 9013-1 requires: (i) submission of a

proposed form of order with a motion; (ii) scheduling of a hearing date on a motion; and (iii)

provision of notice for a hearing and response deadline.[10]  Rule 9013-1 further contemplates

written responses to motions that must be timely filed and must include admissions and denials of

allegations in a motion "to inform the court of the responding party's position." Local Rule 9013-

1(c).

46.    The State submits that its filing of the Administrative Expense Request, particularly

in absence of a filed objection thereto, is in the manner of an administrative matter to which there

is no opposing party, rather than a contested matter commenced by motion.  *See* Collier on

Bankruptcy P 9014.01 (describing distinction between adversary proceedings, administrative

matters, and contested matters).  The State protectively filed the Administrative Expense Request

in accordance with Local Rules after the Court established an Administrative Bar Date.[11]  Rather

than risking forfeiture of its right to payment of post-petition taxes, the State filed the

Administrative Expense Request by the Administrative Bar Date as a prophylactic measure, even

though applicable law imposes a duty on the Trustee to file returns and pay taxes owed.  *See* 28

U.S.C. § 959(b), 11 U.S.C. § 1106; *see also Muratore v. Darr*, 375 F.3d 140, 145 (1st Cir. 2004)

("The accounting for and sale of property, the filing of tax returns, and the payment of taxes [are]

among [a chapter 11 trustee's] statutory responsibilities and powers.").  The State did not initiate

a contested matter that required (or garnered) a responsive pleading, request relief by specific form

of order, or set a hearing date.

---

[10]    Rule 9006(d) further describes the requirements for timely serving a written motion prior to a hearing and
contemplates the filing of written responses to a motion prior to a hearing.  Here, the State did not request and the
Court did not set a hearing on the Administrative Expense Request at the time it was filed, nor did the Court set a time
for objections to the Administrative Expense Request.

[11]    The propriety of which the State also questions, at least in so far as the Administrative Bar Date purports to
limit the rights of governmental units in contravention of section 503(b)(1)(D) of the Bankruptcy Code.  11 U.S.C. §
503(b)(1)(D) (providing that a governmental unit "shall not be required to file a request for the payment of [an
administrative tax] as a condition of its being an allowed administrative expense.").

23335394.v4

47.    And regardless of whether the Administrative Expense Request is a "motion," no party has filed an objection to the Administrative Expense Request and the State has no notice of contested factual or legal issues.  This should not be a surprise to the Trustee or Committee.  In the Disclosure Statement the Plan Proponents appear to acknowledge that contesting the Administrative Expense Request would require an objection filed by the Trustee rather than a jump to evidentiary hearing.  Disclosure Statement, p. 9 ("To the extent necessary if the claims cannot be resolved by agreement, the Chapter 11 Trustee will file an objection to the administrative claims asserted by the Taxing Authorities.).

48.    The State reiterates that it raises these arguments not merely as a procedural formality, but because the State has not been provided with adequate notice of the substantive legal or factual bases of any objections to the Administrative Expense Request.   In the Scheduling Order the Court states that the Hearing would resolve "deemed objections" of the Plan Proponents without stating what, specifically, the Court is deeming to be an objection or the content of the objections (other than a conclusory statement "that the amount owed to the State of New Hampshire is much less than that set forth" in the Administrative Expense Request).  Scheduling Order, p. 2.  In the Disclosure Statement, the Plan Proponents merely state that they "believe that no sales taxes are due to the Taxing Authorities."[12]  Disclosure Statement, p. 8–9.  However, the BPT Return and November 15 Returns submitted by the Trustee belie this statement.  The Plan Proponents have yet to file a document in this Court under the strictures of Rule 9011 setting forth the factual and legal contentions in opposition to the Administrative Expense Request.  Filing tax

---

[12]      The Plan Proponents also state that they "believe that the Debtor is a pass-through entity that does not have income tax liabilities."  This is contrary to positions the Plan Proponents have taken with respect to the State (including before the Court), because New Hampshire Law does not recognize pass-through entities for the purposes of business profits tax.  The Plan Proponents have identified more arguments that **do not** apply to the State than arguments that do.

23335394.v4

returns with a taxing authority is not a replacement for filing a written pleading subject to Rule 9011 with a court.

49.   In summary, the State is unaware at this time who its adversaries will be at the Hearing (whether the Trustee, the Committee, both, or any other party), what their legal and factual contentions are, what precise disputed issues of material fact exist between the parties that require testimony of witnesses under Rule 9014(d), and who carries what burdens of proof with respect to what issues.  Despite its best efforts, this state of affairs has left the State simply unable to adequately prepare for an evidentiary trial.

## STATEMENT PURSUANT TO LOCAL RULE 9013-4(4)

50.   The State files this Motion requesting relief on an expedited basis pursuant to Local Rule 9013-4(2)(B).  The State requests relief on this basis due to the proximity of this Motion's filing to the Hearing and related briefing and trial deadlines.

51.   The State did not complete its initial review of the November 15 Returns until December 18, 2023 (approximately one month after the returns were filed, and substantially sooner than the time afforded to the State for a full examination under section 505(b) of the Bankruptcy Code) nor issue its rejection of the Amended BPT Return until January 11, 2024, and its examination of the Pre-Merger Entity Returns which purportedly give rise to net operating losses remains ongoing.  The State's examination has included unique tax issues that have required the dedicated attention of multiple members of the DRA's audit department and internal legal counsel. Because development of an initial view on the November 15 Returns was crucial to ensuring that the State's resources were not wasted without need and setting the State's overall position and trial strategy, the State was unable to begin preparing for trial in earnest until late December.  Counsel has engaged in a diligent and active effort since that time, including communication with the

23335394.v4

Trustee regarding trial, discovery, and settlement.  During this time, the issues identified herein became apparent.  The State is filing this motion as early as practicable under the circumstances and believes that the issues to be decided are crucial to resolution of this case.  Thus, the State respectfully requests that the Court consider the Motion on an expedited basis.

## CONCLUSION

Based on the foregoing, the State requests that the Court enter of an order in the form filed with this Motion (A) cancelling the Hearing under sections 503 and 505 of the Bankruptcy Code; or, in the alternative; (B) continuing the Hearing and convening a status conference on January 29 for consideration of appropriate further proceedings, which may include establishing a deadline for any party to object to the Administrative Expense Request or file a motion for determination of tax liability; or (C) ordering that the State is the only party that may present facts and law at the Hearing, as no other party has objected or filed a motion seeking relief with respect to the Administrative Expense Request.

Date: January 12, 2024

*/s/ Andrew C. Helman*
Andrew C. Helman
Kyle D. Smith
DENTONS BINGHAM GREENEBAUM LLP
One City Center, Suite 11100
Portland, Maine  04101
(207) 619-0919
andrew.helman@dentons.com
kyle.d.smith@dentons.com

*Counsel to the State of New Hampshire*

23335394.v4

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew C. Helman, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document and a proposed order to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service.

Date: January 12, 2024

*/s/ Andrew C. Helman*
Andrew C. Helman
DENTONS BINGHAM GREENEBAUM LLP
One City Center, Suite 11100
Portland, Maine 04101
(207) 619-0919
andrew.helman@dentons.com

23335394.v4