**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

In re:

STORED SOLAR ENTERPRISES, SERIES
LLC,

                      Debtor.

Chapter 11

Case No. 22-10191

**ORDER CONFIRMING CHAPTER 11 PLAN FOR STORED SOLAR ENTERPRISES,
SERIES LLC PREPARED BY THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS AND THE CHAPTER 11 TRUSTEE DATED AUGUST 18, 2023**

With the Chapter 11 Plan for Stored Solar Enterprises, Series LLC Prepared by the Official

Committee of Unsecured Creditors and the Chapter 11 Trustee Dated August 18, 2023 [Dkt. No.

439] (the "Plan") having come on for hearing on April 8, 2024; and Anthony J. Manhart, as the

duly appointed chapter 11 trustee (the "Trustee") and the Official Committee of Unsecured

Creditors (the "Committee" and together with the Trustee, the "Plan Proponents") having filed the

Summary Ballot Report and Certification [Dkt. No. 474]; and with this Court having considered

the Plan and the opposition thereto; and with a copy of the Plan attached hereto as **Exhibit 1** and

incorporated herein by reference; and with it having been determined after notice and opportunity

for a hearing that the requirements set forth in 11 U.S.C. § 1129(a), or 11 U.S.C. § 1129(b), to the

extent applicable, have been satisfied; it is hereby **ORDERED**, **ADJUDGED**, and **DECREED**

that:

1.      The Plan, as modified by the terms of this Order, is hereby **CONFIRMED**.

2.      Section 9.7 of the Plan is deleted in its entirety and replaced with:

Pursuant to § 1123(b) of the Bankruptcy Code, and except as otherwise specifically
provided in the Plan, for good and valuable consideration, on and after the Effective
Date, each Exculpated Party shall not have or incur any liability for, and are
expressly exculpated, released, and discharged from any and all Claims,

obligations, rights, suits, damages, causes of action, remedies, and liabilities, including any derivative Claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or fixed, matured or unmatured, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based on, relating to, or arising from, in whole or in part, any matter in connection with the Case, the subject matter of any Claim or Interest that is treated in the Plan, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Sale Transaction, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Case or its prosecution, except only for actions or omissions to act to the extent determined by a court of competent jurisdiction (with such order becoming a final, non-appealable order) to be by reason of such party's gross negligence, willful misconduct, or fraud; it being expressly understood that any act or omission with the approval of the Bankruptcy Court shall be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud, unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation (collectively, the "Released Acts"). Notwithstanding the above, (i) the Released Acts only relate to Released Acts that occurred between the Petition Date and the Effective Date; and (ii) this paragraph does not insulate the Exculpated Parties from any indemnification, contribution, or other similar claims that may be brought by, or defenses that may be raised by, a party who is sued by the Trustee.

3.     The State of New Hampshire Department of Revenue Administration (the "NH DRA") filed an application for allowance of Claim No. 91-2 as an administrative expense. In resolution of disputes between the Plan Proponents and NH DRA, NH DRA shall be entitled to payment from the Estate in the amount of forty thousand dollars ($40,000.00) on account of Claim No. 91-2, which shall be paid in cash on the Effective Date of the Plan. For the avoidance of doubt, the NH DRA reserves all rights, and all other parties reserve all rights, against all parties other than the Estate; the treatment provided pursuant to this Order and the Plan represents a settlement of disputed issues and is not a determination of any party's tax liability. **Notwithstanding anything contrary in the Plan or Confirmation Order, payment to the NH DRA pursuant to these terms shall not limit the liability of any party who may, in addition to the Debtor's Estate, be liable with respect to any tax liability to the NH DRA.**

4.      Notwithstanding anything in this Order, the Plan or any related plan documents (collectively, "Documents"), nothing in the Documents discharges, releases, precludes, impairs, bars or enjoins: (i) any police or regulatory liability to a governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; (iv) any liability, obligation, suit, right, defense, cause of action, interest or Claim or liability of or owed to a Governmental Unit on the part of any non-debtor; (v) a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in the Documents shall affect any setoff or recoupment rights or defenses of any Governmental Unit.

5.      The *Stipulation Between Plan Proponents and Anthem Health Plans of Maine, Inc. and Regarding Allowance of Priority Claim* [Dkt. No. 413] is incorporated herein.

6.      For purposes of the Plan, in accordance with Maine Bankruptcy Court Local Rule 3016-3, "substantial consummation" shall be identified as the occurrence of the following: (a) the occurrence of the Effective Date; (b) the payment of all Allowed Administrative Expense Claims; and (c) the transfer of the GUC Reserve to the Liquidating Trust pursuant to the Plan.  The Plan Proponents project that substantial consummation will occur within 60-90 days after the Confirmation Date, although if proceedings related to allowance of Professional Fee Claims are contested, substantial consummation may be delayed.

7.      Notwithstanding anything to the contrary in the Bankruptcy Code or Bankruptcy Rules, including Bankruptcy Rules 3020(e) and 6004(h), this Order shall be effective immediately upon entry on the docket.

Date: April 8, 2024

_____

Michael A. Fagone
United States Bankruptcy Judge
District of Maine

**EXHIBIT 1**
**Plan**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>STORED SOLAR ENTERPRISES, SERIES LLC,<br><br>　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 22-10191 |

**CHAPTER 11 PLAN FOR STORED SOLAR ENTERPRISES, SERIES LLC PREPARED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE <u>CHAPTER 11 TRUSTEE DATED AUGUST 18, 2023</u>**

*/s/ Jeremy R. Fischer*
Jeremy R. Fischer
Kellie W. Fisher
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Telephone: (207) 772-1941
E-mail: jfischer@dwmlaw.com
　　　　 kfisher@dwmlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

-and-

*/s/ Anthony J. Manhart*
Anthony J. Manhart
Bodie B. Colwell
**PRETI FLAHERTY LLP**
One City Center
PO Box 9546
Portland, Maine  04112-9546
Telephone: (207) 791-3000
E-mail: amanhart@preti.com
　　　　 bcolwell@preti.com

*Counsel to Anthony J. Manhart, Chapter 11 Trustee*

## ARTICLE I
## INTRODUCTION

Stored Solar Enterprises, Series LLC (the "Debtor") is the debtor in this Case.[1]  The Debtor commenced this Case by Filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date.  On November 7, 2022, the Office of the United States Trustee Filed a certificate of appointment appointing Anthony J. Manhart as chapter 11 trustee (the "Chapter 11 Trustee") for the Debtor, which was approved by the Bankruptcy Court.

Pursuant to Bankruptcy Code § 1121(c), the Plan Proponents propose an orderly liquidation of the Debtor's remaining Assets.  The Plan provides that all funds realized from the collection and liquidation of the Debtor's Assets will be paid to Creditors on account of their Allowed Claims in accordance with the distributive priorities of the Bankruptcy Code and this Plan.  The Plan Proponents propose to implement the Plan by establishing, *inter alia*, a Liquidating Trust that will be administered by the Liquidating Trustee.  Upon payment in full of all Allowed Administrative Expenses, Allowed Priority Tax Claims, and Allowed Other Priority Claims, all remaining Assets will be transferred to the Liquidating Trust.  Thereafter, the Liquidating Trustee will be responsible for liquidating the Assets, including the proceeds of assets administered by the Chapter 11 Trustee, and making distributions to Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan.

Transmitted with this Plan is a copy of the Disclosure Statement required by § 1125 of the Bankruptcy Code.  The Disclosure Statement is provided to help Creditors understand this Plan.  The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business and former operations, risk factors, and other related matters.  The Disclosure Statement

---

[1] Capitalized terms not specifically defined when first used herein shall have the meanings subsequently ascribed to them in this Plan.

also provides a summary of this Plan.  All Creditors and other parties-in-interest are encouraged to carefully review the Disclosure Statement prepared by the Plan Proponents before voting to accept or reject this Plan.

The Plan Proponents urge all Creditors and other parties-in-interest to read this Plan and the Disclosure Statement in their entirety.  No solicitation materials other than the Disclosure Statement and any documents, schedules, exhibits, or letters attached thereto or referenced therein have been authorized by the Plan Proponents or the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

The Voting Deadline to accept or reject this Plan will be set by order of the Bankruptcy Court.

The Plan Proponents believe that this Plan will enable the Estate to efficiently liquidate its remaining Assets for the benefit of the Creditors and accomplish the objectives of chapter 11 of the Bankruptcy Code.  The Plan Proponents further believe the Plan presents the most advantageous outcome for all the Debtor's Creditors and, therefore, Confirmation of the Plan is in the best interests of the Estate.  The Plan Proponents accordingly recommend that Creditors <u>vote to accept the Plan</u>.

## ARTICLE II
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

**A.    Definitions**

In addition to other terms defined elsewhere in this Plan, the following terms, which appear in the Plan as capitalized words, have the following meanings:

**"503(b)(9) Claim"** means a Prepetition Claim for the value of goods received by the Debtor in the ordinary course of its business within twenty (20) calendar days before the Petition Date, as provided for under § 503(b)(9) of the Bankruptcy Code.

**"Administrative Expense"** means any amount owed by the Estate pursuant to §§ 507(a)(2), 507(b), and/or 503(b) of the Bankruptcy Code, including 503(b)(9) Claims, and Professional Fee Claims.

**"Administrative Expense Bar Date"** means the date that is thirty days after entry of the *Order Establishing Deadline for Filing Administrative Proofs of Claim and Directing the Form and Manner of Notice* [D.E. 369], which is April 2, 2023.

**"Allowed"** means a Claim or Administrative Expense (i) as to which no proof of claim has been Filed, that is (a) listed in the Schedules in an amount greater than zero and not in an unknown amount, (b) not listed in the Schedules as disputed, contingent, or unliquidated, and (c) as to which no objection, motion or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such Claim as set forth in this Plan or Final Order of the Bankruptcy Court, or (d) as to which any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by Final Order of the Bankruptcy Court; or (ii) as to which a proof of claim or request for allowance and payment has been Filed and to which (a) no objection, motion or other proceeding to estimate, equitably subordinate, reclassify, set off, or

- 4 -

otherwise limit the recovery thereon has been asserted before the Claim Objection Deadline, or (b) any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by Final Order of the Bankruptcy Court.

"**Assets**" means each and every item of property and interest of the Debtor or its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes, without limitation, (i) all Cash, (ii) all rights in and proceeds of Insurance Policies applicable the Debtor not otherwise assigned to the Buyer, and (iii) any other rights, privileges, deferred taxes, Claims, Causes of Action, or defenses of the Debtor and its Estate, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law.  For the avoidance of doubt, Assets do not include any real or personal property conveyed to the Buyer as part of the Sale Transaction.

"**Bankruptcy Code**" means title 11 of the United States Code as in effect as of the Petition Date.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Maine.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than a Saturday, Sunday, or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Buyer**" means Hartree Biomass Holdco, LLC *now known as* NE Renewable Power LLC.

"**Case**" means the Debtor's case under chapter 11 of the Bankruptcy Code, bearing a Case Number of 22-10191.

"**Cash**" means United States dollars, securities, and payment intangibles in the possession, custody, or control of the Chapter 11 Trustee on the Confirmation Date, including any funds in the Estate Carveout.

"**Causes of Action**" means collectively (i) any and all claims for relief of the Debtor or the Estate under chapter 5 of the Bankruptcy Code, (ii) claims of the Debtor against the Debtor's Insiders, as defined by Bankruptcy Code § 101(31) (which shall, for the avoidance of doubt, include members of the Debtor), and (iii) claims against the Debtor's professional advisors arising before or after the Petition Date; provided that Causes of Action shall not include (a) any claim against an employee proposed to be employed by the Buyer or any claim indemnified pursuant to an Assumed Contract, (b) actions under Bankruptcy Code § 549 with respect to proceeds of collateral of the DIP Lender (including cash collateral) or proceeds of the Postpetition Credit Facility, (c) any claims of the Debtor or the DIP Lender against a non-Debtor or any individual relating to the misappropriation, misuse, or conversion of proceeds of collateral (including cash collateral) or funds extended pursuant to the Debtor's prepetition secured loan obligations or the Postpetition Credit Facility, or (d) any direct claims of the DIP Lender against a non-Debtor under the documentation governing the prepetition loan obligations.

"**Claim**" means a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor and/or its Estate.

"**Claimant**" means any Person who holds an Allowed Claim against the Debtor and/or the Estate.

"**Claims Objection Deadline**" means the deadline for the Trustee or any other party-in-interest to File any objections to any asserted Claim or Administrative Expense, which is no later than 60 days after the Effective Date, unless, upon motion of the Trustee, the Bankruptcy Court extends such deadline.

"**Claims Bar Dates**" means, in addition to those bar dates that may be described elsewhere in this Plan, the bar dates for filing Claims against the Debtor and/or the Estate established by the

Bankruptcy Court as follows: (a) January 18, 2023, for all Claims arising prior to the Petition Date (unless a different date is set by a Final Order of the Bankruptcy Court), excepting Claims of governmental units; and (b) March 13, 2023, in relation to Claims of governmental units arising prior to the Petition Date.

**"Committee"** means the Official Committee of Unsecured Creditors, appointed by the U.S. Trustee in the Case.

**"Committee Professional Reserve"** means the $200,000.00 reserve budgeted for Committee Professionals and funded by the DIP Lender as part of the Sale Transaction.

**"Confirmation"** means the entry of the Order by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the Case docket.

**"Confirmation Hearing"** means a hearing or hearings conducted by the Bankruptcy Court regarding Confirmation of the Plan.

**"Creditor"** means the Holder of a Claim against the Debtor.

**"DIP Lender"** means Hartree Partners, LP in its capacity as the Debtor's prepetition secured lender and lender under the Postpetition Credit Facility.

**"Disallowed Claim"** means a Claim or any portion thereof that (i) has been disallowed by agreement or by Final Order of the Bankruptcy Court, (ii) is Scheduled in an unknown amount or as zero or as contingent, disputed, or unliquidated or is not Scheduled and as to which no proof of claim or Administrative Expense has been Filed, or (iii) has been withdrawn by the Creditor.

**"Disclosure Statement"** means the Disclosure Statement Filed in support of the Plan, as may be amended.

"**Distribution**" means any transfer by the Trustee under the Plan of Cash or other Assets to a Holder of an Allowed Claim.

"**Effective Date**" means the 30th Business Day after the Confirmation Date, provided that the Confirmation Order is not stayed.  If the Confirmation Order is stayed, the Effective Date shall be the later of the 30th Business Day after the Confirmation Date or the first Business Day after the expiration of any stay.

"**Equity Interest**" means all previously issued and outstanding membership interests or other ownership interests in the Debtor or individual Series outstanding immediately prior to the Effective Date.

"**Estate**" means the estate created in the Case under § 541 of the Bankruptcy Code.

"**Estate Carveout**" means the account funded by the DIP Lender and established as part of the Sale Transaction to hold (i) the Committee Professional Reserve, (ii) the Trustee Reserve, and (iii) $150,000.00 for winding down the Estate.

"**Exculpated Parties**" shall mean each of the following in its capacity as such: (a) the Trustee; (b) the Committee; and (c) with respect to each of the foregoing Entities in clauses (a) and (b) such entity's successors and assigns and current and former affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals.

"**Executory Contracts, Unexpired Leases, and Regulatory Obligations**" shall mean a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code, or any regulatory obligation related to electricity generation or renewable energy.  For avoidance of doubt, Executory Contracts, Unexpired Leases, and Regulatory Obligations shall include any remaining requirements or agreements with any

- 8 -

governmental units or regulatory entities related to power generation or renewable energy certificates.

"**File**" or "**Filed**" means duly and properly filed with the Bankruptcy Court in this Case and reflected on the Bankruptcy Court's official docket for this Case.

"**Final Order**" means an order or judgment of the Bankruptcy Court entered on the Bankruptcy Court's docket: (a) that has not been reversed, rescinded, stayed, modified, or amended; (b) that is in full force and effect; and (c) with respect to which (i) the time to appeal or seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely Filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

"**General Unsecured Claims**" means Prepetition Claims that are not 503(b)(9) Claims, Priority Tax Claims, or Other Priority Claims.

"**Holder**" means the legal or beneficial holder of any Claim against the Estate.

"**Impaired**" means, when used with respect to a Claim, the legal, equitable, and contractual rights to which a Holder of a Claim is entitled when altered by the Plan.

"**Insurance Policy**" means and includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that belongs or at any time belonged to or includes or at any time included the Debtor as a named insured, additional insured, beneficiary, or assignee, including, without limitation, any "Directors and Officers" and other fiduciary liability insurance policy, other than any insurance policy sold, transferred, or assigned to the Buyer in connection with the Sale Transaction.

"**IRS**" means the United States Internal Revenue Services, part of the United States Department of the Treasury, a federal agency that is responsible for the collection and enforcement of taxes.

"**Liquidating Trust**" means the trust established pursuant to the Plan and in accordance with the Liquidating Trust Agreement.

"**Liquidating Trust Agreement**" means the agreement between the Committee, the Chapter 11 Trustee, and the Liquidating Trustee pursuant to the Confirmation Order, as the same may be amended from time to time in accordance with its terms and approved pursuant to the Confirmation Order.

"**Liquidating Trustee**" means Anthony J. Manhart, who shall be appointed as Liquidating Trustee under the Liquidating Trust Agreement.

"**Other Priority Claim**" means, collectively, any Prepetition Claim entitled to priority under § 507 of the Bankruptcy Code that is not an Administrative Expense or a Priority Tax Claim.

"**Person**" means the same as the term "person" as defined in § 101(41) of the Bankruptcy Code.

"**Petition Date**" means September 14, 2022.

"**Plan**" means this plan under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or altered, amended, or modified from time to time.

"**Plan Documents**" means those documents necessary to effectuate the Plan.

"**Plan Proponents**" means the Committee and the Chapter 11 Trustee, who have jointly negotiated and proposed this Plan.

"**Postpetition**" means the time from and after the Petition Date through the Effective Date.

- 10 -

**"Postpetition Bar Date"** means the date 30 days after the Confirmation Date by which any party-in-interest may file a Professional Fee Claim.

**"Postpetition Credit Facility"** means the credit facility provided by the DIP Lender to the Debtor and authorized by order of the Bankruptcy Court.

**"Prepetition Claim"** means a Claim that arose prior to the Petition Date.

**"Priority Tax Claims"** means Prepetition Claims entitled to priority against the Debtor Estate under § 507(a)(8) of the Bankruptcy Code.

**"Professionals"** means those Persons providing advisory or consulting services to the Debtor, the Chapter 11 Trustee, or the Committee who have been retained pursuant to an Order of the Bankruptcy Court in accordance with §§ 327, 1103, or 1106 of the Bankruptcy Code.

**"Professional Fee Claim"** means an Administrative Expense under §§ 327, 328, 330, 331, 503, or 1103 of the Bankruptcy Code for compensation of Professional services rendered or expenses incurred.

**"Rejection Bar Date"** means the bar date established by the *Order Granting Trustee's First Omnibus Motion to Reject Certain Executory Contracts and Unexpired Leases* [D.E. 381] by which Holders of Rejection Damage Claims must file a Claim evidencing the Rejection Damages Claim against the Debtor and/or Estate, which date is April 9, 2023.

**"Rejection Damage Claim"** means a Claim arising under an unexpired lease or executory contract that is rejected under § 365 of the Bankruptcy Code.

**"Sale Transaction"** means the sale of the Debtor's assets in accordance with the *Order (I) Approving the Sale of Certain Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Granting Related Relief* [Dkt. No. 289].

- 11 -

"**Scheduled**" means information set forth on the Schedules.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by the Debtor with the Bankruptcy Court in this Case, as they may have been or may be amended from time to time.

"**Trustee**" means the Chapter 11 Trustee and the Liquidating Trustee acting in either capacity.

"**Trustee Reserve**" means the $200,000.00 reserve budgeted for Chapter 11 Trustee Professionals and funded by the DIP Lender as part of the Sale Transaction.

"**Unclassified Claim**" means any claim that is not part of any Class, including Administrative Expenses and Priority Tax Claims.

"**Unimpaired**" means that the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim are not altered pursuant to the Plan.

"**U.S. Trustee**" means the Office of the United States Trustee for Region 1.

"**U.S. Trustee Fees**" means all the fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to 28 U.S.C. § 1930.

## B. **Interpretation, Rules Of Construction, Computation Of Time**

### 1. **Defined Terms**

Any term used in this Plan that is not defined in the Plan but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

### 2. **Rules of Interpretation**

For purposes of the Plan:

(a)      Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

(b)      Any payment required under the Plan on a particular date shall be made on such date or as soon thereafter as practicable;

(c)      Any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d)      Any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented through and including the Confirmation Date which, after they are Filed, may be amended, modified, or supplemented only with the express written consent of the Plan Proponents;

(e)      Unless otherwise specified in a particular reference, all references in the Plan to sections, articles, and exhibits are references to sections, articles, and exhibits of or to the Plan;

(f)      The words "herein," "hereof," "hereto," hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(g)      Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(h)      All exhibits to the Plan and Plan Documents are incorporated herein, regardless of when those exhibits are Filed;

(i)      To the extent any discrepancy exists between the description contained herein of a document or agreement that is an exhibit to the Plan and with the provisions of that exhibit, the actual agreement or document shall govern;

(j)      The rules of construction set forth in § 102 of the Bankruptcy Code shall apply;

(k)     To the extent of any inconsistency, contradiction, or ambiguity between the Disclosure Statement and this Plan, the terms of this Plan shall control; and

(l)     To the extent of any inconsistency, contradiction, or ambiguity between this Plan and the Confirmation Order, the terms of the Confirmation Order shall control.

**3.**   **Time Periods**

In computing any period of time prescribed by or allowed under the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Each Holder of (a) a Claim against the Debtor of whatever nature, whether or not Scheduled and whether unliquidated, absolute or contingent, or (b) any Equity Interests in the Debtor, shall be bound by the provisions of the Plan, and all such Claims and Equity Interests are hereby classified as follows:

3.1     <u>Unclassified Claims</u> shall consist of all Administrative Expenses and Priority Tax Claims.

3.2     <u>Class One</u> shall consist of Other Priority Claims

3.3     <u>Class Two</u> shall consist of General Unsecured Claims.

3.4     <u>Class Three</u> shall consist of Equity Interests.

### ARTICLE IV
### TREATMENT OF THE CLAIMS AND EQUITY INTERESTS BY CLASS

Classified and Unclassified Claims against the Debtor are as follows:

| Class | Type of Claim | Impaired/Unimpaired | Entitled to Vote (Yes/No) |
|---|---|---|---|
| Unclassified | Unclassified Claims | Unimpaired | No |
| Class 1 | Other Priority Claims | Unimpaired | No |
| Class 2 | General Unsecured Claims | Impaired | Yes |
| Class 3 | Equity Interests | Impaired | No (presumed to reject) |

4.1     Unclassified Claims are Unimpaired.

4.1.1    Administrative Expenses.  With respect to all Administrative Expenses other than Professional Fee Claims, the Trustee shall pay each Holder of an Allowed Administrative Expense in full in the Allowed amount, without interest, in Cash on the later of (i) the Effective Date, or (ii) the date that is fourteen (14) days after such Administrative Expense becomes an Allowed Administrative Expense; provided, however, the Holder of an Allowed Administrative Expense may be paid on such other date and upon such other terms as may be agreed upon by that Holder and the Trustee.  Holders of Administrative Expenses (other than 503(b)(9) Claims and Professional Fee Claims) are required to file and serve a request for allowance of such Administrative Expense by the Administrative Expense Bar Date, and any such Holder who fails to timely file and serve such a request shall be forever barred from asserting those Administrative Expenses against the Debtor, the Estate, the Assets, or the Trustee.

4.1.2    503(b)(9) Claims.  Holders of Allowed 503(b)(9) Claims shall be paid in the same manner as other Allowed Administrative Expenses.  However, Holders of 503(b)(9) Claims were required to file proofs of claim by the Claims Bar Dates, and any such Holder who failed to timely file and serve a request shall be forever barred from asserting those Claims against the Debtor, the Estate, the Assets, or the Trustee.

4.1.3    Professional Fee Claims. Holders of Allowed Professional Fee Claims shall be paid in the same manner as other Allowed Administrative Expenses.  Each Professional seeking approval by the Bankruptcy Court of a Professional Fee Claim, which includes compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date must File its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date by no later than the Postpetition Bar Date.  Any objection to such Professional Fee Claims shall be Filed on or before the date specified in the application for final compensation.  All such requests for payment of such Professional Fee Claims shall be subject to the authorization and approval of the Bankruptcy Court. **Persons holding Professional Fee Claims who do not timely File and serve a final fee application shall be forever barred from asserting those Claims against the Debtor, the Estate, the Trustee, or the Assets.**

Subject to the other provisions of the Plan, all reasonable fees for services rendered by the Trustee after the Confirmation Date in connection with the Case and the Plan shall be paid by the Trustee without further Bankruptcy Court authorization.  The fees of the Liquidating Trustee shall be paid by the Liquidating Trust.  The fees of the Chapter 11 Trustee shall be paid from Cash from the Trustee Reserve or the Estate Carveout.

4.1.4    Priority Tax Claims.   Holders of Allowed Priority Tax Claims shall be paid in the same manner as Allowed Administrative Expenses.  All property tax claims, including the claims reflected in Proof of Claim 15 (the Town of Springfield), Claim 77 (New Hampshire Department of Revenue Administration), Claim 78 (New Hampshire Department of Revenue Administration), Claim 78 (New Hampshire Department of Revenue Administration), Claim 83 (Town of Westminster) were assumed by the Buyer as part of the Sale Transaction.

- 16 -

4.1.5   <u>U.S. Trustee Fees.</u>   When due in the ordinary course, all U.S. Trustee Fees shall be paid in Cash from the Estate Carveout, in full.

4.2   <u>Class One</u> Claims are Unimpaired.  Provided that the Holder of an Allowed Class One Claim has not been paid, the Trustee shall pay each Holder of an Allowed Class One Claim in full in the Allowed amount, without interest, in Cash on the later of (i) the Effective Date, or (ii) the date that is fourteen (14) days after such Class One Claim becomes an Allowed Class One Claim, or in either case, as soon as practicable thereafter; <u>provided</u>, <u>however</u>, the Holder of a Class One Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder and the Trustee.

4.3   <u>Class Two</u> Claims are Impaired.  Provided that the Holder of an Allowed Class Two Claim has not been paid, on the Effective Date, Holders of Allowed Class Two Claims shall receive a pro rata beneficial interest in the Liquidating Trust in full and final satisfaction of such Allowed Claims.  On the Effective Date, the Committee shall transfer the so-called "GUC Reserve," funded by the DIP Lender as part of the Sale Transaction, to the Liquidating Trust for the benefit of Holders of Allowed Class Two Claims and subject to the terms of the Liquidating Trust Agreement.  After all Allowed Unclassified Claims and Allowed Class One Claims are paid in full, the Trustee shall transfer all remaining Assets (including all the Causes of Action and related documents) to the Liquidating Trust for the benefit of Holders of Allowed Class Two Claims and subject to the terms of the Liquidating Trust Agreement.

4.4   <u>Class Three</u> Claims are Impaired.  On the Effective Date, all Equity Interests in the Debtor will be extinguished, and the Holders of such Equity Interests shall not receive or retain any distribution, property, or other value on account of such Equity Interests.

**ARTICLE V**
**ESTABLISHMENT OF LIQUIDATING TRUST; THE LIQUIDATING TRUSTEE;**

- 17 -

## EQUITY INTERESTS TO BE RETAINED AND RIGHTS TO BE EXERCISED BY THE LIQUIDATING TRUST ON BEHALF OF THE ESTATE

5.1     Establishment of the Liquidating Trust.  The Confirmation Order shall provide that immediately upon entry of the Confirmation Order, the Liquidating Trust Agreement shall take full force and effect.  The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Liquidating Trustee and to ensure the treatment of the Liquidating Trust as a liquidation trust for federal income tax purposes.  A copy of the Liquidating Trust Agreement is attached hereto as **Exhibit A**.

5.2     Purpose of the Liquidating Trust.  The Liquidating Trust shall be established for the sole purpose of distributing certain Assets to Holders of Allowed Class Two Claims and prosecuting the Causes of Action assigned to the Liquidating Trust, with no objective to continue or engage in the conduct of a trade or business.  Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

5.3     Appointment of Liquidating Trustee.  Upon the establishment of the Liquidating Trust on the Confirmation Date, the Liquidating Trustee shall be appointed and vested.  The Liquidating Trustee's powers and duties shall include disbursing the assets of the Liquidating Trust and prosecuting the Causes of Action.  The Liquidating Trustee shall retain professionals necessary to assist him in his duties.  The fees and expenses of the Liquidating Trustee and all professionals retained by the Liquidating Trustee shall be paid in accordance with the Liquidating Trust Agreement, but shall require Bankruptcy Court approval.

5.4     Preservation of All Causes of Action.  In accordance with § 1123(b) of the Bankruptcy Code, upon the transfer of the Causes of Action to the Liquidating Trust, the

Liquidating Trust shall be vested with, retain, and may enforce and prosecute any claims that the Estate may have against any Person that constitute Causes of Action, subject to the provisions of this Plan.  The Liquidating Trustee shall have standing on behalf of the Estate for the purposes of investigating, pursuing, prosecuting, settling, collecting, litigating, and/or recovering any Assets or Causes of Action that the Estate has or may pursue, subject to the provisions of the Plan.

**ARTICLE VI**
**CLAIMS ALLOWANCE**

6.1     <u>Claims Subject to Allowance</u>.  Notwithstanding any other provision of the Plan, no Distribution shall be made on account of any Claim or Administrative Expense until such Claim or Administrative Expense is Allowed.

6.2     <u>Amendments to Proofs of Claim</u>.   In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim Filed on or before the Claims Bar Dates, unless the Claimant in the proof of claim expressly reserved the right to amend such proof of claim, in which case any such amended proof of claim must be Filed by the Confirmation Date.  No order allowing or disallowing a Claim may be reconsidered, pursuant to § 502(j) of the Bankruptcy Code or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

6.3     <u>Post-Petition Claims</u>.  Any Administrative Expense, other than fees of the U.S. Trustee, arising or accruing before the Confirmation Date shall be forever barred unless it is the subject of a request for allowance and payment on or before the Postpetition Bar Date.  Any such request shall be Allowed in full unless an objection thereto is Filed by the Claim Objection Deadline.

## ARTICLE VII
## <u>MEANS OF EXECUTION OF THE PLAN</u>

7.1    <u>Funding of the Plan</u>.  The Plan shall be funded by the Assets of the Estate that exist on the Confirmation Date.

7.2    <u>Timing of Distributions</u>.  Except as otherwise set forth in the Plan, Distributions shall be made on the Effective Date of the Plan.

7.3    <u>Manner of Distribution</u>.  At the option of the Trustee, any Distributions under this Plan may be made either in cash, by check drawn on a domestic bank, or by wire transfer. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan.  Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

7.4    <u>Delivery of Distributions</u>.  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made by the Trustee: (a) at the addresses set forth on the proofs of claim Filed by such Holders; (b) at the addresses set forth in any written notices of address changes delivered to the Trustee, after the date of any related proof of claim; or (c) at the addresses reflected in the Schedules, if no proof of claim has been Filed and the Trustee has not received a written notice of a change of address.

7.5    <u>Undeliverable Distributions</u>.  In an effort to ensure that all Holders of Allowed Claims receive their allocated Distributions, the Liquidating Trustee will maintain a list of unclaimed Distribution Holders.  This list will be maintained and updated as needed for as long as the Case stays open.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable Distribution within three (3) months after the first attempted delivery shall have its Claim for such undeliverable Distribution expunged and shall be forever barred from asserting any such Claim against the Debtor, its Estate, the Liquidating Trust Estate, the

Liquidating Trustee, or their respective property.  In such cases, any Cash held for Distribution on account of such Claims shall be property of the Liquidating Trust, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan.  Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim. Similarly, checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within three (3) months following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor, the Liquidating Trust, their property, and the Liquidating Trustee. Any Distribution which is deemed nonnegotiable shall re-vest in the Liquidating Trust and be available for Distribution consistent with the Plan.

7.6    <u>Minimum Distributions</u>.  If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular Distribution Date, the Liquidating Trustee may hold the Cash Distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash Distribution owed to any Holder of an Allowed Claim never equals or exceeds fifty dollars ($50), then the Liquidating Trustee shall not be required to distribute Cash to any such Holder.

7.7    <u>Setoffs and Recoupments</u>.  The Trustee may, pursuant to §§ 553 and 558 of the Bankruptcy Code and applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims or Causes of Action of any nature whatsoever that are proven valid that the Estate may have against the Holder of such Claim, <u>provided</u>, <u>however</u>, that neither the failure to effect such offset or

recoupment, nor the allowance of any Claim, shall constitute a waiver or release by the Trustee of

any right of setoff or recoupment that the Trustee may have against the Holder of such Claim, nor

of any other Claim or Cause of Action.

7.8     <u>Distributions in Satisfaction; Allocation</u>.   Except for the obligations expressly

imposed by this Plan and the Assets and rights expressly retained under the Plan, if any, the

Distributions and rights that are provided in this Plan shall be in complete satisfaction and release

of all Claims against, and Equity Interests in, the Debtor, the Estate, and the Assets, whether known

or unknown, arising or existing prior to the Effective Date.

7.9     <u>Cram Down</u>.   In the event that any Class allowed to vote is deemed Impaired under

this Plan, and refuses to accept the terms of the Plan, the Plan Proponents shall, and hereby do,

move the Bankruptcy Court to confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code.

All Claims of Creditors and the rights of all Holders of Equity Interests in the Debtor shall be

satisfied solely in accordance with the Plan.

**ARTICLE VIII**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND REGULATORY**
**OBLIGATIONS**

8.1     <u>Rejection of Executory Contracts, Unexpired Leases, and Regulatory Obligations</u>.

The executory contracts and unexpired leases not otherwise assumed by the Buyer through the

Sale Transaction were deemed rejected as of January 30, 2023.[2]  For the avoidance of doubt, all

Executory Contracts and Unexpired Leases shall include any and all regulatory obligations, which

are deemed rejected, such that the Debtor shall have no outstanding obligations, reporting

requirements, or other requirements as a "public utility", "market participant" or otherwise.

---

[2] The Group Contract between the Debtor and Anthem Health Plans of Maine Inc. d/b/a Anthem Blue Cross is deemed rejected as of December 31, 2022.

8.2      <u>Bar Date for Claims for Rejection Damages</u>.  If the rejection of an Executory

Contract or Unexpired Lease gives rise to a Claim by the other party or parties to such contract or

lease, such Rejection Damage Claim shall be forever Disallowed, barred, and expunged in its

entirety, and shall not be enforceable against the Assets, the Debtor, the Liquidating Trust, or the

Estate, without further notice to any party, or action, approval, or Order of the Bankruptcy Court,

unless a proof of claim is Filed and served on the Trustee and its counsel  on or before the Rejection

Bar Date.  Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a

previously established bar date in the Case, such previously established bar date shall be deemed

operative and will not be deemed extended by virtue of this Article VIII(B).  All Rejection Damage

Claims for which proofs of claim are required to be Filed, if Allowed, will be classified and treated

as General Unsecured Claims, subject to the provisions of this Plan.

8.3      <u>Insurance Policies</u>.  For the avoidance of doubt, on the Effective Date, the Debtor's

rights with respect to all Insurance Policies under which the Debtor may be a beneficiary or

assignee (including all Insurance Policies that may have expired prior to the Petition Date, all

Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the

Debtor after the Petition Date, and all Insurance Policies under which the Debtor holds rights to

make, amend, prosecute, and benefit from claims), other than those Insurance Policies assigned to

the Buyer in the context of the Sale Transaction, shall revest in the Debtor as necessary for the

Trustee to pursue and prosecute any Causes of Action, and to the extent that any Insurance Policies

are not necessary for the pursuit and prosecution of any Causes of Action by the Trustee, all such

Insurance Policies shall be transferred to the Liquidating Trust from the Effective Date until its

dissolution, unless any such Insurance Policy is otherwise canceled by the Trustee in the Trustee's

discretion.  Notwithstanding any provision providing for the rejection of Executory Contracts, any

- 23 -

Insurance Policy that is deemed to be an Executory Contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Trustee, as applicable, who shall retain the right to assume or reject any such Executory Contracts pursuant to and subject to the provisions of § 365 of the Bankruptcy Code following the Effective Date.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the Insurance Policies requiring cure, and that nothing in any prior Order, any prior agreements, or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action.  The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action and to limit any Claims against the Estate.

**ARTICLE IX**
**EFFECT OF CONFIRMATION**

9.1.    <u>Binding</u>.  Confirmation will bind the Debtor, all Creditors, Equity Interest Holders, and any other party in interest to the provisions of the Plan.  If the Plan is confirmed by the Bankruptcy Court, then the treatment of Claims set forth in this Plan supersedes and replaces any agreements or rights the Holders of Claims have in or against the Debtor and/or the Estate and/or the Assets.

9.2    <u>Discharge</u>.  Confirmation of this Plan shall discharge the Debtor and the Estate from all Claims arising before the Confirmation Date, except as expressly provided herein.  The provisions of this Plan shall bind all Holders of Claims and Equity Interests, whether or not they accept the Plan.

**EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY**

- 24 -

CLAIM, WHETHER AN ALLOWED CLAIM OR NOT, FOLLOWING THE
CONFIRMATION DATE.

9.3     <u>Good Faith</u>.  Confirmation of the Plan shall constitute a finding that this Plan has
been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code.
There is no offer, issuance, sale, or purchase of any security under the Plan.

**Accordingly, as of the Effective Date, the Exculpated Parties shall be deemed
exculpated by Holders of Claims against and Equity Interests in the Debtor and other parties
in interest to the Case (including, without limitation, the Debtor and the Estate), from any
and all claims, causes of action, and other assertions of liability (including, without limitation,
breach of fiduciary duty), arising out of or related to the Case or the exercise by such entities
of their functions as members of, advisors to or attorneys for the Exculpated Parties,
including without limitation the formulation, negotiation, preparation, dissemination,
Confirmation, and consummation of this Plan and any agreement, instrument, or other
document issued hereunder or related hereto.**

9.4     <u>Injunction</u>.  Except as otherwise expressly provided in this Plan, the documents
executed pursuant to this Plan, or the Confirmation Order, on and after the Effective Date, all
Persons who have held or currently hold Claims against, or interests in, the Debtor or the Estate
that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing
in any manner, directly or indirectly, any action or other proceeding against the Debtor, the Estate,
the Liquidating Trust, the Trustee, or the Assets; (b) enforcing, attaching, executing, collecting, or
recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the
Debtor, the Estate, the Liquidating Trust, the Trustee, or the Assets; (c) creating, perfecting, or
enforcing, directly or indirectly, any lien or encumbrance of any kind against the Debtor, the

- 25 -

Estate, the Liquidating Trust, the Trustee, or the Assets; (d) asserting or effecting, directly or

indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due

to the Debtor, the Estate, the Liquidating Trust, the Trustee, or the Assets; (e) any act, in any

manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with

any provisions of this Plan; and (f) enforcing or attempting to enforce any claim or cause of action

against the Debtor, the Estate, the Trustee, or the Assets based on, arising from or related to any

failure to pay, or make provision for payment of, any amount payable with respect to any Other

Priority Claim on which the payments due under this Plan have been made or are not yet due under

this Plan.  Any Person injured by any willful violation of such injunction shall be entitled to recover

actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages from the willful violator.  Nothing contained in this Article IX shall

prohibit the Holder of a Claim from litigating its right to seek to have such Claim declared an

Allowed Claim and paid in accordance with the Distribution provisions of this Plan, or enjoin or

prohibit the interpretation or enforcement by the Holder of such Claim of any of the obligations of

the Debtor, the Estate, or the Liquidating Trustee under this Plan.

       9.5     <u>Term of Injunctions</u>.  Unless otherwise provided herein or in the Confirmation

Order, all injunctions or stays provided for in the Case by orders of the Bankruptcy Court, under

§§ 105 or 362 of the Bankruptcy Code, this Plan, or otherwise, and existing on the Confirmation

Date, shall remain in full force and effect until the entry of the Confirmation Order.

       9.6     <u>Dissolution of the Committee</u>.  As of the Effective Date, the Committee shall be

dissolved.  Following the Effective Date, the interests of Allowed Class One Claims shall be

represented by the Trustee who shall have standing in the Case as a party-in-interest.

       9.7     <u>Exculpation</u>.  Pursuant to § 1123(b) of the Bankruptcy Code, and except as

- 26 -

otherwise specifically provided in the Plan, for good and valuable consideration, on and after the

Effective Date, each Exculpated Party is deemed exculpated and released by the Debtor, and its

Estate, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies,

and liabilities, including any derivative Claims asserted on behalf of the Debtor, whether known

or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or fixed, matured

or unmatured, in law, equity, or otherwise, whether for tort, contract, violations of federal or state

securities laws, or otherwise, based on, relating to, or arising from, in whole or in part, any matter

in connection with the Case, the subject matter of any Claim or Interest that is treated in the Plan,

the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Sale

Transaction, or upon any other act or omission, transaction, agreement, event, or other occurrence

relating to the Case or its prosecution.

9.8    <u>Transfers Exempt From Transfer Taxes</u>.  Pursuant to § 1146(c) of the Bankruptcy

Code and applicable non-bankruptcy law, the assignment or surrender of any lease or sublease, or

the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection

with the Plan, including the execution, delivery, and recording of any deeds, bills of sale, or

assignments executed in connection with any disposition of the Assets under, in furtherance of, or

in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage

recording, sales, use, or similar tax.

**ARTICLE X**
**<u>RETENTION OF JURISDICTION</u>**

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the

Bankruptcy Court shall retain exclusive jurisdiction with respect to the following matters:

(a)    To adjudicate all controversies concerning the classification, allowance, or

determination of any Claim or interest;

- 27 -

(b)      To hear and determine all Claims arising from rejection of any executory contract or unexpired lease, and to consummate the rejection and termination thereof;

(c)      To liquidate damages in connection with any disputed contingent or unliquidated Claims;

(d)      To adjudicate all Claims to, or ownership of, the Assets or any proceeds thereof arising prior to and after the Effective Date;

(e)      To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(f)      To hear and determine any and all Causes of Action, including, without limitation, any and all preference actions, fraudulent transfer actions, any actions brought against the Debtor's directors, officers, and insiders, and other matters brought pursuant to the Trustee's powers;

(g)      To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of expenses and all other Administrative Expenses which may be pending on, or made after, the Confirmation Date;

(h)      To adjudicate any and all motions, adversary proceedings, and litigated matters pending on the Confirmation Date or Filed thereafter within any applicable statutory period;

(i)      To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Case, the Estate, the Trustee, or any controversy or dispute which may affect the Trustee's ability to implement or fund the Plan; and

(j)      To hear and determine such other matters as the Bankruptcy Court in its reasonable discretion shall deem appropriate.

### ARTICLE XI
### GENERAL PROVISIONS

11.1    <u>Construction</u>.  The article and section headings used in this Plan are inserted for

convenience and reference only, and neither constitute a part of this Plan nor in any manner affect

the terms, provisions or interpretation of this Plan.

11.2    <u>Severability</u>.  Should any term or provision in this Plan be determined to be

unenforceable, such determination shall in no way limit or affect the enforceability and operative

effect of any other term or provision of this Plan.

11.3    <u>Controlling Documents</u>.  In the event and to the extent that any provision of this

Plan (or any exhibit annexed hereto) is inconsistent with the provisions of the Disclosure Statement

or any other agreement, document or instrument required or contemplated to be executed pursuant

to this Plan, the provisions of this Plan shall control and take precedence.

11.4    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, the Federal Rules

of Bankruptcy Procedure, or other controlling federal statutes or laws, are applicable, the rights

and obligations arising under this Plan and any documents, instruments or agreements executed in

connection with this Plan (except as otherwise indicated in such documents, instruments and

agreements), shall be governed by, and construed and enforced in accordance with, the internal

laws of the State of Maine.

11.5    <u>Further Assurances and Cooperation</u>.  The Trustee and each Person required or

contemplated by this Plan to execute and deliver a written instrument, agreement, or document,

shall execute and deliver such instrument, agreement, or document in form and substance

satisfactory to the Trustee, as applicable, and shall perform all other and further reasonable acts

requested by the Trustee, as applicable, in order to permit the purposes and intents of this Plan to

be consummated.

11.6   <u>Substantial Consummation</u>. For the avoidance of doubt, substantial consummation of this Plan shall not occur until on or after the Effective Date.  Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by Plan Proponents with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any Assets.  Notwithstanding anything to the contrary in the Plan, if the Plan is not Confirmed, nothing contained in the Plan shall: (i) be deemed to be an admission by the Plan Proponents with respect to any matter discussed in this Plan, including liability on any Claim or the propriety of any Claim's classification: (ii) constitute a waiver, acknowledgement, or release of any Claims, Equity Interests, or any claims held by the Debtor or the Estate; or (iii) prejudice in any manner the rights of the Plan Proponents or the Estate in any further proceedings.  All rights are reserved to any party-in-interest, including the Plan Proponents and Debtor and its Estate, under § 1127 of the Bankruptcy Code.

11.7   <u>Waiver of Stay</u>.  The Plan Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

## ARTICLE XII
## <u>MODIFICATION OF THE PLAN</u>

12.1   <u>Modification Prior to Entry of Confirmation Order</u>.  The Plan Proponents may propose modifications to this Plan, including any of the exhibits attached to this Plan, at any time prior to the entry of the Confirmation Order, with approval of the Bankruptcy Court and upon notice to Creditors or to such parties as may be directed by the Bankruptcy Court.

12.2   <u>Modification After Entry of Confirmation Order</u>.  After entry of the Confirmation Order, but prior to the Effective Date, the Trustee may, so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission, or reconcile any

inconsistencies in this Plan, or in the Confirmation Order, in such manner as may be necessary to

carry out and implement the purposes and intents of this Plan.  Following the Effective Date,

modification of the Plan shall be permitted only to the extent allowed by the Bankruptcy Court

after notice and hearing as the Bankruptcy Court shall determine appropriate.

**ARTICLE XIII**
**CONDITIONS PRECEDENT TO EFFECTIVE DATE**

The Plan shall not become effective, and the Effective Date shall not occur, unless and

until the Confirmation Order is entered by the Bankruptcy Court.

Date: August 18, 2023

*/s/ Jeremy R. Fischer*
Jeremy R. Fischer
Kellie W. Fisher
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Telephone: (207) 772-1941
E-mail: jfischer@dwmlaw.com
         kfisher@dwmlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

-and-

*/s/ Anthony J. Manhart*
Anthony J. Manhart
Bodie B. Colwell
**PRETI FLAHERTY LLP**
One City Center
PO Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000
E-mail: amanhart@preti.com
         bcolwell@preti.com

*Counsel for Anthony J. Manhart, Chapter 11 Trustee*

**Exhibit A**
**Liquidating Trust Agreement**

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "**Agreement**"), dated as of _____, 2023, is by and between (i) Anthony J. Manhart in his capacity as Chapter 11 Trustee (the "**Chapter 11 Trustee**") for Stored Solar Enterprises, Series LLC (the "**Debtor**"), a debtor in the Chapter 11 proceeding pending in the United States Bankruptcy Court for the District of Maine, Case No. 22-10191 and (ii) Anthony J. Manhart, in his capacity as Liquidating Trustee (defined below), executed in connection with the Chapter 11 Plan of Stored Solar Enterprises, Series LLC Dated _____ (as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions thereof, the "**Plan**"), as confirmed by the Bankruptcy Court in this Case, which provides for the establishment of a Liquidating Trust created hereby.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## WITNESSETH

WHEREAS, on September 14, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The case is administered under Case Number 22-10191;

WHEREAS, the Office of the United States Trustee formed the Official Committee of Unsecured Creditors (the "**Committee**") on September 29, 2022 and filed a notice of appointment on October 3, 2022;

WHEREAS, the Debtor was removed as debtor-in-possession on November 4, 2022;

WHEREAS, on November 7, 2022, the Office of the United States Trustee appointed Anthony J. Manhart as Chapter 11 Trustee;

WHEREAS, the Plan was confirmed by an order entered on _____ (the "**Confirmation Order**");

WHEREAS, the parties, by this Agreement, wish to establish the liquidating trust called for by the Plan, to receive the transfer of the Assets, as that term is defined in the Plan, and to administer, prosecute and distribute the proceeds of the liquidation of the Assets in accordance with the Plan and the Confirmation Order;

WHEREAS, the Stored Solar Liquidating Trust to be formed in accordance with the terms of this Agreement shall serve as the liquidating trust under and pursuant to the Plan;

WHEREAS, the Trust (defined below) is organized for the purposes set forth in the Plan, and the Liquidating Trustee's activities, powers, and duties are those determined to be reasonably necessary to, and consistent with, accomplishment of those purposes;

WHEREAS, under the terms of the Plan and Confirmation Order, the Chapter 11 Trustee on behalf of the Debtor and the Debtor's estate shall be deemed to have irrevocably assigned, granted, transferred, conveyed and delivered to the Trust, on behalf of and for the benefit of the

1

Beneficiaries, control of, and all the rights, title, and interests in and to the Assets, with no reversionary interest therein in favor of the Debtor; and

WHEREAS, the Trust is intended to be treated, for United States federal income tax purposes, (i) a "grantor trust" within the meaning of sections 671-677 of the Internal Revenue Code of 1986, and also (ii) as a "liquidating trust" within the meaning of Treasury Regulation §301.7701-4(d), except to the extent otherwise provided in this Agreement;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Parties agree as follows:

**ARTICLE 1**
**ESTABLISHMENT OF THE LIQUIDATING TRUST**

1.1   Establishment of the Stored Solar Liquidating Trust and Appointment of the Liquidating Trustee.

(a) The Parties hereby establish a trust which shall be known as the "**Stored Solar Liquidating Trust**", which shall also be referred to herein as the "**Trust**" and which is established on behalf of and for the benefit of the creditors of the Debtor, all of whom shall be the beneficiaries of the Trust created hereby (the "**Beneficiaries**").

(b) There shall be one trustee of the Trust (the "**Liquidating Trustee**"), who shall be appointed by the Bankruptcy Court. The Liquidating Trustee and each successor trustee serving from time to time hereunder as a Liquidating Trustee shall have all the rights, powers and duties set forth herein.

1.2   Transfer of Assets and Rights to the Stored Solar Liquidating Trust and the Liquidating Trustee.

(a) Upon the Effective Date, the Committee shall cause to be transferred, assigned, and delivered to the Trust all of its right, title and interest in the GUC Sale Reserve.

(b) Upon the later of (i) the Effective Date or (ii) the date that all Administrative Expense Claims and Professional Fee Claims, and any unsecured priority claims have been paid in full or otherwise agreed in writing to be paid on a future date, the Chapter 11 Trustee, on behalf of the Debtor, shall cause to be transferred, assigned and delivered to the Trust all its right, title and interest in and to the Assets. The transfer of the Assets shall be free and clear of all liens, claims, encumbrances and interests of any person or entity.

(c) Upon and after such transfer, the Liquidating Trustee shall administer, prosecute, liquidate and distribute the Assets and the proceeds thereof in accordance with the terms and conditions of this Agreement and the Plan.

(d) Upon and after such Transfer, the Chapter 11 Trustee, on behalf of the Debtor, shall cause to be delivered to the Liquidating Trustee any and all documents or other information in its possession, that are, or may be, useful in connection with the liquidation of the Assets.

2

1.3    Title to Assets.

Upon the Transfer of the Assets, the Liquidating Trustee shall succeed to all of the Debtor's and it's bankruptcy estate's right, title and interest in and to the Assets, and no other party shall have any further interest in or with respect to the same.

1.4    Nature and Purpose of the Stored Solar Liquidating Trust.

(a) Purpose. The Stored Solar Liquidating Trust is organized and established as a trust pursuant to which the Liquidating Trustee, subject to the terms and conditions contained herein and in the Plan agree to (i) hold the assets of the Trust and dispose of the same in accordance with this Agreement, the Plan and in accordance with Treasury Regulation Section 301.7701-4(d); (ii) oversee and direct the expeditious and orderly liquidation of the Assets and the distribution of the proceeds thereof in accordance with this Agreement and the Plan.  Accordingly, the primary purpose of the Trust is to liquidate and distribute the GUC Sale Reserve and the Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the Assets, and consistent with, the liquidating purpose of the Trust.

(b) Actions of the Liquidating Trust. The Liquidating Trustee, subject to the exercise of its reasonable business judgment, and on behalf of the Trust, shall, in an expeditious and orderly manner, liquidate and convert the Assets to Cash, and make timely disbursements under this Agreement and the Plan.  The liquidation of the Assets and the distribution of the proceeds thereof, may be accomplished by the Liquidation Trustee, in the exercise of his or her sole judgment and discretion, and without the necessity of Bankruptcy Court approval, and through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action, or otherwise. Without limiting the generality of the foregoing, all actions of the Trust shall be upon the authorization and/or approval of the Liquidating Trustee acting singly. Nothing in this Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Trust, or the Assets, or as a condition for managing any payment or distribution out of the assets of the Trust, provided that such payment or distribution is made in accordance with the provisions of this Agreement and the Plan.

(c)    Prosecutorial Discretion of Liquidating Trustee. The Liquidating Trustee shall have the absolute right to pursue, settle and compromise or not pursue any and all claims and causes of action as are included in the Assets, as the Liquidating Trustee, may, in his or her sole judgment, determine to be in the best interests of the Beneficiaries.  The Liquidating Trustee shall have no liability for the outcome of any such decision except for any damages caused by, gross negligence, willful misconduct, or knowing and intentional violation of law.

(d) Relationship. This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidating Trustee or the Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way

3

whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Beneficiaries to the Liquidating Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and the Beneficiaries' rights shall be limited to those conferred upon them by this Agreement.

1.5     Incorporation of Plan and Confirmation Order.

The Plan and the Confirmation Order are hereby incorporated into this Agreement and made a part hereof by this reference; provided, however, to the extent that there is conflict between the provisions of this Agreement, the provisions of the Plan, and/or such Confirmation Order, the terms of such Order, and to the extent consistent therewith, the Plan shall govern.

1.6     Funding of the Trust.

(a) Initial Funding. The Trust shall be initially funded by the cash included in the Assets, as well as the GUC Sale Reserve.

(b) Subsequent Funding. Thereafter, the Trust shall be funded by the proceeds from the liquidation of the Assets.

## ARTICLE 2
## STORED SOLAR LIQUIDATING TRUST INTERESTS

2.1     Interests Beneficial Only.

The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the assets of the Trust as such (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of the assets of the Trust or to require an accounting or give standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding upon or with respect to the assets of the Trust, except as expressly provided in this Agreement or the Plan.

## ARTICLE 3
## THE LIQUIDATING TRUSTEE

3.1     Trust Proceeds.

All of the proceeds of the liquidation of the Assets, including the prosecution, compromise and settlement of all claims and causes of action, shall be added to the assets of the Trust (the "**Trust Proceeds**") and held as a part thereof (and which title shall be vested in the Liquidating Trustee).

4

3.2     Payment of Trust Expenses.

(a) The Liquidating Trustee may expend the assets of the Trust (i) as reasonably necessary to meet expenses of the Trust and to maintain the value of the assets of the Trust during its duration; (ii) to pay reasonable administrative costs (including but not limited to, the costs and expenses of the Liquidating Trustee (including reasonable fees, costs, and expenses of professionals employed by the Liquidating Trustee), any taxes imposed on the Trust or fees and expenses in connection with, arising out of or related to the liquidation of the Assets; and (iii) to satisfy other liabilities incurred or assumed by Trust (or to which the assets are otherwise subject) in accordance with this Agreement.

(b) The Liquidating Trustee may retain from the Trust Proceeds at any time and from time to time, such amounts as the Liquidating Trustee deems reasonable and appropriate to ensure satisfaction of the expenses and liabilities described in this Section 3.2.

(c) Notwithstanding any other provision of this Agreement to the contrary, the Liquidating Trustee shall not be required to take any action or enter into or maintain any claim, demand, action or proceeding relating to the Trust or Trust Assets unless it shall have sufficient funds for that purpose.

3.3     Distributions.

The Liquidating Trustee shall distribute the assets of the Trust, and/or their proceeds, and after payment and satisfaction of expenses and liabilities of the Trust, in accordance with the provisions of the Plan and the Confirmation Order.

3.4     Tenure, Removal, and Replacement of the Liquidating Trustee.

(a)   The Liquidating Trustee will serve until (i) resignation and the appointment of a successor pursuant to subsection (b) below, (ii) disability or (iii) death (as applicable).

(b)   The Liquidating Trustee may resign by filing written notice of resignation with the Bankruptcy Court, not less than sixty (60) days' prior to the proposed date of resignation. Such resignation will become effective on the later to occur of (i) the day specified in such notice and (ii) the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment; provided, however, that if a successor trustee is not appointed or does not accept his or her appointment within sixty (60) days following delivery of notice of resignation, the resignation shall become effective on the 60th day following the delivery of notice of resignation.

(c)   In the event of a vacancy in the Liquidating Trustee position, (whether by removal, resignation, disability, or death, if applicable), the vacancy will be filled by order of the Bankruptcy Court, after motion filed by counsel for the Liquidating Trustee, and after hearing, if necessary, upon appropriate notice to parties in interest.

5

(d)   Immediately upon the appointment of any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidating Trustee will be vested in and undertaken by the successor trustee without any further act; and the successor trustee will not be liable personally for any act or omission of the predecessor Liquidating Trustee;

(e)   Upon the appointment of a successor trustee, the predecessor Liquidating Trustee (or the duly appointed legal representative of a deceased Liquidating Trustee) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Liquidating Trustee, all properties, rights, powers and trusts of such predecessor Liquidating Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Trust; and

3.5   Acceptance of Appointment by Successor Liquidating Trustee.

Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Liquidating Trustee hereunder and thereupon the successor trustee shall, without any further act, become vested with all the Debtors, properties, rights, powers, trusts, and duties of his or her predecessor in the Trust with like effect as if originally appointed as Liquidating Trustee.

3.6   Authority of Liquidating Trustee.

Subject to any limitations expressly contained herein (including, without limitation, Article 4 hereof) or in the Plan, the Liquidating Trustee shall have the following powers and authorities:

(a) hold legal title to any and all rights of the Trust, including, without limitation, collecting, receiving any and all money and other property belonging to the Trust;

(b) prosecute, compromise, settle, adjust, arbitrate, sue on or defend, pursue, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all claims and causes of action in favor of the Trust;

(c) protect and enforce the Trust's rights of ownership to Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d) obtain reasonable insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee under this Agreement (in the form of an errors and omissions policy or otherwise);

(e) select counsel and other professionals, who will be entitled to reasonable compensation for services rendered  upon such terms as the Liquidating Trustee, in his or her sole discretion, shall deem fair and reasonable;

(f) waive any privilege or any defense held by the Trust, on behalf of the Trust;

(g) take or refrain from taking any and all other actions (apart from those listed above) that the Liquidating Trustee, in his or her sole discretion, deems necessary or convenient for the continuation, protection and maximization of the assets of the Trust and to carry out the purposes hereof; and

(h) make payments and distributions as contemplated by this Agreement, and the Plan.

3.7    Limitation of Liquidating Trustee's Authority.

Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not, in his or her capacity as such (i) be authorized to engage in any trade or business, (ii) take such actions inconsistent with the orderly liquidation of the assets of the Trust as are required or contemplated by applicable law, the Plan and this Agreement, or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

3.8    Books and Records.

The Liquidating Trustee shall maintain books and records relating to the assets of the Trust and collections of the Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained on a cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Trust.

3.9    Inquiries into Trustee's Authority.

Except as otherwise set forth in this Agreement or in the Plan, no person dealing with the Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation or disposition of the assets of the Trust or the making of disbursements by the Trust.

3.10    Compliance with Laws.

Any and all distributions of assets of the Trust and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws, and the provisions of the Bankruptcy Code.

3.11    Compensation of the Liquidating Trustee.

The Liquidating Trustee shall be paid reasonable compensation from the Assets for his or her service to the Trust. The Liquidating Trustee (or professionals who may be employed by the Trustee in administering the Trust) shall also be entitled to reimbursement for his or her reasonable

out of pocket expenses incurred on behalf of the Trust.  The Liquidating Trustee shall be compensated with a commission of up to five percent (5%) of all amounts distributed by the Trust.

3.12    Reliance by Liquidating Trustee.

Except as otherwise provided herein: (a) the Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties; and (b) persons dealing with the Liquidating Trustee shall look only to the assets of the Trust to satisfy any liability incurred by the Liquidating Trustee to such Person in carrying out the terms of this Agreement, and the Liquidating Trustee shall not have any personal obligation to satisfy any such liability.

3.13    Standard of Care: Exculpation.

(a) Neither the Liquidating Trustee nor any of his or her duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Liquidating Trustee in good faith, other than acts or omissions resulting from the Liquidating Trustee's own gross negligence, willful misconduct, knowing and material violation of law, or fraud.

(b) Neither the Liquidating Trustee nor any of his or her duly designated agents or representatives or professionals shall be liable to the debtor or any Beneficiaries for the impairment, waiver, lapse or bar of any claim or cause of action (including, without limitation, the expiration of the applicable statute of limitations or repose) related to a failure by the Liquidating Trustee to prosecute any such claim or cause of action, unless the failure to prosecute the same was the result of gross negligence, willful misconduct, or knowing violation of law.

(c) The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with his or her attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with his or her attorneys, accountants, financial advisors or agents, and his or her good faith determination not to do so shall not result in the imposition of liability on the Liquidating Trustee, unless such determination is based on gross negligence, willful misconduct, knowing and material violation of law, or fraud.

3.14    Appointment of Designee(s).

If the Liquidating Trustee determines, in the exercise of his or her reasonable discretion, that he or she has a material conflict of interest with respect to the settlement, resolution or prosecution of any claim, cause of action, or any other matter (including, but not limited to, issues related to disbursements under the Plan), such Liquidating Trustee may select a designee to act on behalf of the Trust solely with respect to such matter (the "Designated Liquidating Trustee"), with

such designee's authority to act on behalf of the Trust to terminate upon the matter's conclusion. The Designated Liquidating Trustee shall be subject to the provisions of this Article 3.

3.15    No Implied Obligations.

No covenants or obligations shall be implied into this Agreement, or the Plan.  The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any documents or instrument evidencing or otherwise constituting a part of the Assets.

# ARTICLE 4
# TAX MATTERS

4.1    Federal Income Tax Reporting.

Subject to definitive guidance from the IRS or an order of the Bankruptcy Court or other court of competent jurisdiction to the contrary (including receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so request one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall file returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article 4.

# ARTICLE 5
# INDEMNIFICATION

5.1    Indemnification of Liquidating Trustee and Others.

(a) To the fullest extent permitted by law, the Stored Solar Liquidating Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Liquidating Trustee and each of its respective officers, agents, employees, attorneys and other professionals (collectively, the "Indemnified Persons") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability by reason of anything any Indemnified Person did, does, or refrains from doing for the business or affairs of the Trust, except to the extent that the loss, cost, damage, expense or liability resulted primarily from the Indemnified Person's gross negligence, willful misconduct, knowing and material violation of law, or fraud.  To the extent reasonable, the Trust shall pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Trust.

(b) The fact that an act or omission of an Indemnified Person was based upon advice of counsel will conclusively be deemed not to constitute recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud.  Each Indemnified Person may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion,

9

report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties, and any order of the Bankruptcy Court.

(c) The Stored Solar Liquidating Trust may purchase insurance to satisfy any potential indemnification claims that may arise under this Section 5.1, in conjunction with any insurance obtained pursuant to Section 3.7(e), for the benefit of the Trust, the Liquidating Trustee, and any agents, representatives, attorneys, accountants, advisors or other professionals employed by any of them.

(d) The rights to indemnification under this Section 5.1 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution.  Nothing in this Article 5.1 will affect the rights or obligations of any person (or the limitations on those rights or obligations) under this Agreement, or any other agreement or instrument to which that Person is a party.

5.2    Limited Recourse.

No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee personally, or against any employee, contractor, agent, attorney, accountant or other professional retained in accordance with the terms of this Agreement by the Liquidating Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trustee in implementation of this Agreement, or by reason of the creation of any indebtedness by the Trust for any purpose authorized by this Agreement, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Trust, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Assets or such part thereof as shall under the term of any such agreement be liable therefore or shall be evidence only of a right of payment out of the Assets.

Notwithstanding the foregoing, a Liquidating Trustee may be held liable for his or her, gross negligence, willful misconduct, knowing and material violation of law, or fraud, in each case, as determined by a final order of a court of competent jurisdiction; and if liability on such grounds is established, recourse may be had against (a) the Liquidating Trustee's bond or applicable insurance coverage, and, (b) to the extent not covered by such bond or insurance, subject to Section 5.3, directly against the Liquidating Trustee, provided, however, in no event shall the liability of the Liquidating Trustee based upon gross negligence be any more than the fees to which the Liquidating Trustee is entitled to hereunder that are paid to, or are received by way of set off or otherwise by, the Liquidating Trustee.

5.3    No Liability for Acts of Predecessor.

No successor Liquidating Trustee shall be in any way responsible or liable for the acts or omissions of any predecessor Liquidating Trustee in office prior to the date on which such person becomes the Liquidating Trustee, nor shall such successor Liquidating Trustee be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating

10

Trustee expressly assumes such responsibility.  Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Assets furnished to such successor Liquidating Trustee by the predecessor Liquidating Trustee and shall further be responsible only for those Assets properly includable in such statement.

5.4     Express Exculpatory Clauses in Instruments

As far as practicable, the Liquidating Trustee shall cause any written instrument creating an obligation of the Trust to include a reference to this Agreement and to provide that the Liquidating Trustee shall not be liable thereunder and that the other parties to such instrument shall look solely to the Assets for the payment of any claim thereunder or the performance thereof; provided, however, that the omission of such provision from any such instrument shall not render any Liquidating Trustee liable nor shall a Liquidating Trustee be liable to anyone for such omission.

**ARTICLE 6**
**TERM; TERMINATION OF THE TRUST**

Term: Termination of the Trust.

(a) The Trust shall remain in existence until all Assets have been fully administered and distributed in accordance with this Agreement, the Plan, and a final report and accounting of the Liquidating Trustee shall have been issued.

(b)  The Trust may be terminated prior to the occurrence of the events described in Section 6(a) only upon a final order of the Bankruptcy Court terminating the Trust.

**ARTICLE 7**
**AMENDMENT AND WAIVER**

7.1     Amendment and Waiver.

(a) The Liquidating Trustee may (i) amend, supplement or waive any provision of this Agreement, without notice to or the consent of any Party, any Beneficiary or the approval of the Bankruptcy Court; provided, however, that no such supplementation or waiver shall be enforceable to the extent inconsistent with the Plan or the Confirmation Order: (ii) cure any ambiguity, omission, defect or inconsistency in this Agreement provided, however, that no such amendment or cure shall be inconsistent with the Plan, or adversely affect the U.S. federal income tax status of the Trust as a  "liquidating trust".

**ARTICLE 8**
**MISCELLANEOUS PROVISIONS**

8.1     Intention of Parties to Establish the Trust.

This Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust

11

and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended in accordance with Article 7 to comply with such federal income tax laws, which amendments may apply retroactively.

8.2    Laws as to Construction.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MAINE, WITHOUT REGARD TO WHETHER ANY CONFLICTS OF LAW WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION.

8.3    Dispute Resolution.

In the event of any unresolved dispute between and/or among the Liquidating Trustee, such dispute shall be resolved by the Bankruptcy Court upon motion made by the Liquidating Trustee, and after due notice and hearing by the Bankruptcy Court.

8.4    Severability.

If any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

8.5    Notices.

All notices, requests or other communications to the parties hereto shall be in writing and shall be deemed to have been given or delivered upon (i) delivery of the notice in person; (ii) delivery by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) the expiration of three days following deposit in the United States Mail, postage prepaid, restricted delivery; or (iv) the expiration of two (2) days after delivery to an overnight courier, such as Federal Express or United Parcel Service, with delivery pre-paid.  Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

If to the Chapter 11 Trustee:

Anthony J. Manhart
Bodie B. Colwell
**PRETI FLAHERTY LLP**
One City Center
PO Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

12

E-mail: amanhart@preti.com
        bcolwell@preti.com

If to the Liquidating Trustee:

Anthony J. Manhart
Bodie B. Colwell
**PRETI FLAHERTY LLP**
One City Center
PO Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000
E-mail: amanhart@preti.com
        bcolwell@preti.com

Any party from time to time may change its address, facsimile number, or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

8.6    Fiscal Year.

The fiscal year of the Trust shall be the calendar year, January 1 to December 31.

8.7    Headings.

The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

8.8    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

8.9    Entire Agreement.

This Agreement (including the Recitals), constitutes the entire agreement by and among the parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein.  This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered on their behalf by their duly authorized agents, all as of the date first above written.

**WITNESS:**

_____        _____

Anthony J. Manhart, Chapter 11 Trustee for Stored Solar Enterprises, Series LLC

_____        _____

Anthony J. Manhart, Liquidating Trustee